UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FREDERICK KLORCZYK, JR., as co-Administrator of the Estate of Christian R. Klorczyk, FREDERICK KLORCZYK, JR., Individually, LYNNE KLORCZYK, as co-administrator of the Estate of Christian R. Klorczyk, and LYNNE KLORCZYK, individually | : : : : : : : : | NO.:  3:13-CV-00257 (RNC) |
| Plaintiffs | : : | |
| v. | : : | |
| SEARS, ROEBUCK AND CO., SHINN FU CORPORATION, SHINN FU COMPANY OF AMERICA, INC., and MVP (HK) INDUSTRIES, LTD. | : : : : | |
| Defendants | : | SEPTEMBER 13, 2013 |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER**

The defendants, Shinn Fu Corporation, Shinn Fu Company of America, Inc., and MVP (HK) Industries, Ltd. (hereinafter referred to collectively as "defendants"), pursuant to Local Rule 37(b)(1), hereby submit this memorandum of law in support of their motion for protective order.

I.      **BACKGROUND AND FACTS:**

This is an action under the Connecticut Product Liability Act, Conn. Gen. Stat. §§ 52-572m *et seq.*, seeking damages for the alleged wrongful death of the plaintiff's decedent, Christian R. Klorczyk, that occurred on March 11, 2011, at the plaintiffs' home located at 55 Westwood Drive, Waterford, Connecticut.[1]   The amended complaint alleges that the decedent's death was caused by the failure of a Craftsman Heavy Duty Jack Stand, Model No. 50163, that he was using to support his BMW while he was underneath performing service on the vehicle.[2]

On July 9, and July 15, 2013, the plaintiffs served interrogatories and requests for production on the Shinn Fu Corporation, Shinn Fu Company of America, Inc., and MVP (HK) Industries, Ltd. (Exhibit B), seeking information as to the design, manufacture and sale of the Craftsman Heavy Duty Jack Stand, Model No. 50163, and other products unrelated to this case.   Indeed, the plaintiffs' definition of "jack stand" would

---

[1]  The decedent's parents, Lynne and Frederick Klorczyk, Jr., also seek damages for bystander emotional distress.

[2]   According to the Waterford police report of the accident (Exhibit A), the decedent was using a hydraulic pump jack to support the vehicle, not a jack stand. There were no eyewitnesses.  Lynne Klorczyk, the decedent's mother, was first on the scene and gave a statement that "a pump jack had, which was initially holding the vehicle had moved. . . .  [A]s she was on 911, Mr. Klorczyk jacked the BMW up and placed a jack stand underneath."  (Exhibit A, p. A-4).   The police report notes that the pump jack was missing the saddle cup.  (Id., p. A-6).  The police seized the pump jack as evidence.  (Id.).  They did not seize any jack stands, which according to the police photos, were undamaged and in working order.  Indeed, they used the jack stands to support the vehicle before they left the scene.  (Id., p. A-5).

require the defendants to provide information and documents as to forty-five different models.[3]  On July 30, 2013, counsel for the defendants sent a letter to the plaintiffs' counsel seeking an agreement limiting the scope of the discovery.   (Exhibit C). Thereafter, the defendants served written objections to the discovery requests.  Counsel participated in a teleconference on August 16, 2013, in an attempt to resolve the discovery dispute.  (Exhibit D).  Despite their efforts, however, the parties have been unable to reach an agreement with respect to the disclosure of the requested information.

The defendants also would note that the court has scheduled a status conference before Magistrate Judge Martinez on October 9, 2013.  The defendants requested a further extension of time to respond to the discovery requests until two weeks after the conference, as many of the disputed discovery issues may well be addressed during the conference.  However, the plaintiffs would not consent to any further extension of time.

The defendants now seek a protective order in accordance with Fed. R. Civ. P. 26(c).

---

[3]  The definitions define "Jack Stand" as "a vehicle support stand of the model or type identified in the Plaintiffs Complaint including jack stands sometimes referred to by the designation T-6904 and/or listed or described as having a 4-ton load capacity (as a pair), as well as any aspect, feature, or component part of said jack stand, and *including any predecessor or carryover model(s), or similar or comparable model(s).*"  (Emphasis added).  (Exhibit B).

## II.   LAW AND ARGUMENT:

### A.   MOTION FOR PROTECTIVE ORDER:

Rule 26(c) of the Federal Rules of Civil Procedure provides:

**(c)   Protective Orders.**

> **(1)   *In General.*** A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

> > **(A)**   forbidding the disclosure or discovery;

> > **(B)**   specifying terms, including time and place, for the disclosure or discovery;

> > **(C)**   prescribing a discovery method other than the one selected by the party seeking discovery;

> > **(D)**   forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

> > **. . . .**

> > **(G)**   requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way;

4

**B.    THE DISCOVERY REQUESTS ARE OVERBROAD AND UNDULY BURDENSOME:**

At the outset, the defendants note that each set of the plaintiffs' interrogatories, including subparts, total well in excess of the twenty-five questions permitted under Rule 33(a).  By the defendants' count, there are sixty-one separate questions.  In addition, the plaintiffs have served forty-eight requests for production.  Moreover, because they require the defendants to produce information and documents as to other products besides the Model No. 50163 jack stand, the definitions and instructions have the effect of multiplying the number of questions by a factor of forty-five.

Further, the questions are not sufficiently limited in time and scope.  Rule 26(c) permits a court to "make any order which justice requires to protect a party or person from . . . undue burden or expense."  *Mitchell v. Fishbein*, 227 F.R.D. 239, 254 (S.D.N.Y. 2005).  Here, the defendants should not be put to the burden and expense of responding to *several hundred* interrogatories and requests for production as to a product (jack stand), which according to the police report and the statement by plaintiff Lynne Klorczyk, has nothing to do with the subject accident, and which was neither manufactured nor sold by Shinn Fu Corporation or Shinn Fu Company of America, Inc.

**C.    THE DISCOVERY SOUGHT IS IRRELEVANT:**

As can readily be seen from the Waterford police report (Exhibit A), the decedent was not supporting his BMW with a jack stand at the time of the accident.  The co-

plaintiff, Lynne Klorczyk, gave a statement to the investigating police officer that "as she entered the garage she observed the red BMW was on top of Christian and *a pump jack* had, which was initially holding the vehicle had moved. . . .   [A]s she was on 911, Mr. Klorczyk jacked the BMW up and placed a jack stand underneath."  (Emphasis added). (Exhibit A, p. A-4).  For this reason alone, discovery as to the design, manufacture and sale of jack stands is not reasonably calculated to lead to the discovery or admissible evidence.

In the present case, any minimal probative value of the information sought is vastly outweighed by the irreparable harm to the defendants of having to disclose confidential trade secret information (notwithstanding the standing protective order).  As noted above, the Waterford police report eliminates the jack stand as a cause of the accident.

### D.    THE DISCOVERY IS OPPRESSIVE AND INTENDED TO HARASS:

As counsel for the plaintiffs is well aware, Shinn Fu Corporation and Shinn Fu Company of America, Inc., did not manufacture or sell the jack stand that the plaintiffs claim to be defective.   Rather, it was manufactured by Wei Fu Corporation.   The plaintiffs have filed an action against Wei Fu Corporation, and are currently attempting to serve it.  The Shinn Fu defendants should not be required to answer any discovery as

to a product that they neither manufactured nor distributed.[4]  See *ITT Corp. v. Travelers Casualty and Surety Co.*,. 2012 WL 2944357 (D.Conn. 2012).

## E.   THE DISCOVERY SEEKS DISCLOSURE OF TRADE SECRETS:

Although trade secrets are not absolutely privileged from discovery, the disclosure sought must be relevant to the subject matter of the lawsuit.  *Coca-Cola Bottling Co. v. Coca-Cola Co.,* 107 F.R.D. 288, 292 (D. Del. 1985).  The governing relevance standard is the broad relevance standard applicable to pre-trial discovery.  *Id.* at 293.  In order for discovery to be appropriate, the information sought must be necessary for the movant to prepare its case for trial, which includes proving its theories and rebutting its opponent's theories.  *Coca-Cola Bottling Co. v. Coca-Cola Co.*, supra, 293.  Finally, "[i]t is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure."  *Centurion Industries, Inc. v. Warren Steurer, Etc.,* 665 F.2d 323, 326 (10th Cir. 1981).

---

[4]   To the extent the plaintiffs are seeking information as to the defendants' products to use against Wei Fu in the subsequent action, this is not a proper use of the discovery process.

**F.**   <u>SPECIFIC INTERROGATORIES:</u>[5]

<u>INTERROGATORY NO. 2:</u>

Identify each incident involving a Jack Stand known to Defendants, including the date and location of the event, the specific type, capacity and model Jack Stand involved, the nature of the incident, the results of any incident investigation by or on behalf of Defendants, in which one or more of the following occurred, or was alleged to have occurred:

(a)   The Jack Stand was alleged to be defective or unsafe;

(b)   The Jack Stand was alleged to have malfunctioned;

(c)   The Jack Stand was alleged to have failed to hold up a vehicle;

(d)   There was an alleged spontaneous collapse or descent of the raised ratchet bar of the Jack Stand;

(e)   The Jack Stand was allegedly manufactured with inferior materials or had poor workmanship in its assembly or fabrication;

(f)   The incident allegedly involved the use of only one Jack Stand.

---

[5] The defendants' written objections to the plaintiffs' interrogatories are attached hereto as Exhibit E and incorporated herein by reference.

This request is vague, overbroad, compound and unduly burdensome.  As noted above, the plaintiffs' definition of "jack stand" would require the production of documents as to at least forty-five products that have nothing to do with this case.  Further, the request for "the results of any incident investigation by or on behalf of Defendants" is protected from disclosure by the attorney work product doctrine and litigation privilege.

**<u>INTERROGATORY NO. 3:</u>**

For those incidents identified in response to Interrogatory 2 which resulted in a claim or lawsuit against Defendants, Sears, MVP and/or Wei Fu, or against any other person to whom Defendants provided a defense, indemnification or insurance coverage (under Defendants' policy), please state in full the caption of each case, docket number, location of the Court, attorney(s) name(s) and address(es) for plaintiff(s), present status of case and/or ultimate disposition for each claim or lawsuit.

This request assumes that these types of records have been maintained.  Thus, the request seeks to impose a requirement on the responding defendants not contemplated by the Fed. Rules of Civ. Proc.; namely, the creation of documents for the purpose of litigation.  Further, his request is vague, overbroad, compound and unduly burdensome.  As noted above, the plaintiffs' definition of "jack stand" would require the production of documents as to at least forty-five products that have nothing to do with this case.

**INTERROGATORY NO. 4:**

With respect to the Jack Stands, identify the persons who:

(a)     Designed them;

(b)     Manufactured them, including listing the name and address of the plant(s) or factory(ies) and the identity of the owner(s) of said plant(s) or factory(ies);

(c)     Tested them;

(d)     Distributed them;

(e)     Imported them into the United States;

(f)     Sold them to Sears.

This request is vague, overbroad, compound and unduly burdensome.  As noted above, the plaintiffs' definition of "jack stand" would require the production of documents as to at least forty-five products that have nothing to do with this case.  Also, this request is in violation of Fed. R. Civ. Proc. 33(a); namely, the sub parts are not discrete as it relates to the responding defendants.  Shinn Fu of America is not a manufacturer and is only a distributor.  Thus, sub parts a-c are not related to any of its business activities.  Similarly, Shinn Fu Corp., during the relevant time period as it relates to Jack Stands sold to Sears, did not distribute the product...  Thus, sub parts d-f are not related to any of its business activities.

**INTERROGATORY NO. 5:**

Identify the private labeled brand retailers to whom Defendants designed, manufactured, distributed or supplied Jack Stands in the United States.

This request calls for the disclosure of confidential Trade Secret information.

**INTERROGATORY NO. 6:**

Identify, by model number and load capacity or other identifying characteristics, each model or type Jack Stand which Defendants manufactured, distributed or sold to Sears and for each said Jack Stand type/model provide the following:

(a)     Year(s) in which the Jack Stand was sold to Sears;

(b)     Number of units sold per year to Sears;

(c)     Unit price charged to Sears.

This request seeks punitive damages information, which is highly confidential.

**INTERROGATORY NO. 7:**

Identify the engineer(s) or other person(s) responsible for designing, developing, manufacturing, assembling and/or inspecting the Jack Stands and/or overseeing the design, development, manufacture, assembly and inspection of the Jack Stands.  If the Jack Stands evolved from any predecessor or carryover design, identify the responsible design engineer(s) and

11

person(s) responsible or accountable for the initial design and the carryover design.

This request is in violation of Fed. R. Civ. Proc. 33(a); namely, the sub parts are not discrete as it relates to the responding defendants.  Designing and developing are separate from manufacturing and assembling, as well as inspecting.  Also, engineering as to each of this sub parts is separate from overseeing/supervising.  Finally, the evolution is also a third category.  Thus, with three sub parts and three categories, this request constitutes nine requests.

**INTERROGATORY NO. 9:**

Identify by test protocol, test report, test result and type/model of Jack Stand, all tests conducted by or on behalf of Defendants whose goal or purpose was, in whole or in part:

(a)     To certify compliance with ISO, ASME, ANSI, or PALD standards or guidelines;

(b)     To certify compliance with Defendants', Sears', Wei Fu's and/or MVP's internal testing, safety or performance standards;

(c)     Load testing and/or performance testing including tests using various weight loads, and/or heights of the ratchet bar and testing involving motor vehicles;

(d)     Testing of Jack Stand safety features, performance and/or failure modes.

12

This request is in violation of Fed. R. Civ. Proc. 33(a); namely, the sub parts are not discrete as it relates to the responding defendants.  Testing for external compliance, internal compliance, load testing, and safety testing are each separate functions.  Thus, this request constitutes four separate requests.  Finally, requests as to other models is not likely to lead to the discovery of admissible evidence.

### INTERROGATORY NO. 11:

Identify the engineer(s) or other person(s) responsible for the quality control and quality assurance procedures and systems at each said plant/factory and/or the engineer(s) or other person(s) responsible for overseeing the quality control and quality assurance procedures in existence at each such plant/factory.

This request is duplicative of interrogatory number 8.

### INTERROGATORY NO. 12:

Identify any engineer(s) or other person(s) involved with or responsible for evaluating or analyzing the design, performance, cost and/or safety features of competitors' Jack Stands and/or comparing each said competitor's Jack Stand's design, performance, cost or safety features to Defendants' Jack Stands.

This request is not likely to lead to the discovery of admissible evidence as competitor's jack stands are not at issue in this case.  Thus, any response is not likely to lead to the discovery of any admissible evidence.

**INTERROGATORY NO. 16:**

Identify the engineer(s) or other person(s) responsible for studying, analyzing or evaluating Jack Stand failure rates, failure modes, or conducting any cost/benefit analysis or any other analysis of any Jack Stand feature, component or proposed design change.

This request is unduly burdensome and harassing in that it seeks identification of any engineer who did any analysis of any Jack Stand feature, component or proposed design feature.  The wording is so overbroad and vague that the request is not capable of a reasonable response.  It essentially is asking for an identification of the entire engineering department.

**INTERROGATORY NO. 17:**

Identify any documents, including documents filed in court, in which Defendants characterize, describe or represent their business/organizational relationship to MVP and/or Wei Fu as that of being related, affiliated or "sister" companies or corporations.

This request is unduly burdensome and harassing in that it would require review of every corporate document that was ever created.  Thus, it calls for the disclosure of confidential attorney client information, attorney work product information, and/or trade secret information.  Further, this request is in violation of Fed. R. Civ. Proc. 33(a); namely, the sub parts are not discrete as it relates to MVP and Wei Fu.  Thus, this request constitutes two separate requests.

14

As to interrogatories 18, 19 and 20:

### INTERROGATORY NO. 18:

Set forth the nature, extent and degree of Defendants' ownership interest, directly, or through other persons or entities, in MVP and/or Wei Fu.  Identify the documents concerning that ownership interest.

### INTERROGATORY NO. 19:

Identify the officers, executives and/or directors of MVP and/or Wei Fu who were/are also officers, directors or executives of Defendants.

### INTERROGATORY NO. 20:

Identify the Defendants' officers, directors or executives who oversaw, or were responsible for overseeing, the business operations or activities of MVP and/or Wei Fu.

These requests are not calculated to lead to the discovery of any admissible evidence.  They also call for the disclosure of confidential information.  Further, they are in violation of Fed. R. Civ. Proc. 33(a); namely, the sub parts are not discrete as it relates to MVP and Wei Fu.  Thus, these request constitute two separate requests.

### INTERROGATORY NO. 21:

State whether there was any licensing agreement, royalty payment agreement, professional services or consulting agreement, or other agreement(s) between Defendants and MVP

and/or Wei Fu concerning the design, manufacture, assembly, distribution and/or sale of Jack Stands and, if so, identify each said agreement.

This request is not likely to lead to the discovery of admissible evidence. Further, this request is in violation of Fed. R. Civ. Proc. 33(a); namely, the sub parts are not discrete as it relates to MVP and Wei Fu; also there are four different categories of agreements. Thus, this request constitutes eight separate requests.

**INTERROGATORY NO. 22:**

State whether MVP or Wei Fu personnel, employees, engineers or managers received training from, were supervised by, and/or reported to Defendants concerning Jack Stand design, manufacture, assembly, inspection, testing, labeling, warnings, distribution, marketing, sale, and/or claims.  If so, identify the persons providing such training, supervision or oversight.

This request is not calculated to lead to the discovery of any admissible evidence.  Further, this request is in violation of Fed. R. Civ. Proc. 33(a); namely, the sub parts are not discrete as it relates to MVP and Wei Fu; also the request lists at least seven different categories.  Thus, this request constitutes fourteen separate requests.

**INTERROGATORY NO. 23:**

Identify the executive(s) or other person(s) at Defendants who were responsible for communicating with Sears, MVP and/or Wei Fu on all issues concerning Jack Stands, including design,

16

performance, compliance with standards, safety, legal and non-legal complaints, incidents, incident reporting and investigation, certification or other testing, warranty claims, governmental inquiries, contract compliance, pricing, advertising and marketing.

This request is not calculated to lead to the discovery of any admissible evidence.  Further, this request is in violation of Fed. R. Civ. Proc. 33(a); namely, the sub parts are not discrete as it relates to Sears, MVP and Wei Fu.  Thus, this request constitutes three separate requests.

### G.   SPECIFIC REQUESTS FOR PRODUCTION:[6]

At the outset, the defendants note that by virtue of the plaintiffs' definition of "jack stand" all of the requests for production are compound and inherently ambiguous.

As to Requests for Production 1, 2, 3, 11, 32, 33 and 46:

**REQUEST FOR PRODUCTION NO. 1:**

From the time when the Jack Stands were first developed and designed to the present, all Documents concerning the development and design of the Jack Stands

**REQUEST FOR PRODUCTION NO. 2:**

From the time when the Jack Stands were first fabricated, manufactured, produced and assembled to the present, all

---

[6]  The defendants' written objections to the plaintiffs' requests for production are attached hereto as Exhibit F, and incorporated herein by reference.

Documents concerning the fabrication, manufacture, production and assembly of the Jack Stands.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents concerning the inspection, quality control, and/or quality assurance of the Jack Stands.

**REQUEST FOR PRODUCTION NO. 11:**

From the time when Defendants first began the design, manufacture, production or distribution of the Jack Stands to the present, all Documents concerning complaints (legal and nonlegal) or litigation (pending or settled) with respect to claims or allegations of Jack Stand malfunctions, design or manufacturing defects, failure to hold up a vehicle, and/or the spontaneous collapse or descent of the raised ratchet bar of a Jack Stand, and/or inferior materials used to manufacture the Jack Stand and/or poor workmanship in the fabrication of the Jack Stand.

**REQUEST FOR PRODUCTION NO. 32:**

All Documents from 1988 to the present concerning Defendants' establishment of MVP in 1988, as noted in the attached document entitled "Presentation of Shinn Fu Corporation 2011".

**REQUEST FOR PRODUCTION NO. 33:**

All Documents from 1988 to the present concerning MVP and/or Wei Fu being part of Shinn Fu's affiliated global operations, as noted

18

in the attached document entitled "Presentation of Shinn Fu Corporation 2011"

**REQUEST FOR PRODUCTION NO. 46:**

All Documents concerning the development of warnings for the Jack Stands, including, but not limited to, Documents concerning when warnings were developed for the Jack Stands, revisions to the warnings for the Jack Stands and, from the time when Defendants first developed warnings to the present, Documents concerning all claims (legal and non-legal) and litigation (pending or settled) with respect to warnings for the Jack Stands.

As to these requests, The defined time period within this request, "from the time when the Jack Stands we first developed," is over broad.  Further, the request may call for the disclosure of confidential and/or Trade Secret information that will only be produced pursuant to the Court's Protective Order.

As to Requests for Production 4 and 13:

**REQUEST FOR PRODUCTION NO. 4:**

All Documents concerning the testing of the Jack Stands.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents concerning load or other testing of Jack Stands not produced in response to Request Number 4.

These requests are duplicative of Request for Production number 3.

As to Requests for Production 14 and 15:

19

**REQUEST FOR PRODUCTION NO. 14:**

All Documents concerning the study or consideration of employing, or the feasibility of installing, different or other designs or safety features for the Jack Stands.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents concerning the analysis or assessment of the costs of any alternative design of or safety features for the Jack Stands.

These requests are duplicative of Request for Production number 1.

As to Request for Production 18:

**REQUEST FOR PRODUCTION NO. 18:**

All Documents concerning any requests made to Defendants by any insurance carrier, police department, local, state or federal government agency or department, concerning Jack Stand design, performance, malfunction, failure or complaint.

This request is unduly burdensome and oppressive. The request is not likely to lead to the discovery of admissible evidence. Moreover, the burden of these responding defendants having to review all of the files for the past ten years concerning Jack Stands far outweighs the potential benefit, if any, to Plaintiffs.

As to Request for Production 19:

### REQUEST FOR PRODUCTION NO. 19:

All Documents concerning applicable policies of primary, excess and umbrella insurance issued to Defendants including insurance policies, declaration sheets and all endorsements and completed application forms.

This request is over broad to the extent it is request the insurance application forms.

As to Request for Production 48:

### REQUEST FOR PRODUCTION NO. 48:

All Documents concerning Defendants' filing of the Answer dated March 4, 2013, including, but not limited to, Defendants' admissions in Paragraph 2 thereof.

This request calls for the production of documents covered by the attorney client and attorney work product privileges.

## III.   CONCLUSION:

For the foregoing reasons, it is respectfully requested that the defendants' motion for a protective order be granted, either in whole or in part.   Further, in accordance with Fed. R. Civ. P. 26(c)(3) and 37(a)(5), the defendants request that they be awarded appropriate costs associated with the filing of this motion.

21

DEFENDANTS,
SHINN FU CORPORATION, SHINN FU
COMPANY OF AMERICA, INC., and MVP
(HK) INDUSTRIES, LTD.


By_____/s/ Philip T. Newbury, Jr._ _____
    Philip T. Newbury, Jr.
    ct05283
    Christopher M. Vossler
    ct00373
    Howd & Ludorf, LLC
    65 Wethersfield Avenue
    Hartford, CT  06114
    (860) 249-1361
    (860) 249-7665 (Fax)
    pnewbury@hl-law.com
    cvossler@hl-law.com

    ***Pro Hac Vice:***
    Sean P. Flynn
    phv05949
    Foley & Mansfield, PLLP
    300 South Grand Avenue
    Suite 2800
    Los Angeles, CA  90071
    (213) 283-2100
    (213) 283-2101 (Fax)
    sflynn@foleymansfield.com

22

## CERTIFICATION

This is to certify that on September 13, 2013, a copy of the foregoing Memorandum of Law in Support of Motion for Protective Order was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

David J. Elliott, Esq. (ct04301)
Bryan J. Orticelli, Esq. (ct28643)
Kaitlin A. Canty, Esq. (ct29074)
DAY PITNEY, LLP
242 Trumbull Street
Hartford, CT   06103-1212
**(860) 275-0100**
**(860) 275-0343 fax**
**djelliott@daypitney.com**
**borticelli@daypitney.com**
**kcanty@daypitney.com**

***PRO HAC VICE***
Joseph Donat, Esq.
Howard Wexler**,** Esq.
Howard Edinburgh, Esq.
Michael Gallub, Esq.
HERZFELD & RUBIN, P.C.
125 Broad Street
New York, NY  10004
**(212) 471-8500**
**(212) 344-3333 fax**
**jdonat@herzfeld-rubin.com**
**hwezler@herzfeld-rubin.com**
**hedinburgh@herzfeld-rubin.com**
**mgallub@herzfeld-rubin.com**

Michael R. Keller, Esquire
Thomas O. Anderson, Esquire
Morrison Mahoney, LLP
One Constitution Plaza, 10th Floor
Hartford, CT  06103
**T.  (860) 616-4441**
**F.  (860) 244-3800**
**mkeller@morrisonmahoney.com**
**tanderson@morrisonmahoney.com**

Erica Weyer Todd, Esquire
Trotta, Trotta & Trotta
900 Chapel Street
P.O. Box 802
New Haven, CT  06503
**(203) 787-6756**
**(203) 776-4538 fax**
**etodd@trottalaw.com**

_____/s/ Philip T. Newbury, Jr._ _____
Philip T. Newbury, Jr.