
# DAY PITNEY LLP

BOSTON   CONNECTICUT   NEW JERSEY   NEW YORK   WASHINGTON, DC

DAVID J. ELLIOTT
Attorney at Law

242 Trumbull Street
Hartford, CT 06103-1212
T: (860) 275-0196 F: (860) 881-2447
djelliott@daypitney.com

October 30, 2014

**VIA ECF**

Honorable Jeffrey Alker Meyer
U.S. District Judge
United States Courthouse
915 Lafayette Boulevard - Suite 417
Bridgeport, Connecticut 06604

    Re:    Klorczyk et al. v. Sears, Roebuck & Co., et al.
             Civil Action No.: 3:13-cv-00257-JAM

Dear Judge Meyer:

      We represent the plaintiffs in this product liability wrongful death action. This correspondence is respectfully submitted in accordance with Your Honor's directive during the telephonic conference with counsel that plaintiffs furnish a letter outlining the discovery problems requiring court intervention. We have in good faith attempted to resolve these issues with Defendants. Annexed hereto as Exhibit "A" is our letter of June 16, 2014 to Sean Flynn, counsel to Defendants Shinn Fu Corp. ("SFT"), Shinn Fu Company of America, Inc. ("SFA"), Wei Fu (Taishan) Machinery & Electric Co. Ltd. ("Wei Fu"), and MVP (H.K.) Indus., Ltd. ("MVP") (collectively referred to as the Shinn Fu or non-Sears Defendants). Annexed as Exhibit "B" is Mr. Flynn's reply letter of July 20, 2014. Annexed as Exhibit "C" is our letter dated June 16, 2014 to Thomas Anderson and Michael Keller, counsel to defendant Sears, Roebuck & Co. ("Sears"), to which we have received no response.

      Plaintiffs are the parents of a twenty-one year old UConn student who was killed in 2011 when an allegedly defective jack stand, purchased new by decedent from a Connecticut Sears store, and designed, manufactured, and distributed by the Shinn Fu defendants, which was supporting a vehicle decedent was working under in the family's garage, suddenly collapsed, causing the vehicle to fall and fatally crush the decedent. The jack stand at issue is claimed to be a 4-ton ratchet/pawl design automotive support device, with the Shinn Fu defendants' model number T-6904 and the Sears "Craftsman" designation as model 50163 (see Sears' operators manual annexed as Exhibit "D"). The component parts of the jack stand are illustrated in the Sears manual.

# DAY PITNEY LLP

Honorable Jeffrey Alker Meyer
October 30, 2014
Page 2

  Plaintiffs served upon each defendant a Request for Production of Documents (RFP) and Interrogatories. The supplemental RFP responses and Interrogatory answers (which contain the demands and interrogatories) of each Defendant are annexed as Exhibit "E" for SFT, Exhibit "F" for SFA, Exhibit "G" for Wei Fu, Exhibit "H" for MVP, and Exhibit "I" for Sears. As reflected in the exhibits and detailed below, the Shinn Fu defendants have, in our view, wrongfully refused to produce records invoking baseless and vague "privilege" claims, have not verified details indicating the thoroughness of their purported records searches, and have provided inconsistent, irreconcilable, and at times incomprehensible responses, all which demonstrate the incompleteness of their document production. Sears has unilaterally limited its production to the subject model, despite requests for records concerning similar models. Finally, the responses of the Sears and non-Sears defendants cannot be harmonized, making the Sears or non-Sears responses (or both) incomplete and suspect.

  1. Absence of a Privilege Log

  The Shinn Fu Defendants have refused to respond to numerous requests on the grounds that the documents sought are confidential. *See* SFC's response to RFPs # 19; SFA's responses to RFPs # 25 and 26; MVP responses to RFPs # 2, 3, 5, 7, 8, 9, 19, 22, 25 and 45; Wei Fu responses to RFPs # 1-4, 6, 12, 14, 15, 16, 28, 40, 41 and 42. Other than a privilege log supplied by MVP identifying 7 documents, the Shinn Fu Defendants have not indicated what documents are being withheld as privileged, and refuse to produce even non-privileged documents in response to those requests. Plaintiffs are willing to enter into a confidentiality agreement with respect to documents which are legitimately confidential. However, the Shinn Fu defendants have not indicated the grounds for their assertions of confidentiality, and have ignored plaintiffs' requests for a privilege log. We therefore request that if the Shinn Fu defendants continue to maintain such privilege claims, they provide forthwith a privilege log for each claim of privilege and each document withheld as privileged, as required by Fed. R. Civ. P. 26(b)(1) and D. Conn. Local Rule 26(e). *See Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, 2013 U.S. Dist. LEXIS 148083, *4-5 (D. Conn. 2013) (Fitzsimmons, M.J.).

  2. Shinn Fu Defendants' Insufficient Document Production

  The materials provided by SFA appear to be corrupted by some technical errors, as nearly half of the documents produced are blank, contain illegible non-comprehensible text, or consist solely of blank chart lines.[1] A continuous span of 540 pages (from SFA000620 to SFA001160) are purely blank chart lines or meaningless error indications. About 20% of the documents contain nonsense characters which obviously should be legible text. *See, e.g.,* SFA000109 to

---

[1] Using a random number generator, we selected 7 sets of 15 continuous pages throughout the 2782 pages of SFA's document production. Of the 105 pages so selected, 27 were blank, and 20 contained nonsense characters or incomprehensible text. At least a third of the rest were invoices or otherwise related to shipping or sales.

**DAY PITNEY** LLP

Honorable Jeffrey Alker Meyer
October 30, 2014
Page 3

SFA000113. Over 85% of the charts and graphs are totally or almost totally illegible, because they are blurry, contain internal errors, or are unnecessarily split onto dozens of pages. *See, e.g.*, SFA000116 and SFA000703. Much of the writing is so blurry or small that it is unreadable even with magnification. *See, e.g*, SFA002260. The file containing SFT000468 to SFT000471 is corrupted. Documents MVP008766 through and including MVP008795 are inexplicably missing.
    We request that the Shinn Fu Defendants produce all responsive documents in appropriate form by rendering all gibberish properly as readable text; correcting all software, display, rendering, reference, internal and similar errors; omitting blank and otherwise non-responsive documents; providing SFT000468 to SFT000471 in a manner that is viewable; and providing each chart or graph in paper form, with each chart or graph on as many pages as it was originally created for presentation or viewing, with each entry legibly displayed, and with all errors fixed.

    3. <u>Discovery as to Similar Models (Sears)</u>

    Plaintiffs' Interrogatories and RFPs define "jack stand" as including similar and predecessor models. These model jack stands have, as explained in our good faith letters, a ratchet/pawl lift support design, as illustrated in the Sears Operator's Manual (Exhibit "D"). Sears however has generally limited its responses solely to model 50163, and has not included responses concerning similar models, whether manufactured by the Shinn Fu defendants or others. Under Fed. R. Civ. P. 26(b), discovery related to similar models and/or incidents is permitted in product liability cases. *See Napolitano v. Synthes, Inc.*, 2013 U.S. Dist. LEXIS 60498 (D. Conn. Apr. 29, 2013) (Fitzsimmons, M.J.) (citing *Fine v. Facet Aerospace Products Co.*, 133 F.R.D. 439, 441-43 (S.D.N.Y. 1990)); *Cohalan v. Genie Indus., Inc.*, 276 F.R.D. 161 (S.D.N.Y. 2011). We therefore ask that Sears be directed to search their records concerning similar jack stands they have sold, and then serve amended responses following that search.

    4. <u>Inconsistent, Conflicting, and Irreconcilable Responses Requiring Further Elaboration</u>

    The materials provided thus far belie the credibility of all the defendants' responses, and each defendant has produced discovery rife with inconsistencies and contradictions. Due to the page limitation, we provide what we believe are the most egregious examples.

    Sears maintains it did not conduct any jack stand testing. When, in RFP # 13, plaintiffs requested all documents concerning jack stand testing conducted by or on behalf of Sears, at Sears' laboratories or facilities, Sears responded, "None for jack stand model 50163 with respect to the time frame January 1, 2003 through the date of the alleged incident." Sears responded to two-dozen interrogatories regarding testing, inspection, and quality control by stating, in relevant part, "From 2006 until the time of the alleged incident, the manufacturer was responsible for the testing of the subject jack stands" or that Sears "relies on the manufacturer to test the product and

# DAY PITNEY LLP

Honorable Jeffrey Alker Meyer
October 30, 2014
Page 4

meet applicable safety standards." See responses to Interrogatories # 4, 6-13, 16, 17, 18, and 20. Similarly, Sears provided inadequate responses to production requests regarding testing, inspection, and quality control by merely providing test protocol, purchase orders, and the vendor/factory accreditation report. See responses to RFPs # 3, 4, 11-16, 18, 27, and 37. However, an email from James Wang at SFA dated January 24, 2007, produced as WFT002512, indicates that jack stand testing was conducted at Sears' laboratory ("Mark just got a phone call from Barb confirming our 4-ton jack stands (#50163) passed the testing at Sears lab...") (See Exhibit "J").

In response to RFP # 2 asking SFA for documents related to the manufacture of jack stands, SFA stated it had none, yet produced, among others, SFA002654, an email received by an SFA manager concerning the manufacture and testing of jack stands, including the subject model 50163 (Exhibit "K"). In response to RFP # 3, 4, and 13, SFA indicated it could not locate documents concerning testing, inspection, or quality control despite a "diligent search." Nevertheless, SFA has, in fact, produced documents concerning testing and inspection. *See* SFA000105 to SFA000115 (Exh. "K"), and SFA000371 to SFA000388. In response to RFP # 43, SFA indicated that, after a diligent search, it was not able to locate documents concerning communications between SFA and either MVP or Wei Fu regarding jack stands. However, SFA has, indeed, produced documents regarding communications between SFA and MVP related to jack stand testing and distribution. *See* SFA000380, SFA000389, SFA000391, SFA001162, SFA001163. SFT's response to RFP #1 (concerning jack stand development and design) was also that it could not locate any such documents. Yet SFT has produced technical drawings which are responsive. *See* SFT000165 to SFT000175. As yet another example, Wei Fu's response to RFP # 44 (concerning the development or revision of jack stand warnings) was that they were unable to locate responsive documents after a diligent search. Yet Wei Fu has produced emails discussing changes to warnings and labeling. *See, e.g.*, WFT002486. Further, MVP's response to RFP # 1 (concerning jack stand design) and RFP # 14 (concerning consideration of employing different jack stand designs) was that it was not able to locate any responsive documents. Nevertheless, MVP has produced emails concerning a re-design of the jack stands for a greater maximum height. *See, e.g.*, MVP009141.

The Shinn Fu defendants steadfastly maintain a "no responsive documents" approach to production requests and interrogatories related to corporate interconnectedness. Yet, they are all named insureds on a common liability insurance policy (see MVP000122) and SFT, in 2011, published a document on its website (Exh. "L") describing its corporate interrelations with SFA, MVP, and Wei Fu, identifying each company as part of SFT's "Affiliated Global Operations." Annexed as Exh. "M" is plaintiffs' list of some key requests and interrogatories regarding corporate interrelation to which the Shinn Fu defendants have failed to provide adequate responses.

# DAY PITNEY LLP

Honorable Jeffrey Alker Meyer
October 30, 2014
Page 5

Based on the foregoing, the adequacy and thoroughness of the defendants' document searches are highly suspect. Plaintiffs first raised these concerns with Judge Chatigny in the telephonic conference with counsel on January 29, 2014. (See Transcript of Conference Exh. "N"). Plaintiffs remain concerned. Also suspect are the initial verifications provided stating generically that a diligent search was made. Accordingly, we request a detailed affidavit by a knowledgeable employee of each responding defendant indicating the nature, degree, and scope of the purported diligent search, including electronic search methodology, and regarding searches of servers and computers of executives, managers, officers, engineers, and other employees who were/are responsible for the subject matter of the documents requested, or are the custodian of records for such categories of documents. Courts in this circuit routinely order the production of affidavits detailing a party's search methodology. *See Panolam Indus. Int'l, Inc. v. F & F Composite Group Inc.*, 2010 U.S. Dist. LEXIS 4929 (D. Conn. 2010); *Pirrotti v. Respironics, Inc.*, 2012 U.S. Dist. LEXIS 106710 (D. Conn. 2012) (Fitzsimmons, M.J.); *Scovin v. Great West Life & Annuity Ins. Co.*, 2006 U.S. Dist. LEXIS 71386, *9 (D. Conn. 2006).

5. Depositions of Defendants

Lastly, we served Mr. Flynn, counsel for the Shinn Fu defendants, with a Rule 30(b)(6) letter on August 8, 2014 (attached as Exhibit "O"), detailing with particularity the matters for examination. Rule 30(b)(6) requires that once defendants receive such notice of the specific areas of inquiry, the corporate defendant "must then designate one or more officers..." The Shinn Fu defendants have never made that designation. We request that they immediately do so.

As mentioned in Monday's teleconference with Your Honor, there is an issue of where the depositions of the Shinn Fu defendants' corporate and employee witnesses are to take place, and we accordingly request a ruling that these depositions take place in this district, or in Los Angeles, where defense counsel is located, not abroad. *See Harrier Techs. v. CPA Global Ltd.*, 2014 U.S. Dist. LEXIS 127187 (D. Conn. Sept. 11, 2014) (Fitzsimmons, M.J.) (foreign corporate defendants ordered deposed in New York, not London); *Morrisey v. Little Beaver, Inc.*, 2006 U.S. Dist. LEXIS 92812 (E.D.N.Y Aug. 23, 2006); *In re Livent, Inc. Secs. Litig.*, 2002 U.S. Dist. LEXIS 19990 (S.D.N.Y. Oct. 21, 2002); *see also Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333 (N.D. Ind. 2000) (compelling Japanese witnesses to be deposed in the United States).

If the Shinn Fu defendants (other than SFA which is based in Kansas City, Missouri) are unwilling to produce their witnesses for deposition in the United States, then we ask that MVP (Hong Kong) and SFT (Taiwan) provide the Court with declarations that the deposition witnesses do not travel abroad for business or vacation, and that travel to the United States would be a hardship or do irreparable harm to their companies' business. With respect to Wei Fu, we ask for a declaration that its employees are forbidden under Chinese law from leaving the country.

**DAY PITNEY** LLP

Honorable Jeffrey Alker Meyer
October 30, 2014
Page 6

      For all the reasons set forth herein, Plaintiffs respectfully request the relief requested above be granted.

Respectfully Submitted,

David J. Elliott

DJE:rm
Enclosure

cc:    All Counsel of Record (via CM/ECF)