EXHIBIT N

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
- - - - - - - - - - - - - - - x
                              :
FREDERICK KLORCZYK JR., ET AL  :  No. 3:13CV257(RNC)
                              :
              Plaintiffs,      :
                              :
         vs                    :
                              :
SHINN FU CORPORATION, ET AL    :
                              :  HARTFORD, CONNECTICUT
              Defendants,      :  January 29, 2014
                              :
- - - - - - - - - - - - - - - x
```

TELEPHONE CONFERENCE

BEFORE:

HON. ROBERT N. CHATIGNY, U.S.D.J.

Darlene A. Warner, RDR-CRR
Official Court Reporter

```
1    APPEARANCES:

2          FOR THE PLAINTIFFS:

3                DAY PITNEY LLP
                      242 Trumbull Street
4                     Hartford, Connecticut 06103-1212
                 BY:  DAVID J. ELLIOT, ESQ.
5                     BRYAN JAMES ORTICELLI, ESQ.
                      KAITLIN A. CANTY, ESQ.
6
          FOR SEARS, ROEBUCK & CO.:
7
                TROTTA, TROTTA & TROTTA
8                     P.O. Box 802
                      900 Chapel Street
9                     New Haven, Connecticut 06503
                 BY:  ERICA WEYER TODD, ESQ.
10
                MORRISON, MAHONEY LLP-CT
11                    One Constitution Plaza, 10th Floor
                      Hartford, CT 06103-1810
12               BY:  THOMAS O. ANDERSON, ESQ.

13        FOR SHINN FU, MVP & WEI FU:

14              FOLEY & MANSFIELD, PLLP
                      300 S. Grand Avenue
15                    Suite 2800
                      Los Angeles, California 90071
16               BY:  SEAN P. FLYNN, ESQ.

17              HOWD & LUDORF
                      65 Wethersfield Ave.
18                    Hartford, CT 06114-1190
                 BY:  PHILIP T. NEWBURY, JR., ESQ.
19

20

21

22

23

24

25
```

1                                   2:00 P.M.

2

3               THE COURT:  Hello.

4               MR. ELLIOTT:  Good afternoon, Your Honor.

5               THE COURT:  Good afternoon.  Let me begin by

6    asking to you please identify yourselves for the record.

7               MR. ELLIOTT:  Yes, Your Honor, for the

8    plaintiffs, it's David Elliott, Bryan Orticelli and

9    Kaitlin Canty of Day Pitney in Hartford.

10              MR. NEWBURY:  For the Shinn Fu, MVP and Wei Fu

11   defendants, Phil Newbury and Sean Flynn pro hac vice.

12              MR. ANDERSON:  And, Your Honor, Tom Anderson for

13   Sears, and I think Erica is here today.

14              THE COURT:  Is that everybody?

15              MR. ELLIOTT:  Yes, Your Honor.

16              THE COURT:  I asked for this opportunity to

17   speak with you because I'm concerned from what I'm reading

18   in the joint status report dated January 17, Document 85

19   in this docket, that things aren't going as anticipated,

20   and rather than let this fester, I thought that we should

21   talk and see if we can't get things moving in a better

22   way.

23              So in that framework, let me begin by asking

24   plaintiffs' counsel to comment with regard to the

25   situation with regard to discovery.

1          MR. ELLIOTT:  Yes, Your Honor, thank you very

2    much.

3          Your Honor, let me start at the end, which would

4    be last night at around 6:00.  After serving some initial

5    responses which were very paltry and in our view

6    inadequate and very few pages of documents, the Shinn Fu

7    and MVP defendants did what I would describe as a classic

8    document dump.  They produced over 4500 pages of documents

9    electronically in several hundred pdf's without giving any

10    indication as to what any of those document requests

11    responses propounded by the plaintiff corresponded to,

12    which we believe is a clear violation of Rule 36 of the

13    Federal Rules.

14          We don't believe we should have to figure out

15    whether these documents, some of which are duplicates,

16    many of which are completely unresponsive to our requests,

17    and we don't think we should have to figure out what

18    document requests they respond to and that the defendants

19    should undertake their obligations under Rule 36.

20          I think, Your Honor, as I think you know, having

21    kept abreast of the correspondence and filings in this

22    matter, the plaintiffs' frustration with the defendants'

23    discovery responses goes back a long a way and I don't

24    want to cover all the waterfront with Your Honor because I

25    know you know it.  But starting in May of 2013, the Shinn

1       Fu defendants asked for a motion for summary judgment

2       filing conference in which they took the position that the

3       plaintiff should have no discovery.  I think Your Honor's

4       discussion at this conference dissuaded them from pursuing

5       that motion, and they didn't.  We then followed that in

6       July with our discovery responses to all of the then

7       existing defendants, July of 2013.

8              At that conference, counsel for Shinn Fu

9       disclosed that Wei Fu, a Chinese entity, actually

10      manufactured the jack stand at issue in this case.  I

11      inquired on the record, does anybody on the phone

12      represent Wei Fu.  There was silence, because we would

13      have asked somebody to accept service if counsel was on

14      the phone.

15             Accordingly, we spent five months, costing over

16      $20,000, to serve Wei Fu under the Hague Convention.

17      After we served Wei Fu, Mr. Flynn, who was on that

18      conference call, filed an appearance for Wei Fu.

19             After that, in response to our discovery pending

20      since last July, in September the Shinn Fu defendants

21      filed a motion for protective order, again asserting that

22      no discovery had been had by the plaintiffs.  We fully

23      briefed that motion, and in October they withdrew the

24      motion for protective order, but still no discovery

25      responses.  And as I said at the outset, discovery

1    initially finally came in pursuant to a court order

2    requiring discovery responses by January 6, not on January

3    6, but on January 9 we received it, and that discovery --

4    what they described as their initial discovery was

5    woefully deficient.

6          There were -- in over 25 percent of the

7    responses, the Shinn Fu defendants said "to be provided."

8    This after almost eight months of discovery pending.  To

9    be provided.  We think that's unacceptable after discovery

10   propounded by the defendants has been pending since last

11   July.

12         Sears -- for example, we asked for related cases

13   similar to this case.  Sears disclosed a case in Iowa

14   called Raymond v. Sears in which MVP was a defendant.  We

15   asked MVP if they were involved in any similar cases, they

16   said none, despite the fact that MVP was a named defendant

17   in Raymond.  We asked Shinn Fu America the same question,

18   whether they were involved in any other related cases.

19   They said "not to our knowledge," despite the fact that we

20   have a letter from Sears to Shinn Fu America putting them

21   on notice of the Raymond case.  This makes us concerned

22   about the accuracy of the responses that the defendants

23   have been making.

24         And as Your Honor knows, I think, and I'll try

25   to end this quickly, it is of great significance to the

1   plaintiffs in this matter as to the relationships among

2   the Asian defendants and Shinn Fu America.  And so

3   therefore -- and the reason for our curiosity in this

4   regard is publicly available on the internet is a document

5   published by Shinn Fu Taiwan in which it announces itself

6   as the parent company of what it describes as a global

7   business operation comprised of many companies of which

8   are MVP Hong Kong, Wei Fu in China and Shinn Fu America.

9   So therefore in our discovery requests, we asked for

10  information about the business relationships by and among

11  these defendants, and we got no documents in response to

12  that particular document request.  But we did, however,

13  get some interesting documents.

14          One is an insurance declaration page which names

15  Shinn Fu Taiwan as the parent primary insured on a

16  Lexington Insurance Company policy in which each of the

17  defendants that I just named is an additional insured.

18          We also got a document which describes Wei Fu in

19  China as the production facility for MVP, the Hong Kong

20  entity.  We got that from Sears, not from MVP, not from

21  Shinn Fu Taiwan or America.  And again, given the fact

22  that they said, we have no responsive documents, we're

23  concerned about the accuracy and the completeness of the

24  responses that we got.

25          So let me try to bring this to a close.  There

1    are problems with Sears also.  In many instances they said

2    "Ask other defendants for the information you're

3    requesting.  It's more appropriate that you ask them."

4         So we're concerned about the lateness of the

5    defendants in responding; we're concerned they've given

6    incomplete and misleading responses; that they have

7    violated the rules with respect to identifying what

8    requests for production the documents respond to; and we

9    have three requests of Your Honor if you're willing to

10   entertain them.

11        THE COURT:  Okay.

12        MR. ELLIOTT:  We ask that you order that the "to

13   be provided responses" be provided immediately given the

14   fact that discovery has been pending for eight months.

15        We ask, secondly, that you order Shinn Fu

16   America and Wei Fu to provide an index of the documents

17   that they dumped on us last night indicating which

18   requests for production those documents respond to.

19        And then we ask that you order Sears to provide

20   responses not saying "ask another defendant," but

21   providing their own responses.

22        Thank you, Your Honor.

23        THE COURT:  All right, thank you.

24        Who would like to speak on behalf of the

25   non-Sears defendants?

1            MR. NEWBURY:  Phillip Newbury, Your Honor.  I am

2    going to defer to Attorney Flynn with regard to specific

3    questions as to the discovery, because he is the liaison

4    between the foreign entities in this case and myself.  And

5    I would just say one thing.

6            Part of the problem in this case from the getgo

7    has been that the defendants originally sued, including

8    Shinn Fu Corporation, was not the proper defendant in this

9    case.  Wei Fu is the manufacturer of the jack stands that

10   are claimed to be defective.  It took some time for Wei Fu

11   to get brought into this case.  That coupled with the fact

12   that we're dealing with foreign entities in producing a

13   lot of this discovery material is part of the reason for

14   the delay.

15           The other thing I would add about this case is

16   the evidence that's been discovered through depositions

17   that took place just this week makes it abundantly clear

18   that the decedent in this case -- although this is a very

19   sad case -- was not using a jack stand at the time of the

20   accident.  He was using a pump jack.  And there is no

21   claim involving the pump jack that he was using at the

22   time of the accident.

23           So with that having been said as a preface, I am

24   going to defer to Attorney Flynn to address the specific

25   requests concerning the document production.

1          MR. FLYNN:  Thank you Phil, and good afternoon

2     Your Honor, this is Sean Flynn on behalf of the Shinn Fu,

3     MVP and Wei Fu defendants.

4          Regarding the sufficiency of the written

5     responses, this is the first we've heard of any alleged

6     deficiency by the plaintiffs in those responses, and I

7     think we've stated that in the joint status conference

8     report that was filed just a couple weeks ago.

9          I was out in Connecticut for the depositions

10    that took place on Monday.  And Attorney Elliott,

11    Orticelli and -- I've forgotten the New York counsel who

12    was there -- were all there.  We were there for the entire

13    day and nobody at any time mentioned anything about

14    insufficient discovery responses.  This is truly the very

15    first time there's been any comment on the January 6

16    discovery responses.  So I'm not really prepared to

17    respond to any of the accusations regarding the Raymond v.

18    Sears case or any of the other things that Mr. Elliott

19    just went through.

20          Regarding the issue of not identifying documents

21    produced with the discovery responses, that's one way

22    under Rule 36 that you can produce documents.  The other

23    way is you can produce them in the manner in which they're

24    kept, which is what we did.  There's no -- my

25    understanding of the rule is there is no definitive

1    requirement that the documents be produced identifying

2    which document relates to what response.

3         Your Honor, may not have had an opportunity to

4    review all of the requests propounded by the plaintiffs,

5    but they're so broad that some documents could be

6    responsive to most, if not all, of the categories.  So

7    we'd basically say, 1 through whatever the final request

8    was.

9         THE COURT:  Do you know how the --

10        MR. FLYNN:  Basically, all of them.

11        I'm sorry, Your Honor?

12        THE COURT:  Do you know how the documents were

13   identified to be produced?

14        MR. FLYNN:  They were Bates labeled.

15        THE COURT:  I'm sorry?  I wasn't clear in my

16   question.  You said that the documents were produced in

17   the manner in which they were maintained.

18        Following up on that, can you explain to me how

19   the client knew which documents to produce and how the

20   client went about organizing the production?

21        MR. FLYNN:  They went through the discovery

22   requests, the document requests, and then started looking

23   for documents.  The specifics of the order of operations

24   I'm not aware of.

25        THE COURT:  Okay.  I'm thinking about my

1   experience, and perhaps it's not helpful, but in my

2   experience you would take the document request and you

3   would go through the files and you would label documents

4   responsive to request one, request five, request three,

5   request eight.  In other words, you would do the sort of

6   index that Mr. Elliott was talking about.

7            Do you know if something like that was done here

8   such that it would be possible to produce an index.

9            MR. FLYNN:  I don't.  I don't know one way or

10   the other.

11            THE COURT:  This is the first you've heard that

12   Mr. Elliott is unhappy about the progress of discovery or

13   lack of progress.

14            MR. FLYNN:  This is the first I've heard that

15   they think there is some deficiencies in the written

16   responses produced on January 6.

17            MR. ELLIOTT:  Which we got yesterday, Judge.

18            MR. FLYNN:  The written responses?  I thought

19   you said you got those on 9th.

20            MR. ELLIOTT:  We got over 4500 last night.

21            MR. FLYNN:  What I was saying was this is the

22   first that I've heard about a deficiency in the written

23   responses to the requests.

24            MR. ELLIOTT:  That wasn't His Honor's question.

25   His Honor's question was:  Is it the first time that

1    Mr. Elliott has expressed dissatisfaction with the

2    defendants' discovery responses?  And the answer to that

3    is no.  I've been expressing it in letters to Judge

4    Chatigny and Magistrate Judge Martinez for months and

5    months beginning last summer.

6              MR. FLYNN:  I don't disagree with that.  I was

7    clarifying my only comment about this is the first time

8    I've heard of anything was relative to the written

9    responses.

10             THE COURT:  Mr. Flynn --

11             MR. FLYNN:  Mr. Elliott's correct, he's been

12   talking about discovery and the progress since the summer.

13             MR. ELLIOTT:  Your Honor, I apologize for

14   interrupting.

15             THE COURT:  Okay.  Well, I want to appeal to you

16   to please cooperate as required by law and I want to be of

17   assistance to you if I can, but I think at this stage it's

18   really up to you.

19             The case appears to be a problem case on the

20   face of it at this stage, which is unfortunate.  I don't

21   think it has to be that way.

22             In my experience -- and again maybe my

23   experience isn't helpful -- but in my experience, in

24   product liability cases involving serious injuries, my

25   opposing counsel and I were able to work effectively and

1    efficiently.  We were able to avoid these kinds of hassles

2    for the most part, and the result was we actually enjoyed

3    working on the litigation and we were able to resolve it

4    in a just manner, and we remained friends.  That to me is

5    the way it's supposed to be.  That's the way it should be.

6    None of the lawyers was in default of his obligation to

7    represent his clients zealously.  Not at all.  I don't

8    think there's an inconsistency there.  So I have

9    difficulty accepting the notion that this is the way it

10   has to be.  I don't think that's true.

11        I would ask you to understand that from my point

12   of view I'm obliged to enforce the tailored scheduling

13   order, and it doesn't look good at the moment.

14        If plaintiffs' counsel was derelict in seeking

15   discovery, that would be one thing, but on the face of it,

16   it looks like the plaintiff is doing all one can

17   reasonably be expected to do to prosecute a case and,

18   forgive me, but it looks like he's being stimied, and

19   that's not good.

20        Mr. Flynn, let me ask you, what do you think we

21   could do to improve matters?

22        MR. FLYNN:  Well, Your Honor, I think my

23   co-counsel, Mr. Newbury, hit the nail right on the head

24   with regard to the non-Sears defendants.

25        We're dealing with companies who are not savvy

1    with the American litigation system.  I think when I

2    traveled to go meet with the clients in Asia in December,

3    I spent numerous hours with the client discussing the

4    process, the nuances, the requirements and obligations,

5    and a tremendous amount of progress was made such that we

6    were able to serve the written responses which until today

7    I haven't heard one objection to.  And we were able to get

8    the document production going such that approximately

9    5,000 documents have been produced to date.

10            I think we're moving the ball forward and the

11   more time I get to discuss with the clients the procedures

12   and their obligations, the smoother things go.  And I've

13   been trying to communicate that to plaintiffs' counsel

14   that if they would, you know, give me a little bit of time

15   to work with the clients, I'm able to, I thought, satisfy

16   their requests.

17            It sounds like today for the first time their

18   requests aren't being met.  But other than that, I don't

19   know if there's anything else at this point in time that

20   could be done to try and move things forward, other than

21   if there's a specific request, plaintiffs have to

22   communicate it to me, give me a reasonable amount of time

23   to look into it and I'll respond.

24            To your point, Your Honor, the more that both

25   sides and, you know, it is a two-way street -- the more

1    both sides work with each other rather than bringing

2    things up for the first time during this sort of

3    conference call, the easier it's going to be for both

4    sides.  And I've been trying to work with Mr. Elliott's

5    office since the very, very beginning of this case, you

6    know, offering to dismiss without prejudice a tolling

7    agreement with regards to Shinn Fu Corporation and Shinn

8    Fu America since they didn't manufacture or distribute the

9    product, and that was rejected.  And so here we are.

10          To Mr. Newbury's point, we're spending a lot of

11   time and a lot of money on discovery regarding a product

12   that from eye witness testimony was not even being used on

13   the day of the accident.  And that's from a police

14   officer.  That's not my argument.

15          But I think that's what can be done today, is an

16   agreement by both sides.  And I'm willing to put the work

17   in if both sides work together to move the ball forward.

18          THE COURT:  All right.  Thank you.

19          MR. FLYNN:  That's the best thing that can be

20   done at this point.

21          MR. ELLIOTT:  Your Honor, in products liability

22   cases that I've been involved with in this district in

23   your court for 35 years, I've never encountered this kind

24   of opposition and failure to cooperate and I don't think

25   it's two-sided, I think it's one-sided.  So I very well

```
 1      know exactly what you're talking about with remaining
 2      friends and getting through the case the way it's got to
 3      get done in a professional fashion.
 4              I have to -- I'm sitting here almost shaking at
 5      what has just been said about the depositions that were
 6      taken on Monday of this week, because it's just been
 7      represented to you that there was eye witness testimony
 8      that a jack stand wasn't being used and that a pump jack
 9      was being used.  That's just absolutely wrong.  That is
10      absolutely not the case.
11              These police officers testified that none of
12      them were in the Klorczyk garage when the car fell on my
13      client, and none of them personally observed a jack stand
14      being used.  That was their testimony.  And I can't
15      believe that Mr. Newbury and Mr. Flynn just said to you
16      that there was eye witness testimony about something other
17      than a jack stand being used.  I am just aghast.  But let
18      me say that I do have some comments.
19              Mr. Flynn went to his clients apparently in Asia
20      on December 10 after the discovery had been pending since
21      July and Mr. Flynn doesn't even know, despite spending
22      several hours with his clients, whether an index was
23      created.
24              I mean, I'm familiar with what Your Honor said.
25      When you produce documents in a complicated case, you
```

1    create an index as to what requests they're responsive to.

2              So at a minimum, Your Honor, if we all want to

3    move the ball forward, as certainly plaintiffs do, I think

4    you should require that the defendants provide an index to

5    that 4500 plus documents that they produced last night.

6              I surely am willing to work with everybody to

7    try to move this case forward.  I'm the plaintiff.  I have

8    to prosecute this case, and I fully understand that.  But

9    I'm having real difficulty.  I'm going to face a time in

10   this case where the issue's going to come up about me

11   deposing Asian defendants, where that's going to take

12   place, et cetera, et cetera, et cetera, and Your Honor

13   knows how complicated that issue could become.  But I'm

14   nowhere near there because I have completely inadequate

15   and confusing document production to date.

16             So we've got a long way to spend together on

17   this case among counsel.  It would be nice if we could do

18   it professionally and cooperatively.  So far, I would

19   submit, that has not taken place.  And getting an index

20   would be very helpful.

21             Having the defendants more time to work through

22   discovery issues I don't think is reasonable under the

23   circumstances or fair to the plaintiff.  It's going on

24   eight months that they've had our discovery requests, and

25   I think the case needs to be moved forward.  And I

1    hesitate to ask for judicial intervention.  And at this

2    point, all I'm asking for is an index and that the "to be

3    provided" responses be amended to have responses given

4    forthwith.

5              THE COURT:  All right, thank you.

6              Let me hear from counsel for Sears, please.

7              MR. ANDERSON:  Erica, you want me to go first?

8              MS. WEYER TODD:  You can go first.

9              MR. ANDERSON:  Judge Chatigny, from what I just

10   heard Dave say, I think his statement to Sears was that

11   some of our supplemental responses indicated, you know,

12   that we refer to -- we refer the plaintiff to basically

13   the manufacturer, to Wei Fu and, you know, I think that

14   that's something is that Dave or Brian and Mike Keller,

15   who's working with me on it, and myself can work with them

16   on.  I mean, it's a simple thing and I think we can

17   cooperate and get that done.

18             THE COURT:  That sounds good.

19             MS. WEYER TODD:  If I can just supplement to

20   that?

21             Also working with Sears, Your Honor, a lot of

22   the items that were requested were testing and certain

23   protocol.  That was all within the realm of the other

24   defendants other than Sears.  And on behalf of Sears, I

25   can say they have pretty much attempted to comb through

 1  all of their paperwork that they have.

 2          In addition, keeping it -- and not that it's any

 3  excuse -- but also Sears is also dealing with Chinese

 4  representatives as well.  And I can tell you there has

 5  been -- we have attempted to do everything, and what we

 6  get back is that the manufacturer has that information.

 7          So when we answered "the manufacturer has that

 8  information" or "the other defendants have that

 9  information," that is what we have.

10          We produced records in the Raymond loss and that

11  isn't the same model jack stand that is in question in

12  this case, but because it was such a close similarity, we

13  produced that documentation.

14          THE COURT:  When was the occurrence at issue in

15  the Raymond lawsuit?  Do you know?

16          MS. WEYER TODD:  Tom, do you have that

17  information?

18          MR. ELLIOTT:  The occurrence was in 2004.  The

19  lawsuit was 2006.

20          THE COURT:  Where was that suit brought?

21          MR. ELLIOTT:  Iowa, Your Honor.

22          THE COURT:  What happened there?  Do you know?

23          MR. ELLIOTT:  Settled.

24          MS. WEYER TODD:  It was a claim of a jack stand

25  that malfunctioned, but it was a different tonnage that --

1    each jack stand has its own different tonnage, and this

2    was a different tonnage jack stand.  It was a lesser.

3                 MR. FLYNN:  Your Honor, Sean Flynn.  Can I speak

4    to that just for a second?

5                 THE COURT:  Sure.

6                 MR. FLYNN:  Thank you, Your Honor.

7                 The requests directed to the non-Sears

8    defendants was limited to 4-ton jack stands.  So to, you

9    know, now with this information regarding the Raymond case

10   that it didn't involve a 4-ton jack stand, to respond to

11   Mr. Elliott's comments, that's why MVP and/or Shinn Fu

12   America, I presume, did not discuss the Raymond case

13   because it wasn't a 4-ton jack stand, it was something

14   else.

15                So I think on that issue if those facts bear out

16   to be correct, then those two entities that Mr. Elliott

17   spoke about responses were accurate.

18                THE COURT:  Based on what you know about this

19   type of jack stand, Mr. Flynn, how would a 4-ton jack

20   stand differ from the one at issue in this case?

21                MS. WEYER TODD:  I believe in this case, Your

22   Honor, we are a 4-ton jack stand.

23                MR. FLYNN:  Yes.  I don't know what tonnage was

24   used in the Raymond case.

25                MS. WEYER TODD:  The Raymond case was a lesser

1    ton jack stand.

2             THE COURT:  I'm sorry, okay.

3             MR. ELLIOTT:  Your Honor, Dave Elliott.

4             Raymond was a 3-ton jack stand, and the

5    interrogatory that Mr. Flynn just referred to says

6    "Identify each incident involving a jack stand."  Not a

7    4-ton jack stand, a jack stand.

8             MR. FLYNN:  I believe the term "jack stand" is

9    defined in the definition as "4-ton."

10            MR. ELLIOTT:  I don't think so, but, okay.

11            THE COURT:  In any event, is the look of the

12   product essentially the same whether it's a 3-ton or 4-ton

13   jack stand?  I ask that only for my background

14   information, not for any other reason.

15            MR. FLYNN:  I'm kind of taking a bit of a guess,

16   but my assumption is that they probably look very similar.

17   There might be some engineering differences between the

18   two.  There might be some size differences between the

19   two.  But other than that, I don't -- it really would be a

20   complete guess for me to say whether or not they were the

21   same or not.

22            MR. ELLIOTT:  Your Honor, I know the answer to

23   that question.  It's the same mechanical configuration.  I

24   know the 3-ton jack stand at issue in the Raymond case.

25   It's the same parts, the same components, the same

1    mechanical configuration, the same metal, essentially the

2    same stand except it has a lesser lifting capacity.

3                    THE COURT:  Are you alleging the same defect?

4                    MR. ELLIOTT:  No.  We don't -- the Raymond

5    complaint, which I have, does not exactly specify what the

6    defect is, just that it failed.

7                    THE COURT:  Okay.

8                    Well, Mr. Anderson, you were saying that you

9    have some confidence that you will be able to work with

10   Mr. Elliott's office to resolve the issue that was raised

11   about Sears' responses, and I'd be happy to give you an

12   opportunity to do that.

13                   As I understand it, plaintiffs' counsel would

14   like me to order that any defendant who has responded to a

15   request by saying "to be provided" should be obliged to

16   answer promptly; and that, as to Sears, any request that

17   refers plaintiffs' counsel to another defendant should be

18   the subject of a different answer with Sears answering for

19   itself.

20                   I think that --

21                   MS. WEYER TODD:  In that case -- excuse me, Your

22   Honor -- in that case then on behalf of Sears, then the

23   answer would be we don't have those documents.

24                   THE COURT:  Fair enough.

25                   MS. WEYER TODD:  Your Honor, or at least

1    directing plaintiffs' counsel as to where to go look for

2    those documents.

3              THE COURT:  Yes, well, I think if that's the

4    case, then you're right, but I'm happy to leave that to

5    you and Mr. Anderson to discuss with Mr. Elliott.  I

6    appreciate your willingness to do that, and I hope that

7    will suffice.

8              MS. WEYER TODD:  Your Honor, and it hasn't been

9    released by anyone, but in addition, I know the focus

10   right now has been on the defendants and their failure.

11   I'm not sure if any of the defendants would be prepared to

12   say that the answers that we got on behalf of the

13   plaintiff have also been inadequate as it pertains to

14   their alleged losses, medical treatment and stuff, and we

15   literally have none of those documents.  And in fact, we

16   were directed -- we asked specific questions and we were

17   directed to websites to see what was done.

18              So, you know, it's not just one-sided here, we

19   too have problems.  And if we were to depose the

20   plaintiffs, we have actually none of their medical

21   documentation at all.

22              And I'm not sure if Sean, Phil or Tom want to

23   comment on that, but as the defendant Sears, we too have a

24   problem.

25              MR. ELLIOTT:  Your Honor, that's not going to be

```
1      an issue.  Our response is on -- there's a claim for

2      emotional distress by Mr. and Mrs. Klorczyk individually

3      and they asked for documentation supporting that claim,

4      and we said "to be provided."  In fact, we're about

5      three-quarters of the way through gathering all of the

6      therapists and psychiatric and medical information related

7      to that.  We could produce what we have now or we could

8      wait until we get it all.  But we're going to produce it

9      all.

10               And, Your Honor, we're willing to work with

11     Sears in a manner in which you described, absolutely.

12               THE COURT:  Okay, thank you.

13               MR. ELLIOTT:  That doesn't -- I mean, we still

14     have the issue of the index and the Rule 36 issue.

15               MR. FLYNN:  Your Honor --

16               MR. ELLIOTT:  Rule 34.  I keep saying 36, I'm

17     sorry.

18               MR. FLYNN:  In response to Ms. Todd's comments,

19     the non-Sears defendants are in the process of meeting and

20     conferring with the plaintiffs regarding their

21     insufficient responses and document production.

22               I'll also point out that MVP served written

23     requests to the plaintiffs and the -- we didn't get any

24     responses.  What we got instead was an email saying, these

25     are duplicative of Shinn Fu Corporation and Shinn Fu
```

1    America so we're not going to respond to them.  So we

2    haven't even gotten anything, we haven't even gotten

3    objections.  There's silence, no responses at all.

4         And one of the grounds that they say is because

5    we served them after a deadline that's in the scheduling

6    order saying that they were untimely because the order

7    says initial requests for production and interrogatories

8    must be served by a certain date.  And we responded with

9    we don't think that's what the order meant, meaning you

10   can only serve interrogatories and requests for production

11   on or before that date and after that date you can't.  But

12   that's one of their defenses that they're taking now.

13        In response do what Sears was saying, I'm

14   perfectly happy to work with plaintiffs on the issues that

15   they've talked about here today.  The "to be provided"

16   responses, if they could tell me which ones they're

17   talking about, I can take a look at them, and if

18   supplemental responses can be given, we'll give them.

19        But again, you know, we're being told for the

20   first time today that there's all of these issues with "to

21   be provided" responses and you just heard, Mr. Elliott

22   said they have the same thing on their responses to Sears.

23        So again, getting back to it, it's a two-way

24   street.  If we can get an open line of communication with

25   plaintiffs' counsel so that they tell us this is what our

```
 1      issue is with the "to be provided responses," we can

 2      address it, and I'm happy to do that.

 3              MR. ELLIOTT:  Your Honor, I could send Mr. Flynn

 4      an email right now identifying every one of the "will be

 5      provided," "to be provided" responses that his clients

 6      made, and I'm happy to do that.  He can look at his own

 7      clients' responses and answer the question himself.

 8              But on this MVP failure to respond, that's not

 9      what happened.  We sent an email to Mr. Flynn saying "you

10      have four clients in this case, you have filed identical

11      discovery requests with respect to all four clients, of

12      which MVP is completely identically duplicative of your

13      other defendants' requests, and we don't think we should

14      have to again respond to identical requests we've already

15      responded to."  That's what we said.

16              THE COURT:  Okay.

17              MR. ELLIOTT:  And, Your Honor, generally

18      speaking, you know, we started this conversation, and I

19      agree with Your Honor's approach, it's my obligation, my

20      professional responsibility to move this case forward on

21      behalf of the plaintiffs.

22              So far the meet and confer and let's cooperate

23      and let's all be friends approach has not worked.  I'm

24      sorry to say that, but it hasn't worked.  And to say --

25      and I'm sorry to say this because it's really not the way
```

1    we do business in this district.  But it hasn't worked so

2    far, and I'm concerned that it won't work in the future.

3    And the case is two years old and we're still in written

4    discovery and we're bogged down.  I quite agree with Your

5    Honor's characterization that this looks like a problem

6    case.

7              So I -- if you could order that they provide an

8    index, I think that would start the ball rolling.  I'm not

9    at all refusing to meet and confer and talk as long as

10   everybody wants to talk.  But I will tell you, we've had

11   many attempts at doing that so far and we find ourselves

12   where we are today.

13             THE COURT:  All right.

14             Mr. Flynn, before getting on the phone this

15   afternoon, had you had an opportunity to consider the

16   plaintiffs' request for an index?

17             MR. FLYNN:  No.  This was the first time it's

18   been brought up.

19             THE COURT:  That's what I thought.

20             Here's how I propose to leave it:

21             Consistent with applicable law, I would ask you

22   to have a discussion with Mr. Elliott to see if you can

23   accommodate the plaintiffs' legitimate need to be able to

24   deal with the approximately five thousand pages of

25   documents that were delivered to plaintiffs' counsel.

1           It may be that your clients are in a position to

2    provide an index, and I hope that's so, but I don't want

3    to preempt a discussion that has not taken place,

4    particularly since it's required by the rules, and perhaps

5    things can take a different turn and people will be able

6    to work more effectively together.

7           From my perspective, for what it's worth, and

8    I'm addressing everybody now, the case management order

9    entered last October providing for a discovery deadline of

10   June 15, 2015, is very unusual in permitting such a

11   lengthy period for discovery.  Please understand that I'm

12   operating under a set of rules that tells me I'm supposed

13   to bring this case to a conclusion within three years of

14   the date it was filed, and those are my marching orders.

15   I'm supposed to discharge my responsibility to manage this

16   case in a manner that brings the case to a resolution

17   within that timeframe.

18          The tailored scheduling order includes

19   provisions that aim to enable me to fulfill that

20   responsibility.  To be clear about those provisions,

21   you'll note that the party requesting discovery has an

22   obligation to move to compel within 30 days of the due

23   date of the response, and the party is obliged to have a

24   meet and confer with the other side within that timeframe

25   and communicate with the Court.

1        So as you can see, it's a pretty tight process.

2    You're not allowed to sit on your hands when your request

3    goes un-responded to, or if you receive a response that's

4    inadequate; no, you need to act promptly in order to meet

5    and confer and be in touch with the Court and make a

6    motion to compel if the meet and confer and the conference

7    with the Court doesn't work.

8        These provisions have come about because

9    experience has shown that in the absence of these

10   provisions, cases are going to take longer than they need

11   to take and you'll wind up getting motions to extend the

12   discovery cutoff date and motions to postpone all the

13   other dates, and pretty soon you've got a case that's

14   three years old.

15       So I don't mean to bore you with all this, but I

16   want to be sure that there's no misunderstanding.  Having

17   established a discovery cutoff date that provides an

18   extraordinary long period of discovery and being under an

19   obligation to bring this case to a conclusion within three

20   years, I am going to do what I can to keep it on track and

21   to keep it moving.

22       In that context, I ask you to please do your

23   best to cooperate and help me bring about a resolution in

24   a reasonable manner at a reasonable time.

25       So that said, it's my expectation that counsel

1    will confer promptly; they will address the concerns that

2    have been raised; and unless there's something else that

3    somebody would like to raise at this time, I'll let you

4    go.

5              Anything further from the plaintiff?

6              MR. ELLIOTT:  No, Your Honor.

7              THE COURT:  From the defendants?

8              MS. WEYER TODD:  No, Your Honor.

9              MR. NEWBURY:  Your Honor, Phil Newbury.  The

10   only thing I would add is that your message was received

11   loud and clear.

12             THE COURT:  All right, well, thanks, it's good

13   to know that at least you're listening.

14             All right, thank you all.

15             MR. ELLIOTT:  Thanks for your time, Your Honor.

16             MR. NEWBURY:  Thank you, Your Honor.

17                  (Proceedings adjourned at end 2:50 p.m.)

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3              In Re: KLORCZYK vs. SEARS

 4

 5

 6          I, Darlene A. Warner, RDR-CRR, Official Court

 7    Reporter for the United States District Court for the

 8    District of Connecticut, do hereby certify that the

 9    foregoing pages are a true and accurate transcription of

10    my shorthand notes taken in the aforementioned matter to

11    the best of my skill and ability.

12

13

14

15
                   /s/_____
16
                    DARLENE A. WARNER, RDR-CRR
17                    Official Court Reporter
                      450 Main Street, Room #223
18                    Hartford, Connecticut 06103
                          (860) 547-0580
19

20

21

22

23

24

25
```