# Exhibit A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
- - - - - - - - - - - - - - - - - x
                                  :
FREDERICK KLORCZYK, JR., as       :   No. 3:13CV257(JAM)
co-administrator of the Estate    :
of Christian R. Klorczyk, ET AL., :
                                  :
              Plaintiffs          :
                                  :
         vs.                      :
                                  :
SEARS, ROEBUCK & CO., ET AL.,     :
                                  :   Bridgeport, CT
              Defendants          :   November 12, 2014
                                  :
- - - - - - - - - - - - - - - - - x
```

TELEPHONIC DISCOVERY CONFERENCE

B E F O R E:

THE HONORABLE JEFFREY ALKER MEYER, U.S.D.J.

Diana Huntington, RDR, CRR
Official Court Reporter

2

```
 1   A P P E A R A N C E S:

 2       FOR THE PLAINTIFFS:

 3           DAY PITNEY, LLP
                 242 Trumbull Street
 4               Hartford, Connecticut 06103
             BY:  DAVID J. ELLIOTT, ESQ.
 5               KAITLIN A. CANTY, ESQ.

 6

 7       FOR THE DEFENDANT SEARS, ROEBUCK AND CO.:

 8           TROTTA, TROTTA & TROTTA
                 195 Church Street
                 Suites 815-817
 9               New Haven, Connecticut 06510
             BY:  ERICA TODD-TROTTA, ESQ.
10

11           MORRISON MAHONEY LLP
                 One Constitution Plaza
                 10th Floor
12               Hartford, Connecticut 06103
             BY:  MICHAEL R. KELLER, ESQ.
13

14       FOR THE DEFENDANTS SHINN FU CORPORATION, SHINN FU
         COMPANY OF AMERICA, INC., MVP (HK) INDUSTRIES, LTD.,
15       and WEI FU (TAISHAN) MACHINERY & ELECTRIC CO., LTD.:

16           GORDON & REES, LLP
                 2211 Michelson Drive, Suite 400
17               Irvine, California 92612
             BY:  SEAN P. FLYNN, ESQ.
18               STEVEN J. ZAKRZEWSKI, ESQ.

19

20

21

22

23

24

25
```

```
 1                            1:08 P.M.
 2              THE COURT:  All right.  Good afternoon
 3     everybody.  This is Judge Meyer, 13CV257, Klorczyk v.
 4     Sears, Roebuck & Co., et al.  I'm here with law clerk
 5     David Norman, court reporter Diana Huntington for purposes
 6     of a discovery conference in this matter.
 7              Could I have the appearance of counsel, starting
 8     with plaintiffs, please?
 9              MR. ELLIOTT:  Yes, Your Honor.  It's David
10     Elliott and Kaitlin Canty from Day Pitney for the
11     plaintiffs.
12              MR. ZAKRZEWSKI:  Steve Zakrzewski from Gordon &
13     Rees for the defendants.
14              THE COURT:  Okay.  Anyone else?
15              (Unintelligible.)
16              THE COURT:  I'm not picking up the names of
17     anybody else.
18              UNIDENTIFIED SPEAKER:  Can you hear us?
19              UNIDENTIFIED SPEAKER:  I can hear the Judge.
20     Why don't I put you on hold again and see if I can unravel
21     this.
22              UNIDENTIFIED SPEAKER:  Hello?
23              UNIDENTIFIED SPEAKER:  Hello?
24              MR. ELLIOTT:  Day Pitney is here, Your Honor.
25              THE COURT:  Okay.  I understand that's
```

1    Mr. Elliott?

2                MR. ELLIOTT:  Yes, Your Honor.

3                THE COURT:  Who is here on behalf of Sears

4    again?

5                MS. TODD-TROTTA:  Erica Todd-Trotta.

6                MR. KELLER:  And Michael Keller, Your Honor.

7                THE COURT:  Okay.  Who is here on behalf of the

8    remaining defendants?

9                MR. FLYNN:  Good afternoon, Your Honor.  Sean

10   Flynn on behalf of the non-Sears defendants and my

11   associate -- (unintelligible).

12               THE COURT:  Sir, are you by chance on a speaker

13   phone?

14               MR. FLYNN:  Yes, Your Honor.  We're actually

15   still out at the inspection.  Ms. Todd, Mr. Keller and

16   myself are on a cell phone in the middle of the

17   inspection.

18               THE COURT:  Okay.  Well, we can't hear you well

19   enough to make a record.  Is there any way for you to

20   deactivate the speaker for whoever is going to speak on

21   your behalf just to be on one line?

22               MR. FLYNN:  I can call back in from my cell

23   phone, Your Honor.

24               THE COURT:  Okay.  Perhaps --

25               MR. FLYNN:  Right now Ms. Trotta, Mr. Keller and

1    I are all in her car using her hands-free --

2              MS. TODD-TROTTA:  Maybe -- is this better?  Is

3    this better, Your Honor?

4              THE COURT:  I can hear better now.

5              MR. FLYNN:  This is Sean Flynn.  Is that better

6    now?

7              THE COURT:  That's better.

8              Okay.  One last time here on behalf of the

9    Shinn Fu and Wei Fu and MVP defendants?

10             (Interruption.)

11             THE COURT:  Okay.  Counsel, I think I have

12   appearances as best as I'm going to get them for now.

13             I'm going to ask Mr. Elliott to go ahead with

14   respect to the issues that he's raised here and then to

15   hear from Sears and then from the remaining defendants as

16   they would like to be heard on each of these issues.

17             So Mr. Elliott, if you'll start us off.  Your

18   first point is the privilege log and claim of

19   confidentiality by the Shinn Fu defendants.

20             MR. ELLIOTT:  Sure, Your Honor.  Let me address

21   that.

22             On the privilege logs, Your Honor, attached to

23   the response of Mr. Flynn, the letter brief filed with

24   Your Honor are Exhibits C, D, and E, which are privilege

25   logs produced by three defendants, and they describe a

```
1    total of nine documents alleged to be withheld on the
2    basis of privilege.  However, the defendants have refused
3    to respond to extensive discovery requests on privilege
4    grounds, as I made out in my letter brief to Your Honor,
5    that would be Shinn Fu (Taishan) RFP #19; Shinn Fu America
6    Request To Produce 25, 26; MVP, there's about 10 or 12
7    requests to produce identified in my letter; and Wei Fu,
8    again, about 10 or 12 requests to produce.
9            It is the plaintiffs' position that with this
10   number of discovery requests objected to on the ground of
11   privilege, a more extensive privilege log would be
12   appropriate and one that addresses the actual extent of
13   the objections that they made that I've just delineating
14   on the ground of privilege.  Because I think logs that
15   describe nine documents can't sufficiently describe all
16   the information being withheld on the basis of privilege
17   given the number of document requests they've objected to.
18           THE COURT:  Okay.
19           Mr. Flynn?
20           MR. FLYNN:  Yes, Your Honor.  Thank you.
21           Mr. Elliott's correct, we did attach three
22   privilege logs, and those were at the time of document
23   productions.  I don't have them in front of me right now,
24   but I think the estimate of nine documents is probably
25   correct; it might be a little bit low, but it's in the
```

1  ballpark.

2          Regarding the issue that there are extensive

3  objections to a number of requests on the list is -- and

4  that there should be more documents listed on the log, as

5  laid out in our letter, there's a lot of documents dated

6  post litigation that we don't have to put on the log.  And

7  that's specifically stated in the local rules, that

8  documents created after the litigation don't have to be

9  put into a privilege log.  That's why there isn't a more

10 extensive log.

11         THE COURT:  Okay.  Now, you've claimed a very

12 large number of confidentiality objections to at least I

13 should say a large number of the RFPs.  I guess the

14 concern is that there's no way to tell from your privilege

15 log whether the documents for which you're claiming

16 privilege correspond to those RFPs that are identified.

17         MR. FLYNN:  Your Honor, I understand your point,

18 but a lot of those requests are framed as any and all

19 documents that refer or relate to in this matter.  Well,

20 that could include all of my e-mail correspondence with my

21 foreign clients and out-of-state clients regarding all the

22 different subject matters in this case.  Those would

23 certainly fall within attorney client/attorney work

24 product privileges and are protected from disclosure,

25 protected from having to prepare a privilege log pursuant

1   to Rule 26(e).

2          THE COURT:  Okay.  So what I'm going to do here

3   is since there's only nine documents for which you've

4   claimed privilege, I'll require you to supplement by means

5   of the privilege log or by separate communication to

6   plaintiffs identifying for each of those only nine

7   documents to which document request they are responsive

8   and would be responsive but cannot be produced because of

9   privilege.  And then for you, if you are otherwise

10  claiming a confidentiality, to make clear the basis for

11  any other documents that you are withholding if your claim

12  is the documents are something that's occurred during

13  litigation.

14          All right.  So I'm asking you to double back and

15  do that so that there can be more information available as

16  to the basis for that objection and, of course, for you to

17  ensure that in fact no documents are being withheld on a

18  blanket assertion of, quote, confidentiality that are not

19  in fact legally privileged.

20          Okay.  Mr. Elliott, next point?

21          MR. ELLIOTT:  Yes, Your Honor.

22          The next point is set forth in my letter brief

23  as Number 2 entitled Shinn Fu Defendants' Insufficient

24  Document Production.  I've set force my arguments in my

25  letter so I'll just be brief, Your Honor.

1          Many of the documents are blanks or contain

2    illegible text or have blank chart lines or nonsense

3    characters.  Many of the charts and graphs produced were

4    either totally or almost totally illegible.  The writing

5    is infinitesimally small and blurry.  The Shinn Fu

6    defendants' response to this has been, well, we produced

7    documents in the way in which they were maintained.  I

8    would submit to Your Honor that's really not a good answer

9    if the plaintiffs can't read the document production, if

10   the documents produced are illegible.  That would simply

11   defeat the purpose of discovery.  And, Your Honor, I don't

12   think that that's a sufficient response.  We have to be

13   able to decipher the documents that are being produced.

14          THE COURT:  Okay.

15          Mr. Flynn?

16          MR. FLYNN:  Yes, Your Honor.

17          Rule 34 only requires that we produce the

18   documents in the manner in which they're kept.  That's

19   what we've done.  I understand that there's a lot of blank

20   pages.  That's because that's the way the document exists.

21   There's documents that have grid lines in them from an

22   Excel spreadsheet that don't have any information in them.

23   That's because that's the way the document exists.  The

24   print area setting for that document just carried over to

25   another page.  It's not that anything was redacted or

 1    withheld.  That's the way the document exists.

 2            Regarding the gibberish or foreign characters,

 3    that's a result of they sued a client who is in China,

 4    Hong Kong and Taiwan.  So they're going to have

 5    communications that are in a foreign language.  Under

 6    Rule 34, I have no obligation to translate any of those

 7    unless I'm going to be using them for trial.  I don't

 8    think any of them I'm going to be using at trial at this

 9    point.  That might change; and if it does, then I have an

10    obligation to translate those.  At this point, I don't

11    plan on it.  We're taking the deposition of the plaintiffs

12    tomorrow so that might change.

13            And then this issue about the blurriness or the

14    illegibility of some of the texts, again, that's a

15    document that was produced as it was kept.  And when they

16    pointed out -- plaintiffs, that is -- six months ago that

17    there was this page and that page by Bates number that

18    they couldn't read, I was able to get to that document on

19    my computer and zoom in, and everything was legible on my

20    end.  I don't understand the point on that.

21            And finally, to the extent -- and I'm not sure

22    if this is what plaintiff is asking.  To the extent that

23    they're asking that we create a more legible document,

24    again, Rule 34 does not allow us to create documents for

25    the litigation.

1     As far as any other questions, I think that's

2 pretty much set forth in my letter here.

3     THE COURT:  Okay.  So with respect to this

4 request by plaintiffs, I'm going to deny any relief based

5 upon the representations that the documents have been

6 produced in the form that they actually are maintained.

7 It's not uncommon that businesses may have records that,

8 for one reason or another, don't come out looking very

9 pretty.  And it will be, I imagine, grounds, Mr. Elliott,

10 if you want to ask witnesses about these documents and say

11 is there a better copy somewhere of these documents, that

12 that's certainly fair game for you to do so.  Based upon

13 the representations that they have not intentionally or

14 negligently distorted the legibility of these documents,

15 I'm not going to grant relief and I'm not going to grant

16 relief requiring them to conduct translations of the

17 documents.

18     That gets us to Number 3.  Mr. Elliott, you want

19 discovery concerning other models of the jack stand other

20 than model 50163.

21     MR. ELLIOTT:  Yes, Your Honor.

22     THE COURT:  I'm wondering at the outset two

23 things.  First of all, do you know precisely what other

24 models you are looking for, such as by model number?  And

25 also I'm wondering what would be the conceivable relevance

1   of looking for models that were not manufactured by the

2   Shinn Fu defendants.

3         MR. ELLIOTT:  Your Honor, in reverse order, the

4   discovery request is not asking for models not

5   manufactured by the Shinn Fu defendants.  It's limited to

6   other models manufactured and sold to Sears by the

7   Shinn Fu defendants.  I wanted to make that clear.

8         THE COURT:  Thank you.

9         MR. ELLIOTT:  Second, Your Honor, in response to

10  your question, I think we could identify other models.

11  There are other models sold to Sears by these defendants

12  which have the same basic structure as the subject jack

13  stand.  They have different load capacities.  But they

14  structurally are basically identical, just have different

15  loads.  When I say that, I mean they have a four-point

16  base stand, they have a vertical rising ratchet, and they

17  have a pawl which intersects the ratchet to keep it

18  elevated.  But they may be different load capacities.

19         In terms of what the relevance is, Your Honor,

20  here is what I submit is the relevance.  The defendants

21  may have policies that relate to testing and analysis of

22  comparable model jack stands that Sears tested in its

23  laboratory, and this might relate to design and

24  manufacture issues.  The other model discovery will be

25  relevant with respect to the feasibility of alternative

 1    designs and safety features of comparable models.  Other

 2    models would be relevant to notice of defects in design or

 3    manufacture or the type of warnings given for comparable

 4    models and other models that have the same basic

 5    structural design that have failed.  And we know that at

 6    least one of those other models exists because discovery

 7    has produced information regarding another lawsuit with

 8    another jack stand in which Sears and the Asian defendants

 9    were involved, and it was the same structural model as the

10    subject jack stand, it just had a different load capacity.

11    And we know there was litigation related to that model.

12    So that's why I would submit to Your Honor that that type

13    of information is relevant.

14            THE COURT:  Okay.  One more time, your

15    definition of what is a similar model, could you describe

16    that?  You said it's a four-point --

17            MR. ELLIOTT:  Four-point base.  A ratchet which

18    can be elevated manually, made higher in order to fit the

19    surface of that which it is elevating.  That's a vertical

20    piece that comes out of the base end.  And then there's a

21    locking mechanism called a pawl which intersects the teeth

22    of the ratchet to keep the ratchet elevated to the proper

23    height.  The other models I'm referring to -- and I could

24    give examples to the defendants, if Your Honor sees fit to

25    say that, illustrative of what I'm talking about, but it

1   is the same type of structure as the subject jack stand.

2            THE COURT:  For Sears?  Ms. Trotta?

3            MS. TODD-TROTTA:  Are you done, Dave?

4            MR. ELLIOTT:  Your Honor, we cited a case

5   authored by Judge Fitzsimmons at page 3 of our letter --

6            THE COURT:  I have it.

7            MR. ELLIOTT:  -- *Napolitano* decision which

8   relates to similar models.

9            THE COURT:  I have it.  Okay, thanks.

10            Attorney Trotta?

11            MS. TODD-TROTTA:  Yes, Your Honor.  As it

12   pertains to the subject jack stand, we were at the

13   inspection today and there were two sets of jack stands

14   and we weren't even told which one was the claimed one

15   that failed.  Now they're asking for all these other jack

16   stands that are manufactured by Shinn Fu.  The only

17   relevant model jack stand is the one that existed at the

18   time of this incident.  And clearly any similar models is

19   totally irrelevant.

20            THE COURT:  Okay.

21            Mr. Flynn, is this request made as to just

22   Sears, I take it?

23            MR. FLYNN:  I don't think I have a dog in this

24   fight.  I think it's between plaintiffs and Sears.

25            THE COURT:  Mr. Flynn, did you want to say

1    something else?

2              MR. FLYNN:  That was Mr. Flynn.

3              THE COURT:  I'm sorry.  Pardon me.

4              MS. TODD-TROTTA:  And Your Honor, if I can just

5    add, their actual request is even being manufactured by

6    other entities which clearly has no relevance.

7              THE COURT:  Okay.

8              MR. ELLIOTT:  As I said, we're not making that

9    claim.

10             THE COURT:  I understand that.

11             I will grant plaintiffs' request here, in part.

12   I will not require production concerning any models or any

13   jack stands manufactured by other entities.  I do find

14   that the other models as described -- similar models, as

15   described by Mr. Elliott, including those requisites of a

16   four-point base with a ratchet that can be elevated

17   manually and a locking mechanism on the ratchet, are

18   appropriately relevant to this cause of action.  And so I

19   find that discovery as to those is fully proper.

20             All right.  And, Mr. Elliott, it would help

21   perhaps if you actually tried your best to specify exactly

22   which model numbers, if you have model numbers, so there's

23   no ambiguity as to what it is that you're actually

24   requesting.

25             MR. ELLIOTT:  I'll try to do that, Your Honor.

1          THE COURT:  That gets us to Request Number 4,

2    which is the -- I guess, Mr. Elliott, as far as I can

3    tell, basically, you're finding that you're asking for

4    documents, you're being told in various responses for

5    production that no such documents exist, but then you're

6    finding, through other document productions that you've

7    gotten, that in fact documents do exist.

8          MR. ELLIOTT:  Yes, Your Honor.  We do lay out in

9    the letter in fairly good detail the other documents that

10   make us think that -- that they did produce that make us

11   think that there are responsive documents out there.

12         THE COURT:  And I understand, of course, the

13   response at least has been in part that documents aren't

14   always retained over time so that it wouldn't be

15   necessarily sinister that you see an e-mail referring to

16   some kind of lab testing that has occurred and in fact

17   there are no underlying documents.

18         I see that you request a detailed affidavit by a

19   knowledgeable employee of each responding defendant

20   indicating the nature, degree, and scope of the purported

21   diligent search, including electronic search methodology,

22   and regarding searches of servers and computers of

23   executives, managers, officers, engineers, and other

24   employees who were/are responsible for the subject matter

25   of the documents requested.

1          So I think I understand your basic request

2     there.  Perhaps I could hear from the defendants about

3     that.

4          MR. ELLIOTT:  Yes, Your Honor, I think you do

5     understand that request.

6          THE COURT:  Okay.  Attorney Trotta or Attorney

7     Flynn, would you like to respond?

8          MR. FLYNN:  Yes, Your Honor.  This is Sean

9     Flynn.

10          Regarding the testing documents, I think the

11     root problem here for the plaintiffs is they misunderstand

12     the documents and they misunderstand the timeline of

13     events.  I believe there is an e-mail from Shinn Fu

14     America that was directed to Sears regarding testing.

15          Now, for Your Honor's background information,

16     Shinn Fu America is a distributor; it is not a

17     manufacturer.  They do not do any testing.  They would not

18     have any documents.  They did discuss that there was

19     testing done and communicated that to Sears.

20          The testing in this case was done by Wei Fu.

21     Wei Fu is the mainland China manufacturing company that

22     actually manufactured the jack stand at issue, as we

23     understand it.  Now, they do the testing in China.  And my

24     understanding is that those testing documents were created

25     by Shinn Fu at the time of the manufacture of the jack

 1   stand.

 2           With that clarification, plaintiffs' concern is

 3   addressed.  The documents that exist have been produced.

 4   The documents that don't exist have not been produced

 5   because they don't exist.

 6           MR. KELLER:  Your Honor, Attorney Mike Keller

 7   here as well.

 8           To go off of what Attorney Flynn has said,

 9   that's precisely our position.  We have looked through all

10   the documents in our possession.  Given the retention

11   policies here, we don't have any documents related to any

12   such testing.  As I understand it, it is in large part

13   because Sears did not perform the testing, rather, Wei Fu

14   did.  The one e-mail that the plaintiffs highlight in

15   their letter from 2007, we performed a search to see if

16   any documents existed that might relate to that e-mail and

17   we did not find it.  So that's where we are on the issue.

18           MR. FLYNN:  Your Honor, this is Sean Flynn

19   again.  If I could speak to the issue about a declaration

20   from our client?

21           THE COURT:  Okay.

22           MR. FLYNN:  Our letter, third full paragraph of

23   page 4 report extensive costs, a lot of which --

24   (telephone cuts out) -- Connecticut saying that such a

25   request is not enforceable.  We don't -- (telephone cuts

1    out) -- to provide a declaration saying we did this and we

2    did that and this is what the chief petty officer did,

3    this is what the chief line officer did and this is what

4    the -- (telephone cuts out).  There's no basis for that

5    request being made.  Rather, what they can do is they can

6    depose our clients and find out what was done.

7             And going back to a comment that Ms. Trotta made

8    a few moments ago, we were at the inspection at the house

9    looking at the vehicle, looking at the jack stand, and

10   looking at the service jack.  We asked a very simple

11   request of Orticelli, who was there on behalf of

12   plaintiffs, to identify which of the four jack stands was

13   the jack stand that was shown in the photographs from the

14   police department.  He refused and said we have to do our

15   own deposition to figure that information out, just take

16   the deposition.  Well, that's a exactly what plaintiffs

17   are asking my clients to do right now.  They're asking my

18   clients to turn over their investigation of this matter

19   through a declaration.  Well, they can depose my clients.

20   And there's no basis under the rules and under extensive

21   District of Connecticut law, case law, that says they can

22   get that sort of a declaration.  So I think the request

23   should be denied.

24            MR. ELLIOTT:  Your Honor, this is Dave Elliott.

25   May I respond very briefly?

1          THE COURT:  Yes.

2          MR. ELLIOTT:  Thank you.

3          The Sears response says from 2006 until the time

4    of the accident the manufacturer was responsible for

5    testing.  Yet we have an e-mail, it's not from Sears, it's

6    from Wei Fu and MVP, from Shinn Fu America, it's attached

7    to my letter brief, the document based on WFT002512.  It's

8    dated in 2007.  That completely contradicts Sears'

9    response.

10          And as I laid out in my letter brief, they

11   produced numerous documents and identified the Bates

12   numbers of them that relate to testing, inspection,

13   design, et cetera.  And yet they say we don't have any

14   other documents on the very same subjects.

15          And again, I think that bears some fleshing out

16   by means of a declaration.  I think that's appropriate in

17   this case and we cite cases in our brief about inquiry on

18   this, the *Pirrotti* case and *Panolam Indus.* case, page 5 of

19   my letter brief.

20          Our document request was not limited to

21   documents relating to the e-mail that I just identified,

22   but rather more generally jack testing by or on behalf of

23   Sears or by the Asian defendants.  And if they're going to

24   stand on their response that we don't have any such

25   documents, I think they ought to give a declaration.  I

1    think it's appropriate.

2              THE COURT:  Okay.

3              MR. ELLIOTT:  Also, Your Honor, I don't think

4    the response is a sufficient response.  Counsel for the

5    Asian defendants said documents existed at one time but

6    they're not around anymore, they don't specifically refer

7    to a retention policy.  Sears does refer to a retention

8    policy and expects to be excused from producing any

9    document.  If they can identify the custodians that they

10   talked to, inquiry that they made, whether there are

11   employees who have files of their own.  I don't know if

12   they even asked their employees or other people involved.

13   Sears has a testing laboratory out in the Mid-West,

14   there's no doubt about that.  I think under those

15   circumstances, Your Honor, I think the declaration would

16   be appropriate.

17             THE COURT:  Okay.

18             MR. FLYNN:  Your Honor --

19             THE COURT:  I'm going to stop you, Mr. Flynn.

20   Just a moment.  I'm going to stop you.  I'm going to rule.

21             I'm going to deny this request.  And principally

22   I'm going to deny it because it's a question in my mind to

23   what degree this kind of declaration or detailed affidavit

24   would really remediate, end up remediating the problem

25   here.  And I have to count on the good faith of counsel

1    for the defendants to ensure that a fully adequate and

2    intensive search for responsive documents is conducted.

3    And I do understand that plaintiffs will have a chance, an

4    opportunity to depose witnesses concerning the adequacy of

5    the search for documents.  And if it turns out that there

6    ends up being, for example, documents responsive to or

7    relating to this e-mail, Exhibit J of plaintiffs'

8    declaration, that suddenly turn up as a result of doing

9    depositions, the Court will be prepared to consider

10   remedial action at that point for purposes of making

11   plaintiffs whole.  I don't see, though, at this point,

12   especially when we still have depositions to go that it

13   would be a useful exercise at this point to impose a

14   detailed affidavit requirement.  And I'm going to count on

15   the good faith and competence of defense counsel to make

16   sure that fully intensive reviews for documents have been

17   undertaken.

18            That gets us to depositions, Number 5.

19            MR. ELLIOTT:  If Your Honor please, I had one

20   other document issue.  We asked for documents concerning

21   what I would describe as the corporate interconnectedness

22   between the Asian defendants and Shinn Fu America.  We

23   attached to our letter brief internet postings by Shinn Fu

24   Taiwan describing their corporate affiliated global

25   operations which include Shinn Fu Taiwan, Shinn Fu

1    America, Wei Fu, and MVP, document bearing Shinn Fu

2    Taiwan's identification.  And the defendants' response was

3    we don't have any documents.

4              And we attached our Exhibit M to our letter

5    brief.  They produced documents showing these defendants

6    are all named insureds on account of liability policy and,

7    again, we produced the internet posting that we got from

8    one of the defendants.  And yet they say no documents.

9              I would assume your ruling is the same, but I

10   did want to raise that for the record, we also asked for

11   those documents.

12             THE COURT:  Mr. Flynn, what's the response on

13   that?  Did somebody hijack or hack into the web site and

14   put false information?  Is there really no such documents?

15             MR. FLYNN:  Sean Flynn again for the non-Sears

16   defendants.

17             The exhibit that Mr. Elliott is referring to we

18   have said from the very beginning of this case even before

19   written discovery was served that our client doesn't know

20   where it came from.  We don't have any record of it being

21   created at Shinn Fu.  We don't have any record of it being

22   distributed by Shinn Fu.  It may have been.  But so far,

23   everybody that has looked at it and looked into the issue

24   has informed me they don't know what that document is.  So

25   since they don't know what the document is, it seems

```
 1   logical that the response to a request to produce all
 2   documents relating to that document would be we don't have
 3   any.
 4           Now, if and when we're able to determine that it
 5   is a document that was created in Shinn Fu, then we'll
 6   have to reexamine the issue.  At this point, this is akin
 7   to the response that we don't have any documents because
 8   they don't exist.  They're asking for us to produce
 9   documents that relate to this document L that we don't
10   know who created it, we don't have records that we created
11   it.  I just don't see how we can be compelled to produce
12   documents of something we have no idea what it is.
13           THE COURT:  Mr. Flynn, I understand you might
14   have difficulty identifying the providence of that one
15   document, but, as I understood, the request is basically
16   to describe what's the corporate interrelationship between
17   the Shinn Fu defendants and MVP and Wei Fu.  You have no
18   documents concerning that?
19           MR. FLYNN:  Well, I think the request was
20   documents related to what's attached as Exhibit L to the
21   plaintiffs' letter brief, which is that PowerPoint
22   presentation Mr. Elliott was talking about.  They're
23   asking for us to produce documents that relate to that
24   document.  We're saying we don't know what that document
25   is.
```

1          THE COURT:  All right.

2          Mr. Elliott, can you clarify on this?

3          MR. ELLIOTT:  Yes, Your Honor.

4          Plaintiffs' Exhibit M sets forwards the key

5   requests for production interrogatories which are at issue

6   here.  And I believe Your Honor is right.  We are not

7   asking for documents limited to Exhibit L to our letter

8   brief but, rather, on a more general subject of the

9   corporate interrelatedness between Shinn Fu Taiwan,

10  Shinn Fu America, MVP and Wei Fu.  It's not limited to

11  that particular document.  And it's a much more general

12  request.

13          THE COURT:  What RFP is that?

14          MR. ELLIOTT:  Let's see.  I apologize, I don't

15  have that directly in front of me.  I could go get it, but

16  I don't have it directly in front of me.

17          THE COURT:  If in fact the RFP is requesting --

18  and I'm looking at Exhibit M here.  It looks like it could

19  be multiple RFPs, Numbers 31 to 40.  If they're seeking

20  general information about the corporate interrelatedness

21  among the defendants, my ruling is that that is relevant

22  to the cause of action and that discovery within the

23  bounds of discovery that's not overly burdensome is

24  appropriate.  Okay.

25          MR. ELLIOTT:  You're right, Your Honor.  Those

1    are the requests at issue, 31 to 40.

2              THE COURT:  Fine.

3              Let's go on to our next issue, which is the

4    deposition of defendants.

5              MR. ELLIOTT:  Yes, Your Honor.  This is a

6    location issue.

7              THE COURT:  All right.  Mr. Elliott, my concern

8    here is it seems to me that, on its face, you should be

9    prepared to travel.  You're going to have to pack your

10   bags.  Because I don't think it's required or that there's

11   a rule that requires foreign-sued defendants to produce

12   witnesses here in the United States.  And also I think

13   that there's a concern, and ordinarily the courts give

14   greater deference to the convenience of the witnesses

15   themselves rather than counsel.  What am I missing?

16             MR. ELLIOTT:  Well, you have discretion to order

17   otherwise.  I think there's plenty of cases where a middle

18   ground has been chosen.  For example, with Asian

19   defendants, somewhere in the UK, somewhere in Europe.  So

20   we would have to travel but just not as far.  And I think

21   Your Honor has discretion to consider that kind of

22   request.

23             You observed at the previous call with us that

24   this issue may need more specific briefing and plaintiffs

25   are willing to do that as whatever the Court sees fit.

1          THE COURT:  I'm not so interested in much more

2    briefing.  But I will tell you that I think it's

3    appropriate for counsel to travel to these companies or

4    the location of these companies or to Asia, generally, if

5    there's a place in Hong Kong or elsewhere that's

6    convenient to do this.  Also, in part, because to the

7    extent that there might be issues that arise during the

8    course of the deposition about production issues, it seems

9    to me you would be closer to where the production issues

10   could be addressed and resolved rather than in a hotel

11   conference room in Los Angeles.

12          So I'm going to have you travel, but I am going

13   to require the defendants to engage in good faith efforts

14   to ensure that there are not multiple trips.  So that the

15   parties should agree on a schedule that allows the

16   plaintiffs' attorneys to do, as best as possible, a single

17   trip to schedule these depositions.  In the event that

18   there's problems with that, then I'll entertain a request

19   that some depositions should take place elsewhere.  All

20   right.

21          Is that clear, Mr. Flynn?

22          MR. FLYNN:  Yes.  This is Mr. Flynn, Your Honor.

23   I've represented the Shinn Fu Corporation in another case

24   and we were able to coordinate a week long of depositions

25   with opposing counsel in that case, went off without a

1   hitch.   No problem on my end.   I'll make sure that we're

2   able to coordinate it.

3            THE COURT:   That's great.

4            MR. ELLIOTT:   And the plaintiffs understand your

5   ruling, Your Honor.

6            THE COURT:   Okay.   Is there anything else for

7   the Court to take up at this time?

8            MR. ELLIOTT:   Mr. Flynn raised an issue about a

9   request for admission at the very end of his letter.   I

10  don't know if you want to address that.   It's something

11  new, Your Honor.

12           THE COURT:   Mr. Flynn, do you have something

13  else you want to raise at this time?

14           MR. FLYNN:   The issue that I raised at the end

15  of the letter was that the plaintiffs had not responded to

16  the discovery requests, all of the discovery requests,

17  RFPs, interrogatories, and RFAs served on my clients

18  Wei Fu and MVP.   Instead, what they did was they sent a

19  letter saying these look like the same requests that

20  Shinn Fu Corporation and Shinn Fu America served, so we're

21  not going to respond to them, but we incorporate those

22  responses into this letter.   That was it.

23           My research indicates that there's a few cases

24  on this from the Second Circuit that say that's

25  insufficient.   And my understanding of the Rules of Civil

1    Procedure are that on the day that the responses were due,

2    those RFAs were all being admitted.  And unless plaintiffs

3    take some affirmative action to correct that, it is what

4    it is.  I don't have to do anything.  So my position is

5    all of the RFAs that were served by Wei Fu and MVP to the

6    plaintiffs have been admitted.

7              MR. ELLIOTT:  Well, Your Honor, we think that

8    that's just really off.  The defendants served identical

9    requests for admissions and we responded to one of them.

10   And we sent two letters to the defendants, one on

11   December 16, 2013, and one on March 18, 2014, the first

12   saying we should not have to respond to identical requests

13   to admit, we'll respond to one of them, which we did.  And

14   in the second letter, we said your requests are untimely,

15   they're beyond the date set forth in the scheduling order.

16   And there's no way we should be deemed to have admitted

17   those requests to admit under those circumstances.

18             THE COURT:  Okay.  I'm going to rule on this.

19             I'm not going to deem anything at this time

20   admitted for failure to respond.  I do think it's

21   appropriate if plaintiffs make clear that a request as to

22   one defendant is also -- or, rather, an answer as to one

23   defendant with respect to an RFA is the same for other

24   defendants.  I think that that suffices, and I don't think

25   that plaintiffs should have to engage in a make work

```
 1   project of cut and paste if it's made very clear that the
 2   response is exactly the same.
 3            MR. FLYNN:  Your Honor, can I be heard, please?
 4            THE COURT:  Who is this?
 5            MR. FLYNN:  Sean Flynn.
 6            THE COURT:  Okay.
 7            MR. FLYNN:  This goes back again to what the
 8   roles of the individuals were.  It's been our position
 9   from day one that Shinn Fu America has absolutely nothing
10   to do with these jack stands.  It did not distribute them
11   and it's not a manufacturer.  Shinn Fu Corporation, which
12   is a Taiwanese company, is a manufacturer.  They did not
13   manufacture the subject jack stand.  MVP is the Hong Kong
14   company and they are a distributor.  They distributed the
15   subject jack stand directly to Sears.  Wei Fu is the
16   manufacturer in China.  They manufactured the subject jack
17   stand.
18            So when you start looking at the requests saying
19   identify all facts of what we did wrong, what was
20   negligent, the answer to one defendant is completely
21   different than the next defendant.  And then a request for
22   admission admits that Wei Fu did not negligently
23   manufacture the subject jack stand, the answer that we get
24   for Shinn Fu Corporation, Shinn Fu America is completely
25   different than the answer for Wei Fu.  You can't say that
```

1   these same requests that were served on behalf of two

2   entities that have nothing to do with this case have the

3   same response from the plaintiffs as the two parties that

4   we told plaintiffs from day one were the ones that were

5   involved.  They're totally different.  It's apples and

6   oranges.

7           THE COURT:  Okay.

8           Mr. Elliott?

9           MR. ELLIOTT:  Your Honor, that's the first I've

10  heard that argument.  What I request that the Court do is,

11  in light of the statements Mr. Flynn just made, we will

12  take another look at those requests to admit.  We think

13  that they are identical requests which require identical

14  answers, but if they're not, we would go ahead, with

15  Your Honor's permission, and file responses to individual

16  requests to admit, given the representations that were

17  just made.

18          THE COURT:  Okay.

19          MR. FLYNN:  And, Your Honor?

20          THE COURT:  Yes?

21          MR. FLYNN:  This is Sean Flynn again.

22          My position is that the Federal Rules of Civil

23  Procedure, I believe it's Rule 30(b)(3), requests for

24  admissions, has an automatic sanction.  It's automatically

25  deemed admitted.  I don't have to ask the Court to deem

 1   them admitted.  It is an affirmative duty on the

 2   plaintiffs to seek relief.  And there's a body of case law

 3   throughout that hold that that is the case.  And I believe

 4   there is a Second Circuit opinion where if you fail to

 5   respond in a formal manner, that you have not responded.

 6   And so the RFAs are admitted.  In which case Mr. Elliott's

 7   remedy is not to go back and take a look at things and

 8   give it a second try.  Mr. Elliott's remedy is to file a

 9   motion and hope that with almost a year -- it's been a

10   year since those requests were due -- that there will be

11   relief granted.  I don't know where the Court will come

12   out on that.  That's his remedy, not to take a second

13   crack on it.

14           THE COURT:  Okay.  So what I'm going to do at

15   this point, in light of the fact that this issue has just

16   been raised by way of your response in today's letter,

17   it's fine for you, Mr. Flynn, to have raised this issue as

18   a potential point.  If you wish to -- if either party

19   wishes to pursue this issue further at this time, I'll

20   need to see something filed on that and to have a better

21   understanding of what it is, what the nature of the

22   responses have been.  I do understand Rule 36, and I've

23   ruled myself on this recently, does permit, in certain

24   circumstances, for withdrawal of deemed admissions by

25   lapse of time.  But I don't know more until I have a

33

1   better framing of this.  So I'm not going to try to decide

2   this in the vacuum that we have right now.

3            MR. ELLIOTT:  That's fine, Your Honor.

4            THE COURT:  All right.  Thank you all.

5            MR. ELLIOTT:  Thank you, Your Honor.

6            MR. FLYNN:  Thank you, Your Honor.

7            THE COURT:  Take care.

8                 (Proceedings adjourned at 1:57 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                        C E R T I F I C A T E

4

5        RE: FREDERICK KLORCZYK, JR., ET AL. v. SEARS,

6            ROEBUCK & CO., ET AL., No. 3:13CV257(JAM)

7

8            I, Diana Huntington, RDR, CRR, Official Court

9    Reporter for the United States District Court for the

10   District of Connecticut, do hereby certify that the

11   foregoing pages 1 through 33 are a true and accurate

12   transcription of my shorthand notes taken in the

13   aforementioned matter to the best of my skill and ability.

14

15

16

17

18                       _____/s/_____

19                    DIANA HUNTINGTON, RDR, CRR
                         Official Court Reporter
20                    United States District Court
                      915 Lafayette Blvd., Room 423
21                    Bridgeport, Connecticut 06604
                          (860) 463-3180
22

23

24

25