UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FREDERICK KLORCZYK, JR., as co-administrator of the Estate of Christian R. Klorczyk, et al., | : : : | CIVIL ACTION NO. |
| | : | 3:13-cv-00257-JAM |
| *Plaintiffs*, | : : | |
| vs. | : : | |
| SEARS, ROEBUCK AND CO., et al., | : : | |
| *Defendants*. | : | DECEMBER 30, 2016 |

### REPLY TO PLAINTIFFS' OPPOSITION TO
### MOTION TO PRECLUDE TESTIMONY OF ROGER CLAYPOOL

The Plaintiffs' argument is premised on the demonstrably-incorrect characterization that they retained Roger Claypool, SFA's[1] former Product Safety & Compliance Manager, as a hybrid fact/expert witness under Rule 26(a)(2)(C). Following this premise, the Plaintiffs rely extensively on decisions involving expert witnesses. The obvious distinction between these decisions and the present case is that payments for expert testimony are permitted, while payments for fact testimony are not. Here, Mr. Claypool testified unequivocally that he is ***not*** providing expert testimony, and that he is ***only*** providing fact testimony. While the Plaintiffs did cite cases where a party's former employee was permitted to testify as a fact witness called by the other side, none of those cases involved the former employee being ***paid*** for testimony.

Here, not only did the Plaintiffs pay SFA's former employee a handsome hourly fee to prepare for his deposition and testify in their favor, it is also apparent that he disclosed confidential and privileged information that he learned while investigating and attempting to resolve claims on behalf of SFA's counsel. In fact, this disclosure is memorialized in writing. (Claypool Email July 16, 2015, Ex. L to ECF No. 228.)

---

[1] The Defendant Shinn Fu Company of America, Inc. is referred to herein as "SFA."

Lastly, while the Plaintiffs never squarely address the cases cited in support of precluding Mr. Claypool's testimony, they seem to acknowledge the Court's inherent power to exclude his testimony under Rule 403 of the Federal Rules of Evidence. (Pls.' Opp'n p. 16, ECF No. 244.) Applying the Rule 403 balancing test to Mr. Claypool's testimony, the danger of unfair prejudice, confusing the issues, and misleading the jury vastly outweighs any probative value. Mr. Claypool provided vague testimony regarding incidents that do not meet the "substantial similarity" standard necessary for admission, and regarding potential alternative designs that he never actually built or tested. If Mr. Claypool's improper payment and disclosure of confidential and privileged information are not enough to merit his disqualification as a witness, the minimal probative value of his testimony weighed against the danger of unfair prejudice certainly does.

## I. The Plaintiffs Rely Extensively on Cases That are Far Afield from the Present Set of Circumstances

The Plaintiffs never thoroughly discuss the multiple cases that the Defendants cited in support of their Motion to Preclude Mr. Claypool where a fact witness was disqualified after being paid for testimony. *See, e.g.*, *Rocheux Int'l of N.J., Inc. v. United States Merchants Fin. Group, Inc.*, No. 06-6147, 2009 U.S. Dist. LEXIS 93082 (D.N.J. Oct. 5, 2009);[2] *Golden Door Jewelry Creations v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, 1517 (S.D. Fla. 1994). Nor did the Plaintiffs squarely address the primary authorities cited in support of disqualifying a consultant who had access to the other side's confidential and privileged information. *See, e.g.*, *1210 Colvin Ave., Inc. v. Top Mkts., L.L.C.*, No. 03-CV-0425E(F), 2006 U.S. Dist. LEXIS 93689, at *15 (W.D.N.Y. Dec. 27, 2006); *A&A Elec. Contractors v. C.H. Nickerson & Co.*, No. CV89-036986-S, 1993 Conn. Super. LEXIS 3279, at *3-6 (Conn. Super. Ct. Dec. 8, 1993). Instead, the Plaintiffs string-cite over 150 cases, often with little or no

---

[2] All unreported decisions cited in this Reply are collectively attached as Exhibit A.

discussion of the underlying facts or legal analysis.  A closer look at these cases reveals that the vast majority are readily distinguishable from the present circumstances.

The Plaintiffs rely *extensively* on decisions involving expert witnesses, which have no bearing on this case, because it is understood that expert witnesses are entitled to compensation, but Mr. Claypool has testified unequivocally that he is *not* an expert.[3]  *See, e.g.*, *Hayworth v. Schilli Leasing Inc.*, 669 N.E. 2d 165 (Ind. 1996); *Farmers Group v. Lee*, 29 Kan. App. 2d 382 (Kan. App. Ct. 2001); *Fruehauf Trailer Corp. v. Hagelthorn*, 208 Mich. App. 447 (Mich. Ct. App. 1995).  The Plaintiffs also cited cases where a party's former employee was permitted to testify as a fact witness called by the other side, but none of those cases involved the former employee being ***paid*** for testimony or privileged or confidential information.  *See, e.g.*, *Smith v. Brown & Williamson Tobacco Corp.*, 410 S.W.3d 623 (Mo. 2013); *Hannah v. Gen. Motors Corp.*, 969 F. Supp. 554 (D. Ariz. 1996).  The Plaintiffs cited as many cases as possible reaching their desired result, while ignoring the key facts driving that result, which are not present in this case — either the witnesses at issue were experts, or they were not paid for testimony.

The Plaintiffs' attempt to characterize Mr. Claypool as a hybrid fact witness/expert under Rule 26(a)(2)(C) is easily dismissed, where Mr. Claypool testified clearly that he is *not* offering expert testimony.  The cases cited by the Plaintiffs in support of their argument address true hybrid witnesses, like treating physicians.  *See Hauman v. Town of E. Hartford*, No. 3:13-CV-484(MPS), 2016 U.S. Dist. LEXIS 122783 (D. Conn. Sept. 12, 2016); *Caldwell v. Cablevision Sys. Corp.*, 20 N.Y.3d 365 (2013).  Furthermore, hybrid witnesses are compensated for lost time and expenses, not paid an hourly rate for testimony well over-and-above their standard compensation.  *See Cladwell*, 20 N.Y. 3d 365; *Stayton v. Weinberger*, 213 Va. 690 (1973).

---

[3] Mr. Claypool was directly asked: "Do you plan to offer any expert testimony this action?"  And he answered unequivocally in the negative: "No.  No.  I'm -- I'm here as a fact witness." (Claypool Dep. Tr. p. 221:8-9, Ex. A to ECF No. 228.)  Nor has Mr. Claypool been disclosed as an expert.

-3-

The other miscellaneous decisions string-cited by the Plaintiffs are not any more helpful for their position. Choosing just a few examples, the court in *Armenian Assembly of America, Inc. v. Cafesjian* held that a fact witness could not be paid for testimony, and that it was improper to pay a witness to make him sympathetic, which is exactly what the Plaintiffs did here. *See* 924 F. Supp. 2d 183 (D.D.C. 2013). In *BAE Systems Information & Electrical System Integration v. Lockheed Martin Corp.*, the court permitted the compensation of fact witnesses for "other services" but not for the testimony itself, unlike the instant case. *See* No. 3099-VCN, 2011 Del. Ch. LEXIS 117 (Del. Ch. Ct. Aug. 10, 2011). *Chicago Ins. Co. v, Capwill* involved a party paying *its own* former employee for time *preparing* for a deposition at the employee's prior salary, unlike Mr. Claypool, who was paid by the *opposition* at a rate far above his former salary or his current pay rate for both preparation and testimony. *See* No. 1:01CV2588, 2011 U.S. Dist. LEXIS 143333 (N.D. Ohio Dec. 12, 2011). *SRI International, Inc. v. Cisco Systems* involved a company's payments to its own employees as part of a "pre-existing compensation program." *See* No. 13-1534-SLR/SRF, 2016 U.S. Dist. LEXIS 48090 (D. Del. Apr. 11, 2016).

None of the Plaintiffs' cases show a court condoning the practice of paying the opponent's former employee, with extensive knowledge of the opponent's confidential information, to switch sides and provide favorable testimony. In fact, the Plaintiffs' decision to inundate the Court with citations to cases that are plainly off-base reveals the weakness of their argument and the dearth of authority supporting their position.

## II.     Mr. Claypool's Payment Clearly Biased His Testimony

At the outset, the Defendants' statement that Mr. Claypool was paid over ten thousand dollars ($10,000) was not "an exaggeration," as the Plaintiffs claim — in fact, this number was pulled directly from the Plaintiffs' interrogatory responses, where they admitted to paying him

-4-

over $16,000 for his "work" on this case.[4]  (Pls.' Response to Supplemental Interrog. No. 5, Ex. C to ECF No. 228.)  The Plaintiffs do not contest that Mr. Claypool's compensation at $120 per hour is grossly disproportionate to his current wages as a teacher at a community college, but argue instead that it is in line with his $61,000 annual salary at the time he left SFA.  (Pls.' Opp'n p. 11, ECF No. 244.)  The obvious flaw in this argument is that $61,000 annually equates to approximately $30.50 per hour,[5] about one fourth of what the Plaintiffs are paying Mr. Claypool.  Furthermore, there is no argument that Mr. Claypool is charging the "market rate" for his services, because (a) he was not hired as an expert and (b) there is no market for his services as a fact witness — he readily admitted that this case is his one and only "consulting engagement" since leaving SFA.  (Claypool Dep. Tr. p. 214:17-24, Ex. A to ECF No. 228.)

Indeed, it is apparent that the Plaintiffs bought Mr. Claypool's loyalty.  Even before his deposition, he refused to speak with his prior colleague and SFA's in-house counsel, and also refused to speak with the undersigned counsel, because he felt it would be "unethical" to have "ex parte communications" with SFA, which he viewed as the "other side."  (Claypool Dep. Tr. p. 161:9-23, Ex. A to ECF No. 228.)  During the deposition itself, he testified that he investigated a claim that changed his perception and made him believe in the "false engagement" phenomenon that the Plaintiffs allege occurred in this case, despite having concluded in writing several years earlier that the claim was not even caused by a jack stand failure.  (Claypool Dep. Tr. pp. 62:9-65:5, 70:10-71:2, Ex. A to ECF No. 228; Claypool Email, Jan. 13, 2005, Ex. D to ECF No. 228.)  He also testified that he changes his own oil using only one jack stand, despite having drafted product instructions and warnings directing that jack stands should always be used in pairs, in an apparent attempt to help the Plaintiffs' case in the face of the undisputed fact

---

[4] The Plaintiff's interrogatory responses are irreconcilably inconsistent with their claim that Mr. Claypool was paid a "grand total" of $8,191.89 in connection with this litigation.  (*See* Pls.' Opp'n p. 11, No. 244.)

[5] Assuming 40 hours of work per week, 50 weeks per year.

that the decedent in this case was using, at most, one jack stand at the time of his accident. (Claypool Dep. Tr. 217:4-220:5, 216:1-217:1, 218:21-220:5, Ex. A to ECF No. 228.)

The Plaintiffs' Opposition, despite being thirty-eight (38) pages long, does not even address Mr. Claypool's obvious bias. Ignoring the problem, however, will not make it go away, as it is now apparent that the Plaintiffs cannot rebut the clear record that Mr. Claypool's testimony was significantly influenced by the thousands of dollars that they paid him, at a rate several times higher than his current wage or his prior salary at SFA.

### III. Mr. Claypool Demonstrably Revealed Confidential and Privileged Information to Plaintiffs' Counsel, in Derogation of His Contractual Obligations

First, Mr. Claypool's improper disclosure of SFA's confidential information is memorialized in writing, (Claypool Email July 16, 2015, Ex. L to ECF No. 228), where he provided Plaintiffs' counsel with a list of confidential claimant information and settlement amounts.[6] Plaintiffs' counsel's alleged direction telling Mr. Claypool not to disclose privileged information, on the other hand, was *never* reduced to writing — the Plaintiffs did not produce a single letter or email containing this directive. Additionally, the Plaintiffs do not even address Mr. Claypool's admission that he was not conscious of the protection accorded to "materials prepared in anticipation of litigation" before his deposition, and therefore could not have known not to disclose such information to Plaintiffs' counsel. (Claypool Dep. Tr. pp. 169:25-170:10, Ex. A to ECF No. 228.)

Mr. Claypool admitted that he had *extensive* access to attorney client privileged and work product information at SFA, as his job entailed "basically assisting the legal department" working "very closely with SFA's in-house counsel." (Claypool Dep. Tr. pp. 86:5-7, 138:14-142:4, Ex. A to ECF No. 228.) The entirety of his deposition was essentially the Plaintiffs'

---

[6] *See also* Ex. D. to ECF No. 228, showing that information Mr. Claypool revealed to Plaintiffs' counsel regarding a prior claim came from attorney-client privileged correspondence with SFA's in-house counsel Attorney Chaykin.

method of creating a record of all the "helpful" information that he already gave them behind the scenes, much of which was confidential and privileged information that he acquired working with SFA's in-house counsel to investigate and resolve claims.[7] While the Plaintiffs argue that Mr. Claypool's Separation Agreement with SFA permitted his retention as a litigation consultant in this action, that same agreement prohibited him from disclosing any of the company's confidential or privileged information.[8] (Separation Agreement, Ex. G to ECF No. 228.)

In the face of these facts, the Plaintiffs avoided squarely addressing the primary authorities cited by the Defendants in support of disqualifying a consultant who had access to the other side's confidential and privileged information. *See, e.g.*, *1210 Colvin Ave., Inc. v. Top Mkts., L.L.C.*, No. 03-CV-0425E(F), 2006 U.S. Dist. LEXIS 93689, at *15 (W.D.N.Y. Dec. 27, 2006); *A&A Elec. Contractors v. C.H. Nickerson & Co.*, No. CV89-036986-S, 1993 Conn. Super. LEXIS 3279, at *3-6 (Conn. Super. Ct. Dec. 8, 1993). Instead, the Plaintiffs' cite, without discussion, cases where the person with confidential information had a passing conversation with the opponent's counsel. *See Surfcast, Inc. v. Microsoft Corp.*, No. 2:12-CV-00333-JAW, 2014 U.S. Dist. LEXIS 29398, at *16 (D. Me. Mar. 7, 2014); *Data Capture Solutions – Repair & Remktg., Inc. v. Symbol Techs., Inc.*, No. 3:07-CV-0237 (JCH), 2008 U.S. Dist. LEXIS 83595 (D. Conn. Oct. 17, 2008). These cases have absolutely no bearing on the present situation, where Plaintiffs' counsel retained an opponent's ex-employee with full knowledge that he worked closely with the legal department and possessed extensive privileged information, then mined him at length for helpful facts before paying him to provide a favorable

---

[7] The Plaintiffs criticize SFA's failure to provide an affidavit from its in-house counsel, but no affidavit is needed where Mr. Claypool's own deposition transcript contains admissions of all the salient facts supporting the Defendants' argument for preclusion.

[8] The Defendants Motion to Preclude contains a more complete recitation of the confidential information that Mr. Claypool improperly disclosed, and the Defendants will not repeat that list here.

deposition.  While witness disqualification might not be merited based on a mere passing conversation, it is absolutely merited under the present set of facts.

## IV. Mr. Claypool's Testimony Should Be Excluded Under Rule 403's Balancing Test

Page 16 of the Plaintiffs' Opposition seems to acknowledge that the Court has inherent authority to exclude Mr. Claypool's testimony under Federal Rule of Evidence 403, which provides that the court may exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, [or] misleading the jury[.]"  *See Rocheux Int'l of N.J. v. U.S. Merchants Fin. Group, Inc.*, No. 06-6147, 2009 U.S. Dist. LEXIS 93082 (D.N.J. Oct. 5, 2009).  Mr. Claypool's testimony should be excluded under this straightforward analysis.  Foremost, Mr. Claypool left SFA two years before the incident at issue in this case, and he has no specific knowledge of this incident whatsoever.  (Claypool Dep. Tr. pp. 133:16-134:5, 143:14-23, Ex. A to ECF No. 228.)

Notwithstanding his complete lack of knowledge regarding the subject incident, the Plaintiffs argue that Mr. Claypool should nonetheless be permitted to testify regarding his knowledge of "prior similar occurrences."  (Pls.' Opp'n p. 1, ECF No. 244.)  Except Mr. Claypool's knowledge of these prior "similar" occurrences comes nowhere close to satisfying the "substantial similarity" standard applicable in the Second Circuit to govern admission of evidence of prior incidents — in many cases, Mr. Claypool actually established that the prior incidents are not "similar" at all.  It is well-settled in the Second Circuit that "[e]vidence of prior accidents may be admitted . . . only if the proponent establishes their relevance by showing that they occurred under the same or substantially similar circumstances as the accident at issue." *Lidle v. Cirrus Design Corp.*, 505 Fed. Appx. 72, 74-75 (2d Cir. 2012) (internal citation and quotation marks omitted).   "Whether a prior accident occurred under 'substantially similar'

conditions; necessarily depends upon the underlying theory of the case, and is defined by the particular defect at issue." *Id.* at 74-75 (internal citation and quotation marks omitted).[9]

Reviewing Mr. Claypool's deposition transcript, regarding every single other incident to which he testified, he either has not nearly enough information to meet the "substantially similar" standard, or he has information establishing that the incident was ***not*** substantially similar to this case. One occurrence involved the use of six unmatched jack stands to support a Lincoln Towncar that was bumped by another person, whereas this case involves the alleged spontaneous collapse of a single jack stand supporting a BMW. (*See* Claypool Dep. Tr. pp. 182:15-185:16, Ex. A. to ECF No. 228.) Another occurrence involved a bus supported by two six-ton jack stands, while this case purportedly involves a sedan and a 3 ½ or 4-ton jack stand. (*See* Claypool Dep. Tr. pp. 185:17-186:14, Ex. A to ECF No. 228.) Regarding a different occurrence, Mr. Claypool did not know what model jack stands were used, two jacks stands were used, the vehicle at issue was a ladder-frame Ford Torino, he had no idea which lift points were used, and the jack stand that purportedly failed had an obvious paint scrape, unlike the jack stand that allegedly failed in this case. (Claypool Dep. Tr. pp. 186:15-190:25, Ex. A to ECF No. 228.) Then there were three other purported occurrences where Mr. Claypool could provide no detail at all. (Claypool Dep. Tr. 192:22-198:2, Ex. A to ECF No. 228.) In sum, Mr. Claypool did not recall any incidents that would be admissible under the "substantially similar" standard.

The Plaintiffs also argue that Mr. Claypool should be able to testify about the consideration and rejection of reasonable jack stand safety features. (Pls.' Opp'n p. 1, ECF No. 244.) Notwithstanding that this is a topic requiring expert testimony and Mr. Claypool stated

---

[9] The Connecticut Appellate Court likewise held that the party attempting to offer evidence of prior accidents must prove that "the circumstances were substantially the same as those under which the plaintiff was injured, and that the use by others was substantially similar to that of the plaintiff." *Pickel v. Automated Waste Disposal, Inc.*, 782 A.2d 231, 237 (Conn. App. Ct. 2001) (*citing Wray v. Fairfield Amusement Co.*, 126 Conn. 221, 226 (1940)).

clearly that he is not an expert, Mr. Claypool testified that he never actually finished designing, building, or testing any jack stands with alternative safety features. (Claypool Dep. Tr. pp. 200:19-2-5:25, Ex. A to ECF No. 228.)  Plaintiffs' counsel also questioned Mr. Claypool regarding the purported connections and business relationships between the Defendants at his deposition.  On cross-examination, it became clear that Mr. Claypool had little to no actual knowledge regarding the details of the companies' relationships, and certainly no knowledge from the time frame when the jack stand at issue was placed in the stream of commerce, which was long after he departed SFA.  (Claypool Dep. Tr. pp. 174:8-179:2, Ex. A to ECF No. 228.)

Overall, Mr. Claypool actually has no relevant testimony to offer in this case, and any testimony that he could offer that has any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.  The jury might accord substantial weight to Mr. Claypool's testimony since he formerly worked at SFA, even though his testimony is biased by payment, and he has very limited recollection of the salient facts to which he will be asked to testify.  His testimony should therefore be excluded under Rule 403.

**V.     Conclusion**

Despite citing over 150 cases in their opposition, the Plaintiffs could not come up with a single case where a party was allowed to pay its opponent's ex-employee for fact testimony, let alone a former employee whose job required him to work closely with the legal department and acquire extensive confidential and privileged information.  Here, not only did the Plaintiffs pay Roger Claypool for biased testimony that they seek to impute to SFA, he also demonstrably revealed SFA's confidential information to Plaintiffs' counsel.  The Plaintiffs cannot be rewarded for their tactics, and they accordingly should not be permitted to offer his testimony in this action, especially where the testimony is inadmissible under Rule 403's balancing test.

DEFENDANTS,

SEARS, ROEBUCK & CO.,
SHINN FU CORPORATION,
SHINN FU COMPANY OF AMERICA, INC.,
MVP (HK) INDUSTRIES, LTD., and
WEI FU (TAISHAN) MACHINERY & ELECTRIC CO., LTD.

By: /s/ *signature*

    Dennis O. Brown, Esq. (ct04598)
    Steven J. Zakrzewski, Esq. (ct28934)
    Gordon & Rees, LLP
    95 Glastonbury Blvd., Suite 206
    Glastonbury, CT 06033
    (860) 278-7448
    (860) 560-0185 (fax)
    *dbrown@gordonrees.com*
    *szakrzewski@gordonrees.com*

-12-

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2016, the foregoing was electronically filed and served by mail on anyone unable to receive notice of electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to receive notice of electronic filing as indicated in the Notice of Electronic Filing. Parties may access this document through the Court's CM/ECF System.

_____
Steven J. Zakrzewski