UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FREDERICK KLORCZYK, JR., *et al.*, *Plaintiffs*, <br><br> v. <br><br> SEARS, ROEBUCK & CO., *et al.* *Defendants*. | No. 3:13-cv-00257 (JAM) |

### RULING DENYING DEFENDANTS' MOTION
### TO PRECLUDE TESTIMONY OF ROGER CLAYPOOL

Before the Court is defendants' motion to preclude the testimony of plaintiffs' witness Roger Claypool. Defendants contend that Claypool is an improperly paid fact witness who disclosed confidential and privileged information to plaintiffs. For the reasons explained below, I will deny defendants' motion.

#### BACKGROUND

Plaintiffs Frederick and Lynne Klorczyk brought this wrongful death action under Connecticut's products liability statute against the alleged sellers, manufacturers, and distributors of a jack stand following the tragic death of their son, Christian Klorczyk. Plaintiffs allege that Christian was using the jack stand to raise the front end of his car while he performed an oil change at plaintiffs' home in March 2011. The jack stand allegedly failed and collapsed, causing the car to fall on Christian and crush him to death.

Plaintiffs claim that the jack stand was defective in its design or manufacture, and also that defendants are liable for failure to provide adequate instructions or warnings. The five defendants include Sears, Roebuck & Co. ("Sears"), from whom the Klorczyks purchased the jack stand; Wei Fu (Taishan) Machinery & Elec. Co., Ltd. ("Wei Fu"), a Chinese corporation

that allegedly manufactured the jack stand; MVP (HK) Industries, LTD ("MVP"), a Hong Kong corporation that allegedly distributed the jack stand to Sears; Shinn Fu Company of America, Inc. ("SFA"), a Missouri corporation that was allegedly involved in the development, design, manufacture, testing, inspection, distribution, and sale of these jack stands, as well as in drafting warnings concerning their use; and Shinn Fu Corporation ("Shinn Fu"), the Taiwan-based parent company of SFA, MVP, and Wei Fu.

Defendants have moved to preclude the testimony of plaintiffs' witness Roger Claypool, a former SFA employee. Claypool worked for SFA from 1987 until his voluntary separation in December 2008, more than two years before Christian's death. His duties included investigating and processing claims, as well as ensuring that products—including jack stands—complied with safety standards. Toward the end of his tenure, Claypool worked closely with SFA's in-house counsel, Arthur Chaykin.

Claypool first became involved in this case when Rick Heath, an engineering expert hired by plaintiffs, retained him as an independent contractor at a rate of $120 per hour to help Heath identify jack stand serial numbers. Plaintiffs' attorneys later contacted Claypool about his work at SFA. Claypool was ultimately deposed by plaintiffs in August 2016. In addition to being paid for his work helping Heath to identify jack stand serial numbers, Claypool was paid at the same $120 per hour rate for his time spent consulting with plaintiffs' counsel, preparing for his deposition, traveling, and testifying in his deposition. He was also reimbursed for his travel expenses, including airfare and lodging. According to plaintiffs, Claypool has received a total of $8,191.89 in connection with this case. Doc. #245 at 18.[1]

---

[1] As defendants have noted, plaintiffs earlier claimed in their interrogatory responses that as of August 2016, they had paid Claypool over $16,000. See Doc. #228-2 at 12. Although plaintiffs have not explained this discrepancy, the difference in amount is not material to my ruling in this case.

At his deposition, Claypool testified that SFA had knowledge of several prior similar claims of jack stands suddenly collapsing; that defendants knew there was a risk that the jack stands could suddenly collapse due to a phenomenon called false engagement; and that SFA considered alternative designs but rejected implementing them partly because of cost. *See* Doc. #231-2 at 18–23. Plaintiffs allege that Claypool's deposition testimony is particularly important because it contradicts earlier discovery provided to plaintiffs by SFA, in which SFA denied having had knowledge of prior similar claims, false engagement, or alternative safer designs. *See* Doc. #245 at 17.

## DISCUSSION

According to defendants, the Court should preclude Claypool's testimony or otherwise impose sanctions for two independent sets of reasons: (1) plaintiffs' payments to Claypool, a fact witness, were improper, unreasonably high, and biased his testimony, and (2) Claypool had access to and improperly disclosed SFA's confidential and privileged information.

***Improper Payment of Fact Witness***

Defendants argue that Claypool should be precluded from testifying because he is a fact witness who was improperly paid for his cooperation and testimony, in violation of the Connecticut Rules of Professional Conduct and the Federal Anti-Gratuity Statute, 18 U.S.C. § 201. Plaintiffs counter that Claypool is a "hybrid fact witness/consultant," that he was reasonably and properly compensated for his time, and that even if Claypool had been improperly compensated, preclusion would not be the correct remedy. I largely agree with plaintiffs.

Rule 3.4 of the Connecticut Rules of Professional Conduct provides that "[a] lawyer shall not . . . (2) offer an inducement to a witness that is prohibited by law." Conn. R. Prof. Conduct

3

3.4; *see also* D. Conn. L. Civ. R. 83.2(a) (applying Connecticut Rules of Professional Conduct to lawyers practicing in the District of Connecticut). The official commentary to Rule 3.4 further provides that "it is not improper to pay a witness's expenses or to compensate an expert witness on terms permitted by law. The common law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for testifying and that it is improper to pay an expert witness a contingent fee." Conn. R. Prof. Conduct 3.4 Commentary.

Although the rule at common law prohibited compensating fact witnesses in any manner, the common law rule has been relaxed over time. The ABA's Formal Ethics Opinion interpreting ABA Model Rule 3.4 (which in relevant respects is identical to Connecticut's Rule 3.4) advises that non-expert witnesses may be compensated not only for time spent testifying but also for time spent preparing to testify, as long as payment is not conditioned on the content of the witness's testimony and does not violate the law of the jurisdiction. Time spent preparing to testify can include "pretrial interviews with the lawyer in preparation for testifying," as well as "time spent in reviewing and researching records that are germane to [the witness's] testimony." ABA Formal Op. 96-402 (1996). Being compensated for these activities is not improper as long as the lawyer makes it clear to the witness "that the payment is not being made for the substance or efficacy of the witness's testimony, and is being made solely for the purpose of compensating the witness for the time the witness has lost." *Ibid*.

Other courts within the Second Circuit have echoed this position, distinguishing between acceptable payments, such as those covering "the actual expenses of a witness in attending court and reasonable compensation for time lost," and unacceptable payments, such as "the payment of a sum of money to a witness to testify in a particular way; the payment of money to prevent a witness' attendance at a trial; [and] the payment of money to a witness to make him

4

'sympathetic' with the party expecting to call him." *State of N.Y. v. Solvent Chem. Co.*, 166 F.R.D. 284, 289 (W.D.N.Y. 1996). Indeed, "a witness may be compensated for the time spent preparing to testify or otherwise consulting on a litigation matter in addition to the time spent providing testimony in a deposition or at trial." *Prasad v. MML Inv'rs Servs., Inc.*, 2004 WL 1151735, at *5 (S.D.N.Y. 2004).

Here, there is no evidence that Claypool was paid to testify in a particular way or that his payment was contingent upon the content of his testimony. Defendants argue that Claypool was induced to testify falsely and in favor of plaintiffs; as evidence they point out that his deposition testimony contradicted an email he sent in January 2005 when he was employed at SFA. Doc. #231-1 at 10–11. I am not persuaded by defendants' argument that Claypool's deposition testimony and the email are necessarily irreconcilable; nor am I persuaded by defendants' broader argument that Claypool's testimony reveals his obvious bias. Defendants will have the opportunity to point out inconsistencies in Claypool's testimony and to impeach him with prior inconsistent statements when cross-examining him at trial.

Nor do I find the rate at which plaintiffs paid Claypool—$120 per hour—to be unreasonable. As defendants point out, this rate far exceeds what Claypool (who is now semi-retired) earns in his current part-time job as a community college instructor and also exceeds what he earned when he worked at SFA. Nevertheless, I find that $120 per hour is not unreasonable compensation for Claypool's time, considering his many years of relevant professional experience.

I am also unconvinced by defendants' argument that Claypool's testimony should be precluded under Federal Rule of Evidence 403. Under Rule 403, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair

prejudice." Fed. R. Evid. 403. Defendants urge the Court to adopt the reasoning of *Rocheux Int'l of New Jersey v. U.S. Merchants Fin. Grp., Inc.*, 2009 WL 3246837, at *1, 3 (D.N.J. 2009), a case in which the court decided to exclude the testimony of a paid fact witness pursuant to Rule 403. But unlike in *Rocheux*, where the Court found that the witness's testimony was "irrelevant" and that the witness was a disgruntled employee who had initiated contact with plaintiff and plaintiff's counsel, Claypool's testimony appears to me highly relevant and not unfairly prejudicial. In short, I conclude that there is no merit to defendants' argument that plaintiffs have made improper payments to Claypool.

### *Improper Disclosure of Privileged and Confidential Information*

Distinct from the payment issue, defendants contend that Claypool should be disqualified (a) because of his extensive access to SFA's confidential and privileged information, and (b) because he in fact disclosed confidential and privileged information to plaintiffs. I do not agree.

Defendants first assert that Claypool's exposure to privileged and confidential information during his tenure at SFA is enough on its own to warrant his disqualification as a witness. But this argument is hard to reconcile with the separation agreement between SFA and Claypool, which expressly permits him to consult with parties litigating against SFA and to testify as an expert against SFA after January 1, 2011.[2] Given this explicit agreement, I am not inclined to find that Claypool is automatically disqualified as a witness based solely on his exposure to confidential and privileged information.

Defendants additionally argue that plaintiffs violated Rule 4.2 of the Connecticut Rules of Professional Conduct when they initially contacted Claypool *ex parte*. Rule 4.2 prohibits a

---

[2] The separation agreement provides, in relevant part: "Employee will not consult with any Party to litigation against the Company or testify as an expert against Company for two years starting January 1, 2009 or for six months after Employee's last consulting arrangement with Company is completed, whichever is later." Doc. #228-2 at 37.

6

lawyer from communicating about the subject of the representation with an adverse party represented by another lawyer without the consent of that other lawyer. The rule, however, does not generally encompass former employees of the adverse party. *See, e.g.*, *Saliga v. Chemtura Corp.*, 2013 WL 6097100, at *1 (D. Conn. 2013); *Data Capture Sols. Repair & Remarketing, Inc. v. Symbol Techs., Inc.*, 2008 WL 4681676, at *3 (D. Conn. 2008); *Dubois v. Gradco Sys., Inc.*, 136 F.R.D. 341, 346 (D. Conn. 1991) (Cabranes, J.).

Finally, defendants argue that Claypool should be disqualified because he actually disclosed privileged and confidential information to plaintiffs. As defendants point out, and as plaintiffs have conceded, plaintiffs failed to instruct Claypool in writing not to disclose attorney-client communications, and they failed to instruct him either verbally or in writing as to the definition of work product. But defendants have failed to identify exactly which communications or documents they contend were improperly disclosed, to sufficiently explain why such communications or documents were protected from disclosure, or to persuade me that any disclosures by Claypool have prejudiced defendants.[3]

Both parties acknowledge that during his time at SFA, part of Claypool's job was to investigate and resolve claims; only a subset of these claims ended up in litigation or involved counsel at all. As I indicated at the hearing, defendants may seek to preclude Claypool from

---

[3] To the extent that defendants have identified specific information disclosed to plaintiffs by Claypool, this information does not appear to be protected by the attorney-client privilege or work product doctrine. For example, defendants contend that a list prepared by Claypool of jack stand claims that Claypool worked on and that ended in settlement, *see* Doc. #231-4 at 4–5, is protected by the work product doctrine as a document prepared in anticipation of litigation. Doc. #231-1 at 16 n.13. But I disagree that such a list, prepared by Claypool after his departure, constitutes a document prepared in anticipation of litigation. *See In re Grand Jury Proceeding*, 79 F. App'x 476, 477 (2d Cir. 2003) ("A document is prepared in anticipation of litigation when, in light of the nature of the document and the factual situation in the particular case, [it] can fairly be said to have been prepared or obtained *because of* the prospect of litigation."). Defendants also contend that Claypool shared information regarding his own purported deficiencies in drafting product instructions and warnings, but do not adequately explain why such information would be protected by either attorney-client privilege or work product protection. *See, e.g.*, *Thurston v. Okemo Ltd. Liability Co.*, 123 F. Supp. 3d 513, 516 (D. Vt. 2015).

testifying concerning specific cases on which he worked in connection with an attorney. But the fact that Claypool worked at times with an attorney towards the end of his tenure at SFA does not warrant the preclusion of his entire testimony.

## CONCLUSION

For the foregoing reasons, defendants' motion to preclude the testimony of Roger Claypool (Doc. #228) is DENIED.

It is so ordered.

Dated at New Haven, Connecticut this 1st day of August 2017.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge