

# HERZFELD & RUBIN, P.C.
ATTORNEYS AT LAW

125 BROAD STREET, NEW YORK, NY 10004   TEL 212 471-8500   FAX 212 344-3333   WWW.HERZFELD-RUBIN.COM

**Howard S. Edinburgh**
Direct Line: (212) 471-8529
hedinburgh@herzfeld-rubin.com

December 19, 2017

**Via E-Filing and E-Mail**
Hon Jeffrey A. Meyer
Richard C. Lee United States Courthouse
Courtroom 3
141 Church Street
New Haven, CT 06516

        Re:    *Klorczyk v. Sears Roebuck, et. al.*
                 *Case No. 3:13- CV-00257- JAM*

Dear Judge Meyer:

      We respectfully submit this reply to the December 18, 2017 letter filed by counsel for defendant Sears, Roebuck & Co. ("Sears") (Dkt. No. 282), and in further support of our December 11, 2017 letter seeking an order directing Sears to produce documents responsive to the subpoena served on its - claims administrator Sedgwick Claims Management Services, Inc. ("Sedgwick") (Dkt. No. 279).

      Sears' counsel, Erica Todd, distorts the record concerning this discovery dispute. Ms. Todd claims that the "Sedgwick documents were previously produced [on] July 17, 2015" as part of Sears' Response to Plaintiffs' Fourth Set of Requests for Production.. At no point during the protracted history of this dispute, has Ms. Todd voiced the position advanced in her letter. Indeed, if Ms. Todd were of the view that responsive documents had been produced, she would not have repeatedly informed us that she was working with Sedgewick to "gather the records" and was "working on" the Sedgewick production. As recently as February 2017, Ms. Todd stated she was working on the Sedgewick production with an assistant and "[p]romised will get done in next few weeks." (*See* Dkt. No. 279-4 (Exh. D to Pl.'s Dec. 11th Letter), Feb. 24, 2017 E-mail from E. Todd.)

**AFFILIATES**

LIVINGSTON, NEW JERSEY      LOS ANGELES, CALIFORNIA      GARDEN CITY, NEW YORK

BUCHAREST, ROMANIA      YANGON, MYANMAR



Hon Jeffrey A. Meyer
Page 2

      Moreover, it is simply not the case that Sears produced Sedgewick's claims files as part of its responses to Plaintiffs' Fourth Set of Requests for Production. With the exception of a single e-mail relating to the Klorczyk claim, Sears' responses consisted entirely of testing records by a company called "Intertek". The sole "claims" document, SEARS 000000327 was a February 7, 2013 email from Kathy Guerra of Sears concerning the *Klorczyk* legal complaint (Ms. Guerra was, as we earlier discussed, Sears 30(b)(6) deposition witness). The only other "claim" related document was the last page of that production (without bates numbers) containing a 3 item privilege log, the same log copied and reproduced as Exhibit "B" to Ms. Todd's letter.

      Sears has never produced any claims related documents involving the "Paul Becignue" or "Frank Deunas" claims, which are reflected in the privilege log attached as Exhibit "B" to Ms. Todd's letter. Ms. Todd fails to explain how these materials are covered by the attorney-client and/or work product privilege. In particular, there is no indication in the privilege log that the author or recipient of the claims notes in the *Becigruel* or *Duenas* claims was an attorney. The only name identified is Margaret Oskorep, the same name appearing as a recipient of the Guerra email referred to above. After agreeing to produce Sedgewick's subpoenaed records and repeatedly stating that she was working on the production, Ms. Todd cannot now claim that she has already complied by relying on a privilege log that accompanied a production made by Sears months prior to service of the Sedgewick subpoena. While Ms. Todd suggests that this entire dispute is a waste of time, nothing prevented her from indicating as much in her prior correspondence. Instead, in lieu of going forward with Sedgewick's deposition, she agreed to review and produce documents responsive to our subpoena, then delayed for one year only responding now under threat of a court order.

      The electronic search, as described by Ms. Todd, was limited to search terms "jack" and "jack stand" and apparently uncovered 159 claims files, which came as news to us. We agree that claims involving pump jacks are not material and we're not seeking such records. However, Ms. Todd letter does not address how many jack stand related claims files there are, which files are relevant and responsive to the subpoena.

      Moreover, and critically, there is no dispute that most of the jack stands sold by Sears in the time period for which claims must be provided, 2003-2011, were ratchet and pawl designed stands sold under the "Craftsman" label, and these stands were made for or distributed to Sears by the non-Sears defendants. Ms. Todd fails to explain how an initial search finding 159 claims was culled down such that *no* produced documents are responsive to the Sedgwick subpoena.



Hon Jeffrey A. Meyer
Page 3

It appears that Ms. Todd's rationale is that if the claims document did not contain the name Wei Fu, Shinn Fu, or MVP, then there are no responsive documents. Yet, a claim made to Sedgwick (and materials relating to such claims) would not likely include the name of the foreign entities. Indeed, it is more likely that by introducing these terms as part of the search, the results were artificially skewed to eliminate responsive documents. Additionally, since Sears' "jack stands" are also marketed and sold as vehicle support stands, and not always by the common vernacular, "jack stand" Ms. Todd's use of the term "jack stand" alone was again, artificially restrictive.

Finally, we are sympathetic to Ms. Todd's family issues, and have made every effort to accommodate her, including by exhausting efforts to resolve this issue without seeking the Court's intervention. In fact, if Ms. Todd had simply informed us of the information in her letter, we very likely could have resolved the issues. The Sedgwick subpoena was served more than a year ago. In the months that followed, time and again we agreed to give Ms. Todd additional time to respond. While we remain sympathetic to counsel's personal situation, there is no justification for counsel's long overdue responses to the Sedgwick subpoena.

In sum, we ask that the documents listed in the privilege log be produced or alternatively reviewed *in camera*. We also request that Sedgwick be directed to provide an affidavit from a knowledgeable employee explaining in detail the search undertaken by Sedgwick in response to our subpoena so we and the Court may understand how an initial finding of 159 claims resulted in no claims files being produced. Thank you for your consideration.

Respectfully yours,

Howard S. Edinburgh

cc: All Counsel of record via CM/ECF