```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT


    FREDERICK KLORCZYK, JR. As co-administrator of the
    Estate of Christian r. Klorczyk, et al.


                                                       PLAINTIFFS


    V.
                    CIVIL ACTION NO. 3:13-CV-00257-JAM


    SEARS ROEBUCK & CO., et al.


                                                       DEFENDANTS

    _____

             VIDEO DEPOSITION FOR THE DEFENDANTS,
                  SEARS ROEBUCK & CO., et al.:

      The Video Deposition of Frederick G. Heath,
    taken in the above-styled matter at Court Reporting
    Services, Inc., 6013 Brownsboro Park Boulevard, Suite
    A, Louisville, Kentucky, on the 22nd day of
    March, 2017, beginning at 10:24 a.m.
```

1  Q. And you looked at the deposition of Lynn
2  Klorczyk -- Klorczyk; is that correct?
3  A. Yes, sir.
4  Q. It's Number 18 on your list?
5  A. Yes, sir.
6  Q. And Number 19, the deposition of -- of
7  Fred Klorczyk?
8  A. Yes, sir. By the way, I think there were
9  subsequent depositions of both Lynn and Frederick
10 that I've also reviewed that aren't on this list.
11 Q. You have seen the transcripts of the
12 subsequent depositions?
13 A. Yes, sir.
14 Q. Did anything in those transcripts change
15 any of your opinions?
16 A. Nope, they reinforced my opinions.
17 Q. Have you seen the transcript of Parker
18 Klorczyk?
19 A. Yes, sir.
20 Q. Did anything in it change your opinions?
21 A. No, sir.
22 Q. Let me ask you a rather broad question.
23 Are you aware of any physical evidence that
24 Christian Klorczyk was using a jack stand when
25 this accident occurred?

```
 1    A.    No.  I wasn't at the accident scene at the
 2   time of the accident.
 3    Q.    In your inspection of the scene, the
 4   actual jack stand used, the vehicle that was
 5   involved in the accident, have you seen
 6   documented -- is there any physical evidence
 7   you've seen in reviewing those things which would
 8   prove to that you a jack stand was being used that
 9   day?
10    A.    Gosh.  I don't remember what was in the
11   police photographs.  There may've been some -- a
12   shot of a -- a jack stand in police photographs, but
13   I honestly don't recall.  But that's about the only
14   place I would have had access to such to -- in -- in
15   response to your question.
16    Q.    Have for purposes of your opinion you
17   assumed that a jack stand was being used that
18   day?
19    A.    Yes, sir.  I --
20    Q.    And --
21    A.    -- I -- I relied on the testimony that was
22   offered, and that's about all I had to go on.
23    Q.    And that testimony is the testimony of
24   Fred and Lynn Klorczyk?
25    A.    Yes, sir.
```

1   release within a realm of -- of predictable or -- or
2   possible release mechanisms?
3   BY MR. BROWN:
4        Q.   And there is a comment there:  [reads] To
5   continue this testing, it will require a new jack
6   stand.
7        A.   Right.
8        Q.   [reads] The pawl tooth on the exemplar
9   jack stand has become deformed by the repeated
10  high contact loading the the [sic] 1900-pound level
11  and it no longer can be used for this test.
12       Do you see that?
13       A.   I do.
14       Q.   So I've got to you again to start out
15  where we began this morning:  Are you certain that
16  that one jack stand you brought here today is the
17  same one that was used in all these tests and the
18  later tests with the automobile?
19       A.   Yes.
20       Q.   Okay.  So despite this comment by Glenn
21  that it shouldn't be used any longer, did you make
22  a conscious decision to keep using it?
23       A.   Yes.
24       Q.   Why was that?
25       A.   Because that's the jack stand we had that

1  was similar to the other -- to the accident jack
2  stand.  The problem with continuing using it was it
3  was much more difficult to achieve point to point
4  contact because the surfaces had become -- which
5  I've already testified to today -- the surfaces had
6  become hardened from contact stresses and
7  smooth because of repeated loading.
8     And so it -- once we got engagement, after all
9  this wear had taken place, we could get it, but it's
10 just more difficult to achieve in the first place.
11    Q.   Sufficient tests were run at
12 the 1900-pound level that it caused damage to the
13 jack stand?
14    A.   Where are you looking?
15    Q.   I -- I'm asking.
16    A.   Oh.  What?
17         MR. EDINBURGH:  Objection as to form.
18    A.   Caused damage to the jack stand.  I
19 wouldn't call it damage; I'd call it wear.
20 BY MR. BROWN:
21    Q.   It's become deformed?
22    A.   Well, that's Glenn's term.  The too -- the
23 tooth tips were deformed, in that, the
24 discontinuities in the surface from the casting
25 process were smoothed out and the surface

1  became smoothed and burnished and hardened.
2     Q.   And that made it more difficult for to you
3  get false engagement?
4     A.   Yes.
5     Q.   Wouldn't that also, then, logically make it
6  easier to get it to disengage the way you wanted?
7     A.   It very well might.  But we didn't have
8  that situation in the accident anyway.  We had new
9  jack stands.
10    Q.   So --
11 [WHEREUPON, counsel confers inaudibly.]
12 BY MR. BROWN:
13    Q.   Did you make an attempt to find another
14 exemplar jack stand that was similar to the one
15 that was involved in this accident?
16    A.   Early on we did.  And Sears doesn't sell
17 them anymore.  The replacement stand under the
18 same part number has got little square feet on the
19 bottom and the saddle is smaller and, therefore,
20 the neck of the pyramid is smaller.
21    Q.   Was all the set up and testing and -- you
22 did at these various pound levels all that one jack
23 stand subjected to all of that?
24    A.   Yes.
25    Q.   Now look at the one that's 3775.  This is

```
 1                CERTIFICATE OF REPORTER
 2   STATE OF KENTUCKY AT LARGE:
 3      I, CAROLA G. CASON, RPR, Notary Public
 4   for the State of Kentucky at Large, do hereby
 5   certify that the foregoing was reported by
 6   stenographic and mechanical means, which matter
 7   was held on the date, and at the time and place
 8   set out in the caption hereof and that the
 9   foregoing constitutes a true and accurate
10   transcript of same.
11      I further certify that I am not related to any of
12   the parties, nor am I an employee of or related to
13   any of the attorneys representing the parties, and
14   I have no financial interest in the outcome of this
15   matter.
16      GIVEN under my hand and Notarial seal this
17   _____ day of _____, 2017.
18   .
19   My Commission Expires:         Notary Public
20   .
21   SEPTEMBER 27, 2020    _____
22   .
23   Notary ID: 474950
24   .
25   .
```