**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| FREDERICK KLORCZYK, JR., as co-administrator | : | CIVIL ACTION NO. |
| of the Estate of Christian R. Klorczyk, et al., | : | |
| | : | 3:13-cv-00257-JAM |
| *Plaintiffs*, | : | |
| | : | |
| vs. | : | |
| | : | |
| SEARS, ROEBUCK AND CO., et al., | : | |
| | : | |
| *Defendants*. | : | OCTOBER 11, 2018 |

**LOCAL RULE 56(a)(2) STATEMENT OF FACTS IN OPPOSITION TO  MOTION FOR SUMMARY JUDGMENT BY SHINN FU CORPORATION AND SHINN FU COMPANY OF AMERICA, INC. ON THE GROUNDS THAT THEY WERE NOT IN THE STREAM OF COMMERCE WITH RESPECT TO THE SUBJECT PRODUCT**

Pursuant to Local Civil Rule 56(a)(2), Plaintiffs Frederick Klorczyk, Jr. and Lynne Klorczyk, co-administrators of the Estate of Christian Klorczyk, submit this statement of facts in opposition to Defendants' local rule statement in support of the motion for summary judgment by defendants Shinn Fu Corporation ("SFC") and Shinn Fu America, Inc. ("SFA") on the grounds that they were in the stream of commerce with respect to the subject product.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' LOCAL RULE STATEMENT**

1.  The operative complaint is the Plaintiffs' Second Amended Complaint dated April 10, 2014 (ECF No. 99), which includes one of action under the Connecticut Product Liability Act ("CPLA"), Connecticut General Statutes Section 52-572m, et seq., against the five Defendants in this action:  Sears, Roebuck & Co. ("Sears"), Shinn Fu Corporation ("SFC"), Shinn Fu Company of America, Inc. ("SFA"), MVP (H.K.) Industries, Ltd. ("MVP"), and Wei Fu (Taishan) Machinery & Electric Co., Ltd. ("Wei Fu").

**RESPONSE: Admitted.**

2.  The allegedly defective product is a "Craftsman Heavy Duty Jack Stand, Model No. 50163" (the "jack stand"). Compl. ¶ 17.

    **RESPONSE: Admitted.**

3.  The Plaintiffs allege that the decedent, Christian R. Klorczyk, purchased the jack stand from a Sears department store in Waterford, Connecticut. Compl. ¶ 19.

    **RESPONSE: Admitted.**

4.  The Plaintiffs produced a receipt showing that the jack stand was purchased on January 1, 2011 from the Sears department store in Waterford, Connecticut.  Purchase Receipt, Ex. A.

    **RESPONSE: Admitted.**

5.  The Plaintiffs allege that the decedent was changing a car's oil at the Plaintiffs' home when the jack stand failed, causing the vehicle to fall on him.  Compl. ¶¶ 20-22.

    **RESPONSE:  Admitted, except Plaintiffs' note that Defendants do not set forth all the allegations contained in paragraphs 20-22 of the Second Amended Complaint (ECF No. 99).**

6.  The Plaintiffs claim the Defendants are liable for the decedent's injuries under the CPLA because they designed, manufactured, imported, wholesaled, distributed, or retailed the jack stand. Compl. ¶ 17.

    **RESPONSE: Admitted, except refer to the Second Amended Complaint for all the allegations as to defendants' liability under the CPLA.**

7.  Sears ordered the jack stand directly from MVP (HK) Industries, Ltd. on June 1, 2010, specifying the factory of Wei Fu Taishan Machinery & Electric Co, Ltd. Purchase Order ("Purchase Order"), **Ex. B**.

**RESPONSE: Admitted, except note that Defendants' Exhibit "B" states that Sears ordered 950 "cartons" or units of 4 ton jack stand pairs which are identified as being T6904 stands as well as 50163 stands. Plaintiffs admit the stand involved in the fatal incident was part of this order.**

8.  The Purchase Order lists a revised ship date of September 29, 2010 and an in-store date of November 22, 2010. **Ex. B**.

    **RESPONSE**: **Admitted.**

9.  MVP later shipped the jack stand directly to Sears on October 21, 2010 via UPS. Sea Waybill, **Ex. C**.

    **RESPONSE: Admitted, except note that Defendants' Exhibit "C" states 950 "cartons" containing 4 ton jack stand pairs were shipped. Plaintiff's admit the stand involved in the fatal incident was part of this order.**

10. Christian Klorczyk purchased the jack stand from Sears on January 1, 2011. **Ex. A**.

    **RESPONSE: Admitted.**

11. Sears' Rule 30(b)(6) witness, Kathryn Guerra, testified that the model number 50163 jack stands were designed and manufactured by MVP for Sears.  Kathryn Guerra Dep. Tr. pp. 105:12-106:2, 107:2-7, **Ex. E**.

    **RESPONSE: Admit Ms. Guerra testified as such on the pages indicated and note that Ms. Guerra subsequently clarified her testimony and testified MVP, as opposed to Sears, was "responsible" for the design and manufacture of the Craftsman jack stands. Guerra Dep., Exh. "V" to plaintiffs' opposition, pp. 107: 1-19, 108: 10-13, 124: 2-10.**

12. Kathryn Guerra testified that MVP was the vendor for the model number 50163 jack stands, and Wei Fu was the producing factory.  Kathryn Guerra Dep. Tr. p. 116:12-4, **Ex. E**.

**RESPONSE: Admitted.**

13. SFC's Rule 30(b)(6) witness, Chang Chin He, testified that SFC did not manufacture, test, sell, distribute, or sell model number 50163 jack stand. Chang Chin He Dep. Tr. pp. 88:14-89:5, **Ex. F**.

**RESPONSE: Admitted.**

14. Chang Chin He testified that at his time at SFC, from 2008 to 2017, SFC did not sell any products at all for the automotive do-it-yourself market, nor did it sell any Craftsman branded products. Chang Chin He Dep. Tr. p. 90:1-11, **Ex. F**.

**RESPONSE: Admitted.**

15. SFA's Rule 30(b)(6) witness, Ryan Jorgensen, testified that SFA did not sell jack stands to Sears during the relevant time frame, as Sears bought them from MVP, and SFA was not in the "sales chain." Ryan Jorgensen Dep. Tr. pp. 29:3-6, 33:3-14, **Ex. G**.

**RESPONSE: Denied. The actual testimony of Ryan Jorgensen in the cited pages when asked if SFA between 2008-2011 was involved in the sale or distribution of Sears Craftsman jack stands was "I don't believe we were in the sales chain".**

16. Ryan Jorgensen testified that SFA did not design ratchet-and-pawl jack stands, as designs were handled by the respective factories that made the jack stands. Ryan Jorgensen Dep. Tr. pp. 29:16-30:8, **Ex. G**.

**RESPONSE: Admitted.**

17. Wei Fu's Rule 30(b)(6) witness, Su Chien Chi, testified that model number 50163 jack stands were designed by a Wei Fu engineer, with Sears' approval and without any involvement form Shinn Fu Corporation. Su Chien Chi Dep. Tr. pp. 92:22-93:23, **Ex. H**.

4

**RESPONSE: Admitted, except Mr. Su did not testify at the cited pages that SFC was not involved in the design of the 50163 jack stand. Mr. Su testified only that Wei Fu did not need SFC's approval for the design.**

18. Wei Fu's Rule 30(b)(6) witness, Su Chien Chi, testified that Wei Fu manufactured model number 50163 jack stands throughout the entire period relevant to this action, from 2007 to 2011. Su Chien Chi Dep. Tr. pp. 90:3-14, 93:24-94:1, **Ex. H**.

**RESPONSE: Admitted.**

19. Wei Fu's Rule 30(b)(6) witness, Su Chien Chi, testified that Wei Fu worked with MVP to obtain all necessary content and to print the product manuals. Su Chien Chi Dep. Tr. pp. 106:16-107:25, **Ex. H**.

**RESPONSE: Admitted.**

20. MVP's Rule 30(b)(6) witness, Nora Lee, testified that MVP bought the subject jack stands from another distributor, MVP International, and sold them directly to Sears.  Nora Lee Dep Tr. pp. 110:24-111:16, **Ex. I**.

**RESPONSE: Admitted, except Ms. Lee never testified that MVP International was a "distributor". Ms. Lee testified that MVP International was a "consulting company", a "middle agency" for MVP and she was "not sure" if the two companies were related. Lee Dep., Exh "G" to the opposition, pp. 85:19- 88:6.**

21. MVP's Rule 30(b)(6) witness, Nora Lee, testified that MVP designer Addy Law was responsible for drafting the product manual, which would then be given to MVP engineer Ivan Chan for review.  Nora Lee Dep Tr. pp. 80:13-81:25, **Ex. I**.

**RESPONSE: Admitted.**

22. MVP's Rule 30(b)(6) witness, Nora Lee, testified that Sears issued purchase orders directly to MVP, and issued payment directly to MVP.  Nora Lee Dep Tr. pp. 111:17-23, **Ex. I**.

**RESPONSE**: **Admitted.**

23. Nora Lee testified that SFA was not a party to the transaction, and SFA did not buy or sell model number 50163 jack stands during the relevant time period.  Nora Lee Dep Tr. pp. 112:2-113:17, **Ex. I**.

**RESPONSE**: **Admitted**.

24. In response to this Court's Order (ECF No. 205 p. 3), the Plaintiffs issued supplemental responses on July 18, 2016 to SFA and SFC's interrogatories and requests for production regarding the Plaintiffs' claims that SFA and SFC were in the stream of commerce for the subject jack stand. Plaintiffs' July 18, 2016 Supplemental Responses, **Ex. J**.

**RESPONSE**: **Admitted.**

25. The Plaintiffs' supplemental responses dated July 18, 2016 assert that (1) SFC is the parent company, and SFA is part of a group of companies, that includes MVP and Wei Fu, which are the actual distributor and manufacturer of the subject jack stands; (2) SFA sells or prepares to sell "products of the type" that are at issue in this action; and (3) SFC and SFA shared an insurance policy and a claims administrator with MVP and Wei Fu. **Ex. J**.

**RESPONSE**: **Admitted, except refer to the wording of plaintiffs' actual July 18, 2016 Supplemental Responses to SFA and SFC's Interrogatories (Defendants' Exh. "J"), Supp. Response to Interrogatories Nos. 1 and 2, instead of the defendants' characterization of those responses.**

26. The Plaintiffs' supplemental responses dated July 18, 2016 do not directly assert that SFC or SFA were in the chain of distribution for the subject jack stands, or that they were involved with the subject jack stands. **Ex. J**.

**RESPONSE: Deny. The July 18, 2016 Supplemental Responses (Defendants Exh. "J") do assert that SFA and SFC were involved with the Sears 50163 jack stands and their distribution (Response to Interrogatory Nos. 1 and 2).**

27. The Plaintiffs' supplemental responses dated July 18, 2016 cite three documents to support their allegation that SFC and SFA's should continue on as Defendants: (1) a Sales Representative Agreement between SFA and MVP; (2) the insurance policy applicable to the Plaintiffs' claim; and (3) a PowerPoint presentation from SFC.  *See* **Exhibits K**, **L**, and **N**; Ex. J.

**RESPONSE: Admitted, except note that Plaintiffs' July 18, 2016 Supplemental Responses (Dft's Exh. "J", Response to Interrogatory. Nos 1 and 2) also state the plaintiffs had not yet deposed SFC, MVP or Wei Fu 30(b)(6) witnesses or Arthur Chaykin, another designated SFA 30(b)(6) witness, and would further supplement after the depositions and concerning documents discussed at the then upcoming depositions.**

28. The Plaintiffs' further supplemental responses dated June 25, 2018 re-iterated that that SFA should be liable because of its Sales Representative Agreement with MVP, because of the shared insurance policy, and because it sold and tested "similar" models of jack stands. **Ex. J.**

**RESPONSE: Object because plaintiffs' June 25, 2018 Supplemental Responses were not part of Defendants' Exh. "J", but are annexed to plaintiffs' opposition as Exh. "B". Plaintiffs' actual Supplemental Response is found in Response to Interrogatory No. 14**

and the Court is referred to the actual wording therein rather than defendants' characterization of that response.

29. The Plaintiffs also asserted that the 50163 design was based on a different design that was sold by SFA under a brand name owned by SFC. **Ex. J**.

**RESPONSE: Object because plaintiffs' June 25, 2018 Supplemental Responses were not part of Defendants' Exh. "J", but are annexed to plaintiffs' opposition as Exh. "B". Plaintiffs otherwise Deny No. 29, as plaintiffs asserted in their June 25, 2018 Supplemental Responses [Exh. "B", Response to Interrogatory No. 14] that "the Craftsman 50163 model was based on an existing design sold by SFA under a different brand name Pro-Lift, the rights to which were owned by SFC".**

30. The Sales Representative Agreement between SFA and MVP shows the agreement in effect from December 1, 2009 to January 1, 2011 during the relevant period when the subject jack stand was distributed prior to sale. **Ex. K**.

**RESPONSE: Admitted except state that the SFA/MVP Sales Representative Agreement also incorporates by reference terms and provisions from prior SFA/MVP Sales Representative Agreements (Defentants Exh. "K", SFA003345, paragraph. "7").**

31. Under the terms of this agreement, SFA was paid a "monthly service charge" of $1,875.00 to provide:  "(a) Lab testing services; (b) Show management; (c) OIPM support, and (d) Customer phone support." **Ex. K**.

**RESPONSE: Admitted.**

32. MVP's representative testified that SFA may have simply acted as a middleman to provide the draft manual from MVP to Sears for Sears' final approval.  Nora Lee Dep. Tr. pp. 80:13-81:25, **Ex. I**.

**RESPONSE: Deny. Ms. Lee never testified that SFA acted as a "middleman" with respect to the 50163 operator's manual. Ms. Lee never spoke in preparation for her deposition with any MVP employee she claimed was involved with the manual and she, herself, had no role in preparing the manual. Lee Dep., Exh. "G" to plaintiffs' opposition, pp. 80: 9- 82:10.**

33. SFC, SFA, MVP, and Wei Fu were covered under the same insurance policy during the relevant period. **Ex. L.**

    **RESPONSE: Admitted.**

34. SFC's representative testified that these companies all needed insurance to sell goods in the United States, and that "[w]hen we buy it together, the rate, the premium for the insurance policy would be cheaper."  Chang Chin He Dep. Tr. pp. 71:17-72:2, **Ex. F.**

    **RESPONSE: Admitted.**

35. SFA's representative testified that SFA "does a lot of business" in the U.S. and that it is "very easy for [SFA] to negotiate insurance terms including [companies] we do business with," stating that SFA gets a "better rate" then charges the other companies back for their coverage.  Meghann O'Connor Dep. Tr. p. 37:4-9, **Ex. M**.

    **RESPONSE: Admit Ms. O'Connor so testified. However, Ms. O'Connor also testified that she had no knowledge as to why SFC, MVP and Wei Fu were listed as named insured or additional insureds under the Lexington policy procured by SFA. O'Connor Dep., Exh. "J" to plaintiffs' opposition, pp. 34: 10- 37: 12.**

36. MVP's representative testified that including SFC, SFA, MVP, and Wei Fu on the same insurance policy was the most "cost effective way" to buy this insurance coverage.  Nora Lee Dep. Tr. p. 54:15-20, **Ex. I.**

**RESPONSE: Deny. Ms. Lee's actual testimony was limited to SFC and MVP being named insureds under the Lexington Policy. Lee Dep., Exh. "G" to plaintiffs' opposition, pp. 52:18- 54:20.**

37. SFC's representative explained that the PowerPoint presentation showcased a "business network" of "individual companies, individual clients, and products." Chang Chin He Dep. Tr. p. 58:6-11, **Ex. F**.

    **RESPONSE: Admitted.**

38. When asked if SFC controlled this business network, SFC's representative replied "[n]o," and testified that they were involved in buying and selling products to each other. Chang Chin He Dep. Tr. p. 58:13-18, **Ex. F**.

    **RESPONSE: Admitted.**

39. SFC's representative testified that the companies listed in the presentation were "independently run." Chang Chin He Dep. Tr. p. 59:13-20, **Ex. F**.

    **RESPONSE: Admit that was the testimony of Mr. Chang.**

40. SFC's representative testified that MVP and Wei Fu were separate companies involved in buying and selling products in this business network. Chang Chin He Dep. Tr. pp. 64:13-65:2, **Ex. F**.

    **RESPONSE: Deny. Mr. Chang, SFC's 30(b)(6) witness, testified on the cited pages only that MVP and Wei Fu were not in his view companies "affiliated" with SFC.**

41. SFC did not design, manufacture, import, wholesale, distribute, or retail the jack stand that the Plaintiffs claim to be defective in this action. **Exs. A-I, M**.

    **RESPONSE: Objection. Plaintiffs object on the grounds that defendants are stating herein a legal inclusion and opinion rather than a concise statement of material facts.**

**Plaintiffs otherwise Deny that the exhibits referred to support the statement that SFC did not design, manufacture, import, wholesale or retail the 50163 jack stands.**

42. SFA did not design, manufacture, import, wholesale, distribute, or retail the jack stand that the Plaintiffs claim to be defective in this action.  **Exs. A-I, M.**

**<u>RESPONSE</u>: Objection. Plaintiffs object on the grounds that defendants are stating herein a legal inclusion and opinion rather than a concise statement of material facts. Plaintiffs otherwise Deny that the exhibits referred support the statement that SFA did not design, manufacture, import, wholesale or retail the 50163 jack stands.**

43. The Plaintiffs' own paid fact witness, former SFA employee Roger Claypool, testified that all of the Defendants were "separate companies" and "separate businesses" that "functioned independently" and did not share each others' bank accounts.  Claypool Dep. Tr. pp. 48:5-49:7, 174:8-175:19, **Ex. O**.

**<u>RESPONSE</u>: Admit in part and Deny in part. Deny because the page references to Roger Claypool's deposition at pp. 48-49 do not concern whether defendants were "separate" businesses and further deny that Mr. Claypool was a "paid fact witness". Admit his testimony on pages 174-175 of his transcript. Mr. Claypool also testified that MVP was part of the global business operation of SFC, that "SFA worked as a satellite to SFC," that SFA, Wei Fu and MVP were all operated under the direction and control of SFC, were all part of SFC's "affiliated global operations" as per the SFC 2011 website presentation, and that SFC, run by the Hung family, had ultimate decision making authority with respect to the business decisions of SFA, MVP and Wei Fu. Claypool Dep., Exh. "E" to plaintiffs' opposition, pp. 40:23- 41:3, 90:20- 95:17.**

**ADDITIONAL MATERIAL FACTS PRECLUDING SUMMARY JUDGMENT[1]**

1.      SFC's 2011 internet presentation states SFC was the apex of the "Shinn Fu Group" with automobile related parts and accessories sold in the retail do-it-yourself, "DIY" market, and identifies Wei Fu , MVP and SFA in a global map as part of SFC's "Affiliated Global Operations" with "2000+ employees worldwide". The web posting further states "Shinn Fu Taiwan [SFC] supplies product development and manufacturing services to Shinn Fu affiliated companies throughout the world". (Exh. "A").

2.      SFA's 2011 public website describes itself as "SFA companies" and that among its divisions is the "Pro-Lift DIY products". The website states that "over the past 30 years, SFA has become the leading distributor of hydraulic lift equipment in the US and Canada", and "In addition to distribution, SFA has also played a key role in engineering, research and product design to help our manufacturing facilities meet our market needs". (Exh. "C").

3.      The founder of the parent Taiwan based SFC was Michael Hung. (Dep. of SFC 30(b)(6) witness Chang Ching He, a/k/a Peter Chang, Exh. "H", pp. 32:18-33:15). His wife is Vickie Huang. (Chang Dep., Exh. "H", pp. 44:13-45:10).

4.      Michael (now deceased) and Vickie had three children, Victor Hung, Betty Hung and Angela Hung. Vickie and her three children are the members of the Board of Directors of SFC. (Chang Dep. Exh. "H", pp. 44:13-45:10, 48:1-21; Exh. "D", Defendants' chart of the Board of Directors at relevant times of SFC, SFA and MVP (Wei Fu had no board)).

5.      Vickie Huang also was/is the general manager of Wei Fu, the highest executive position of the company [(Exh. "D"; deposition of Wei Fu 30(b)(6) witness Su Chien Chi, a/k/a Jeff Su, Exh. "F", pp. 36:12-37:16, 39:1-6; Chang Dep., Exh. "H", p.55:1-11)] and owns the entity which in turn owns Wei Fu (Su Dep., Exh."F", p. 73:3-5)].

---

[1] All references to exhibits will be to exhibits to the opposition to the motion.

6.      Victor Hung is the CEO of SFC and the Hung family owns SFC (Chang Dep., Exh. "H", pp. 32:18-33:15, 34:4-5, 42:10-43:7, 44:13-45:15, 46:13-47:23, 68:16-21). Victor's sisters, Betty Hung and Angela Hung were/are vice presidents of SFC responsible for sales (Chang Dep., Exh. "H", p. 47:8-23).

7.      The Hung family also owns MVP (Deposition of MVP 30(b)(6) witness Nora Lee, Exh. "G", pp. 29:6-30:2; Chang Dep. Exh. "H" p. 53:2-23). The Hung children constitute the MVP Board of Directors (Lee Dep., Exh. "G", pp. 31:25-33:25). Victor Hung was the "boss" of MVP who ran MVP's day-to-day operation (Lee Dep. Exh "G", pp 34:8-35:5, 37:2-5). Despite MVP being based in Hong Kong, Victor ran the operations of MVP from his base in Taiwan (Lee Dep. Exh "G", p. 34:13-20). The other MVP board members, Betty and Angela Hung, also resided in Taiwan (Lee Dep., Exh. "G", pp. 37:15-38:3).

8.      Despite Wei Fu being located in southern China, Vickie Huang ran Wei Fu's day-to-day operations from her home base in Taiwan (Su Dep., Exh. "F", pp. 36:12-37:16, 39:1-6).

9.      Vickie Huang's brother, Steven Huang is the president and COO of SFA (Deposition of SFA 30(b)(6) witness Meghan O'Connor, Exh. "J", pp. 12:1-13:24, 110:10-13). Steven Huang, his sister Vickie, Vickie's children Victor, Betty and Angela Hung, are all on SFA's Board of Directors (Exh. "D"; O'Connor Dep. Exh. "J", pp. 17:5-20:24).

10.     Although rarely coming to the United States or Kansas City where SFA is located, Betty Hung is the CEO of SFA (O'Connor Dep., Exh. "J", pp. 23:16-24:24, 26:6-24, 27:6-13).

11.     SFA is a wholly owned subsidiary of SFC (Chang Dep., Exh. "H", pp. 50:21-51:1; O'Connor Dep., Exh "J", p.16:10-16).

12.     On October 12, 2006 MVP entered into a written agreement with Sears in which MVP (as seller) agreed to be bound by Sears Universal Terms and Conditions (Sears UTC) (Exh. "K",

MVP Bates No. MVP010203-MVP010211) which required MVP to indemnify Sears (section 11.2, MVP010207) and to "obtain a policy of policies of Commercial General Liability Insurance" (section 12, MVP010207).

13.     The subject "Merchandise" are listed in Sears Accelerated Line Review Agreement, dated December 11, 2006 (Exh. "L", MVP010229-MVP010243). The ALR lists a "NEW" "Craftsman Professional – 4T jack stands" invoiced in U.S. dollars and F.O.B. China at $10.75. MVP is to ship the initial batch of 6,000 by February 15, 2007 (MVP 010243).

14.     At the same time MVP was to provide Sears with a new 4 ton jack stand, MVP and SFA on October 1, 2006 entered into a Sales Representative Agreement in effect to December 31, 2007. (Exh. "N", Bates No. SFA 003336-SFA 003339). The October 2006 Agreement states that "MVP wishes to retain SFA as its Representative for the Market Area" which is the United States. (Exh. "N").

15.     SFA is described in this Agreement as MVP's "Sales Agent" who will "market, sell, provide customer relations and otherwise perform all sales and marketing activities on behalf of MVP". SFA is to undertake to maximize sales of MVP products in the Market Area. The parties refer to the Agreement as a "Sales Agency Agreement" (SFA 003337). (Exh. "N").

16.     SFA in the Agreement agrees to provide MVP with information regarding "prevailing prices and market conditions" and "with information regarding new product ideas and market trends." (Exh. "N"). In section 10 of the SFA/MVP Sales Agency Agreement MVP agrees to pay SFA "a commission of 1.5% on Gross MVP Commission Sales." (Exh. "N", SFA003337).

17.     Ms. Lee and Ms. O'Connor testified that jack stands were part of the MVP products included in the 2006-2007 SFA/MVP Sales Agency Agreement (Lee Dep., Exh. "G", p. 61:4-10; O'Connor Dep., Exh. "J", p.74:1-23). Ms. Lee testified the "new" 4 ton jack stand listed in

Exhibit "A" to the Sears/MVP ALR was the ratchet and pawl designed 50163 model. (Lee Dep., Exh. "G", pp. 77:1-79:9).

18.     Arthur Chaykin, SFA's General Counsel, testified that the SFA/MVP Sales Agency Agreement was executed in contemplation of the contemporaneous agreements between MVP and Sears (Chaykin Dep., Exh. "I", pp. 67:19-70:25) and that both the T6904 4 ton jack stand and the Sears Craftsman 50163 4 ton jack stand would have been included in the MVP products for which SFA would receive a sales commission (Chaykin Dep., Exh "I", pp.71:24-73:14).

19.     Part of Exh. "N" herein are the amendments to the SFA/MVP Sales Agency Agreement. The First (incorrectly labeled as "Second") Amended Agreement covers the period beginning June 1, 2008 (Exh. "N" herein, Bates Numbered SFA 003340-SFA 003341). This amendment states that MVP will no longer as of June 1, 2008 pay sales commissions to SFA. Rather the "sales agency" was to be "converted to a sales and customer support relationship." Under the customer support relationship SFA was to be paid a lump sum of $45,000 per year to SFA and SFA was to provide the MVP with the following: "a. Lab test services; b. Show management; c. OIPM support; d. Customer phone service support".

20.     In addition, MVP was to 100%  reimburse SFA for the services of a full time employee Johnny Lu and 50% for the services of a second SFA employee Jamie Martinez for a total of $93,154 (Exh. "N", SFA 003340). The earlier Sales Agency Agreement, except for the ending of commissions and any other inconsistent provisions, was to remain in effect and "SFA will continue to provide the same services to MVP as previously indicated" (Exh. "N", SFA 003341). Subsequent Amendments to this Sales Agency Agreement between SFA and MVP, became effective December 1, 2009 (Exh. "N", SFA 003346-SFA 003347). In all material respects these

subsequent Amendments were the same as the 2008 "Second Amended Agreement". (SFA 003344-SFA003345)

21.    The policy of insurance produced by defendants was issued by Lexington Insurance Company and was a renewal policy effective May 1, 2010 to May 1, 2011 and lists SFC and MVP as named insured with the insureds addresses being c/o 10939 N. Pomona, Kansans City, MO 64153, the headquarters of SFA. The policy states it was "procured and developed under the Missouri Surplus Lines Law". The Lexington policy lists SFA and Wei Fu as additional insureds (Exh "O", SFT 000024, WFT  001971). The Lexington policy also requires the insureds to have a claims services administrator, a "TPA" (third-party administrator) who is identified in the policy as being Arthur A. Chaykin (SFA's general counsel). (Exh "O", SFT 000005, 000024, 000034).

22.    Ms. O'Connor testified that SFA obtained the Lexington Policy on behalf of MVP, SFC and Wei Fu (O'Connor Dep., Exh "J", pp. 34:13-36:12).

23.    SFA engineer Ryan Jorgensen, an SFA 30(b)(6) witness, testified that the SFA Pro-Lift T6904 4 ton jack stand and Sears Craftsman 50163 4 ton jack stand  had the same locking design, same design and safety design features, same load capacity and the Pro-Lift was on the market from 2006 (Jorgensen Dep., Exh. "P", pp. 25:1-15, 27:15-23, 63:18-64:4, 85:6-7, 112:11-18).

24.    Roger Claypool, SFA's product liability manager before his voluntarily leaving SFA in December 2008, testified that SFA was responsible for developing and designing the jack stands sold under its brands, and as early as the 1990's SFA, at the directive of Michael Hung, SFC's Chairman, was testing ratchet bars, and sending jack stand blueprints, material requirements and

dimensional requirements to Wei Fu (and its predecessor entity) (Claypool Dep., Exh. "E", pp. 32:21-33:7, 35:2-25, 121:11-122:8).

25.     On November 20, 2006 an email was circulated among SFA, SFC, MVP and Wei Fu discussing Sears "Jack Stand Program" and calling for the development of a new the 4 ton jack stand which will require a new Sears model number and be priced at $10.75. (Exh. "Q", SFA003660-SFA003668).

26.     Jeff Su testified that from 2003 to 2012 Wei Fu manufactured ratchet and pawl designed jack stands for SFA including under SFA's Pro-Lift brand. Wei Fu manufactured during these years for SFA a 4 ton jack stand bearing Wei Fu internal designation "T37401". This jack stand had a maximum height of slightly over 17 inches and a minimum height of just over 12 inches (Exh "F", pp. 80:12-82:22). Wei Fu manufactured the SFA Pro-Lift brand 4 ton ratchet and pawl designed jack stand under model number "T6904" (Exh. "F", p. 84:9-20). The T6904 and the T37401 have the same load capacity (8000 pounds) and the same minimum and maximum ratchet bar height (Exh. "F", pp. 84:21-85:17). They both weigh about 5 kilograms with the T37401 being slightly heavier (about "0.1 to 0.2 kg") because the base frame was slightly heavier, and thicker (Exh. "F", pp. 79:24-82:14, 84:21-86:18).

27.     Mr. Su testified the T6904 and 737401 stands have the same collar configuration and dimensions, the same ratchet bar, pawl and handle design (Exh. "F", p.86:8-18).

28.     Mr. Su testified that SFA provided the test standards for the T6904 (Ex. "F", p.87:11-19) and SFA had to approve for the T6904 the Wei Fu design drawings and prototype before production started (Exh "F", pp. 87:3-88:22).

29.     Mr. Su testified that the T6904 predated the T37401 and that the T6904 design was the basis for the T37401 design (Exh. "F", p. 88:15-22).

30.     Mr. Su testified that in about March-April 2007 Wei Fu began manufacturing for Sears a 4 ton ratchet and pawl designed jack stand model number 50163. (Exh. "F", p. 90:3-21). Mr. Su testified that the Wei Fu internal factory number for the Sears 50163 model was T37401 which was the identical Wei Fu factory number for the SFA ProLift T6904 (Exh. "F", pp. 90:22-91:9).

31.     Mr. Su testified that the SFA ProLift T6904 and the Craftsman 50163 had the same ratchet and pawl design, the same locking feature, the same load capacity, the same dimensions, the same testing standards and the same ratchet bar height (Exh. "F", pp. 91:6-92:21, 94:16-95:13). Mr. Su testified that other than the thickness of the steel plate at the base there was no material difference in the design of the Sears 50163 from the design of the SFA Pro-Lift T6904 (Exh. "F", pp. 97:3-98:2).

32.     Mr. Su testified that the unit cost of manufacturing the T6904 and the Sears 50163 were the same (Exh. "F", pp. 99:6-16, 100:18-102:5).

33.     On December 8, 2006, James Wang, an SFA sales manager emails Wu Ching Yaen (a/k/a "Tiger") (a Wei Fu R&D engineer) telling Tiger that "the 4 ton jack stands will be under the 'Craftsman Professional' brand". In that same email chain (on December 6 and 7, 2006) Mr. Wang emails Tiger telling Tiger "we also need to work on the 4-ton jack stands (T-6904)… please advise… 1. Will the product specification for Sears 4-ton jack stand be the same as current Pro-Lift T6904?" (Exh. "R", WFT002523-WFT002524). In response, Tiger writes to Mr. Wang at SFA  "that the T6904 for Sears has the same specifications as the Pro-Lift." (Su Dep., Exh. "F", pp.153:11-154:15).

34.     Mr. Su testified that Wei Fu document Bates numbered WFT000084, was a Wei Fu "comparison table for model numbers", which indicated the Sears 50163, the MVP6904 and the Wei Fu T37401 were the same jack stand (Exh. "R"; Exh "F", p. 146:1-11).

35.    Mr. Su identified a number of MVP purchase orders to Wei Fu and MVP invoices to Sears for the Sears 50163 jack stand. All the orders/invoices show that  MVP purchase orders to Wei Fu for the Sears Craftsman Professional jack stands model 50163 also identified these same jack stands as factory item no. T6904 and as T37401 jack stands (Exh. "R", pp. 146:13-149:25; the invoices/orders are collectively found at Exh. "T", including WFT000086, 000115 and 000116).

36.    Ms. Lee was shown a number of MVP invoices and purchase orders concerning the Sears Craftsman 50163 jack stands and testified that all these invoices and purchase orders shown to her also identified these same 50163 jack stands as T6904 jack stands and Wei Fu numbered T37401 jack stands. (Exh. "G", pp. 88:8-94:12; the orders/invoices are annexed collectively as Exh."U".

37.    Ms. Lee testified that in a September 20, 2011 email from Ms. Lee to a Sears representative, with a SFC sales manager copied, Ms. Lee in an attachment (MVP 009197-MVP 009199) refers to the Sears 50163 jack stand and the MVP T6904 jack stand as the same jack stand (Exh. "G", p. 97:7-17).

38.    Kathy Guerra on January 15, 2007 emailed other Sears employees (MVP009365) about issues she had with the maximum ratchet bar height of the new Model 50163. Sears in turn emailed SFA sales managers Dennis Yu and James Wang for a response to Mr. Guerra's inquiries (Exh. "S", MVP009364, MVP010117-010119).

39.    On February 15, 2007 James Wang of SFA emailed "Tiger" and Nora Lee of MVP asking Tiger if the 50163 maximum ratchet bar height could be raised (Exh "S", MVP009239-MVP009240).

40.     On February 24, 2007 James Wang of SFA emailed MVP, Wei Fu and Betty Hung at SFC "recaping" a meeting in which "Barb" [a Sears representative] "was concerned about the small support range of the 4-ton jack stands". (Exh. "S", MVP009238).

41.     On March 9, 2007, James Wang of SFA again emailed MVP and Wei Fu on Sears request concerning its 4 ton jack stand. Mr. Wang wrote about SFA working with the Shinn Fu companies on raising the bar height of the 50163 (Exh. "S", MVP009227-MVP009228).

42.     On March 10, 2007 James Wang of SFA emailed Sears buyer Barbara and wrote concerning the "redesign 4-ton jack stands" and offered options for a redesigned 50163 jack stand. (Exh. "S", MVP009141):

43.     Ms. Lee testified that SFA drafted the content, warnings, safety instructions, operating instructions for the owner's manual and for the labeling for the Pro-Lift T6904 4-ton jack stand (Lee Dep., Exh. "G", pp. 82:8-84:13).

44.     Roger Claypool testified that SFA drafted the operator's manual (OIPM) for the ratchet and pawl designed jack stands imported by MVP and/or sold under any of the SFA brands (Claypool Dep., Exh "E", pp. 44:10-21, 125:24-126:10).

45.     Ryan Jorgensen testified that he believed SFA "created' the 50163 operator's manual (Jorgensen Dep.,   Exh. "P", p.70:7-11)

46.     Jeff Su testified that the Pro-Lift T6904 and Sears Craftsman 50163 operator's manuals had the same wording, content for their warnings, safety instructions and operating instructions. (Su Dep., Exh "F", pp. 109:5-112:12; the manuals are reproduced as Exh. "W").

47.     The Sears Craftsman 50163 manual, gives an "888" phone number "for after sale support and assistance" (Exh. "W", SFA002812). That number, 1-888-332-6419, when dialed today, will result in a SFA representative responding to the call. (Chaykin Dep., Exh "I", pp. 80:13-81:9).

PLAINTIFFS,
FREDERICK KLORCZYK, JR. and LYNNE
KLORCZYK, co-administrators of the Estate of
Christian R. Klorczyk

By: /s/ *Howard S. Edinburgh*
     Paul D. Williams (ct05244)
     *pdwilliams@daypitney.com*
     Bryan J. Orticelli (ct28643)
     *borticelli@daypitney.com*
     Kaitlin A. Canty (ct29074)
     *kcanty@daypitney.com*
     DAY PITNEY LLP
     242 Trumbull Street
     Hartford, CT 06103-1212
     860-275-0100 (Tel)
     860-275-0343 (Fax)

     Howard S. Edinburgh
     *hedinburgh@herzfeld-rubin.com*
     Herzfeld & Rubin, P.C.
     125 Broad Street
     New York, NY 10004
     (212) 471-8529 (Tel)
     (212) 344-3333 (Fax)

     *Their Attorneys*

## <u>CERTIFICATION</u>

I HEREBY CERTIFY that on this date a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

_____ /s/ *Bryan J. Orticelli*
Bryan J. Orticelli (ct28643)
