# *EXHIBIT N*

## SALES REPRESENTATIVE AGREEMENT BETWEEN SHINN FU COMPANY OF AMERICA, INC. ["SFA"] AND MVP(HK) INDUSTRIES, LTD.

This Agreement is between Shinn Fu Company of America, Inc. [referred to as "SFA" or "Representative"] and MVP(HK) Industries, Ltd. [referred to as "MVP" or "Principal"].

Background:

- SFA is in the business of importing, selling, marketing, and distributing various types of lifting equipment, automotive tools, and hydraulic devices in the United States and Central America ["Market Area"].

- SFA has experience in the sale and distribution of goods through "Do It Yourself" ["DIY"] sales channels in the Market Area.

- MVP is in the business of sourcing and selling a variety of automotive accessories and related consumer products focused on the DIY market.

- MVP wishes to retain SFA as its Representative for the Market Area.

Now, therefore, the parties agree as follows:

Responsibilities of Sales Agent:

1. On a non-exclusive basis, Representative will market, sell, provide customer relations and otherwise perform all sales and marketing activities on behalf of MVP in the Market Area.
   (a) Representative will conduct visits to customers in the Market Area.
   (b) Representatives will seek new customers in the Market Area.
   (c) Representatives will undertake to maximize sales in the Market Area.

2. Representative will provide feedback and information to MVP concerning conditions and trends in the Market Area but SFA will not be required to provide formal or extensive written market analyses or reports.

Limitations on Sales Agency:

3. Representative has NO authority to accept orders or sign any documents on behalf of Principal that are binding Principal in any way. All orders and all documents covering "MVP Commissioned Sales" [as defined in §5 below] will be accepted and signed in Hong Kong by MVP personnel.

4. Representatives will not modify any MVP product in any way without the explicit, written direction of MVP, nor will Representative change the labeling, color, packaging or other factors impacting the look and feel of any MVP product without explicit

1

CONFIDENTIAL

EXHIBIT

SFA 6

MA 5-24-16

SFA003338

D☐P☐ Exhibit 12
Deponent LEE
Date 4/12/18 Rptr MM

direction from MVP.

5.  This Sales Agency Agreement pertains only to MVP product direct ordered by customers in the Market Area for direct overseas shipment from MVP(HK) to the customer ["MVP Commissioned Sale"]. Such MVP Commissioned Sales are generally, but not always, sold by MVP "FOB Foreign Port." Goods sold as MVP Commissioned Sales are referred to as a "MVP Commissioned Product". Any sale of product requiring transshipment or warehousing in the U.S. or other country in the Market Area will be considered an "SFA Resale" and such sales are outside of the Commission structure set forth below. SFA Resales may be negotiated by SFA with the customer under terms and conditions negotiated between SFA and the customer. SFA may order from MVP for resale on its own account any products needed to supply a customer on an SFA Resale. Such sales by MVP to SFA will be made on an arm's length basis.

**Non-Compete:**

6.  With regard to DIY business, Principal will not contract for agency services with any other sales agent in the Market Area. With regard to DIY business, Representative will not represent any other manufacturer or distributor for commissioned sales with regard to any product that is competitive to an MVP Commissioned Product.

**Responsibilities of Principal:**

7.  MVP, as Principal, will produce and deliver product to customer in a timely manner.

8.  SFA will provide MVP with information regarding prevailing prices and market conditions and may recommend pricing to MVP. MVP will set prices and will have final approval of prices for MVP Commissioned Products.

9.  SFA will provide MVP with information regarding new product ideas and market trends and may recommend ideas for new products to MVP. MVP will periodically introduce new product to support sales in the Market Area.

**Commissions:**

10. MVP will pay to Representative a commission of 1.5% on Gross MVP Commission Sales.

11. Gross MVP Commission Sales includes the gross sale price of all accepted orders on MVP Commissioned Product during a given calendar month. Gross MVP Commission Sales will not include the commissions paid to sub-agents and sub-independent agents operating in the Market Area as further described in §14 below.

**Expenses:**

2

SFA003337

12. Representatives will cover all its regular costs of fulfilling its role. Such costs include, but are not limited to, travel, supplies, trade shows, sales literature, and advertising.

13. Special or unusual costs and expenses – such as market surveys, outside consulting, or overseas travel – will be discussed among SFA and MVP on a case by case basis. SFA will not incur any such costs or expenses with the expectation of compensation without prior written approval from MVP.

14. Commissions paid to independent agents and sub-agents will be paid by SFA and passed through at cost to MVP. Such commissions payments will not be included in Gross MVP Commissions Sales. SFA will manage the independent sales agents and sub-agents on behalf of MVP and will propose changes [additions or deletions] to the independent agents and sub-agents representing the business.

## Misplaced Liabilities:

15. If a customer of SFA claims a credit against SFA resulting from an MVP Commissioned Sale, SFA will attempt to cause the customer to claim the credit against MVP. However, where customer insists on debiting SFA for what is properly an MVP debit, SFA may permit the debit against SFA's account and MVP will then compensate SFA. The provisions of this Section 18 will apply only when the customer is unwilling to appropriately direct the debit to MVP and does not otherwise change the financial, business or legal relationship between MVP and SFA with regard to this contract.

## Returns & Warranties:

16. Any return allowances and return requirements and methodologies are the responsibility of MVP and will be provided at MVP's expense.

## Payment and Payment Terms:

17. MVP will pay commissions on Gross MVP Commissioned Sales at 45 days after the end of the previous month. For example commissions on sales made in January will be paid on or before April 1st.

18. Commissions will be due and payable as described above whether or not MVP has received payment for the goods purchased. The risk of non-collection with regard to commissions on any order that is accepted and shipped by MVP remains with MVP.

## Indemnification:

19. MVP, as Principal, will indemnify SFA and the end customer against any liability arising out of or relating to the sale and marketing of any MVP Commissioned Product including but not limited to the following:
(a) Intellectual Property infringement, including patent infringement, copyright infringement, trade secrets infringement, and related actions.

3

CONFIDENTIAL

SFA003338

(b) Trademark infringement, design patent infringement, trade dress infringement, and related actions.

(c) Personal injury claims including claims in the nature of product liability, personal injury, failure to warn, and inadequate instruction.

20. SFA will immediately notify MVP, in writing, of any claims, lawsuits, legal actions, administrative actions, or regulatory actions relating to MVP Commissioned Products and will indicate what action SFA expects MVP to take with regard to the same.  MVP will confirm in writing its receipt of such notification.

**Termination:**

21. This Initial Term of this Agreement will commence on the date of execution as noted below and will continue through December 31, 2007.

22. After the Initial Term, this Agreement will continue year to year unless otherwise terminated.

23. This Agreement may be terminated in the following manner:
(a) Either party may provide notice of termination to the other 90 days before December 31 of any year in which this Agreement is in effect
(b) Either party may terminate this agreement on 30 days notice if there is a substantial change of ownership of the other party.

**Dispute Resolution:**

24. Any dispute arising out of or relating to this Agreement will be discussed and resolved by the parties.

For Shinn Fu Company of America, Inc.:          For MVP(HK) Industries, Ltd.:

By _Jay Shi_  9/28/06          By _____  OCT/01/2006

Title _Executive V.P_          Title _VICE PRESIDENT_

4

CONFIDENTIAL

SFA003339

<u>SECOND AMENDMENT OF SALES REPRESENTATIVE AGREEMENT</u>
<u>BETWEEN SHINN FU COMPANY OF AMERICA, INC. ["SFA"]</u>
<u>AND MVP(HK) INDUSTRIES, LTD.</u>

This Second Amendment ["Amendment-2"] is in reference to the Sales Representative Agreement ["Agreement"] between Shinn Fu Company of America, Inc., and MVP(HK) Industries, Ltd., previously agreed to by the Parties in October of 2006. This Amendment-2 supplements, changes and supersedes the Agreement as set forth below.

1. MVP(HK), will no longer pay a sales commission to SFA for services provided to it pursuant to the sales agency. Instead, the sales agency will be converted to a sales and customer support relationship in which SFA will be paid a lump sum monthly service charge of $3,750 per month ($45,000 per year) ["Lump Sum"] from MVP. In return, SFA will provide MVP with:
    a. Lab testing services;
    b. Show management;
    c. OIPM support, and
    d. Customer phone service support.

2. The Lump Sum is exclusive of all other charges except for the following:
    a. An employee cost charge covering the salary and benefits of 100% of one full time SFA employee [Johnny Lu] and 50% of the salary and benefits of one other employee [Jamie Martinez] ["Assigned Employees"]. The current cost charge for the Assigned Employees is $93,154 per year [$78,610 in total salary plus $14,544 in medical insurance costs].
    b. One-twelfth [1/12] of the total annual Assigned Employee cost [$7,762.83] will be due no later than 15 days after the end of each month.
    c. The Assigned Employees will remain employees of SFA and not employees of MVP. SFA will be responsible for assuring payment of all insurance, payroll taxes and other related employee costs.
    d. MVP will cover all travel expenses and other special employee business expenses incurred by the Assigned Employees in furtherance of MVP's business. Such expenses shall be in compliance with SFA's Employee Expense Policy, Employee Travel Policy, and will be reviewed as appropriate by SFA's Finance Group pursuant to its normal business practices. MVP may set such additional requirements for approval of business expenses as it deems fit, provided that they are cleared through SFA Management and presented to the Assigned Employees by SFA Management. Approved business and travel expenses will be charge against MVP by Debit Memo.

3. The Lump Sum payment will be due no later than 15 days after the end of each month.

4. All payments will be set in U.S. Dollars.

5. The size of the Lump Sum payment will be reviewed every six [6] months and is subject to change upon agreement by both parties. No Amendment is required to change the Lump Sum payment as such changes may be documented by email and confirmation to

CONFIDENTIAL

SFA003340

5. The size of the Lump Sum payment will be reviewed every six (6) months and is subject to change upon agreement by both parties. No Amendment is required to change the Lump Sum payment as such changes may be documented by email and confirmation to be retained on file with this Amendment.

6. The charges for Assigned Employees are subject to change upon annual salary review of the relevant employees or changes to benefit costs of the Assigned Employees. Changes to such charges will be accepted by both parties by email and confirmation to be retained on file with this Amendment.

7. All provisions relating to commissions in the Agreement are nullified and superseded by this Amendment. Provisions relating to SPA's enlistment of sub-agents or other third party agents are nullified and superseded by the Amendment. All other provisions of the Agreement and their corresponding responsibilities that are not logically nullified by the change set forth in this Amendment remain in effect and SPA will continue to provide the same services to MVP as previously indicated.

8. The Agreement and this Amendment are subject to the laws of the State of Missouri, United States of America, regardless of Missouri's conflict of laws rules.

9. This Amendment becomes effective on June 1, 2008.

For Shinn Fu Company of America, Inc.:

By _____

Title _PRESIDENT_____

For MVP(HK) Industries, Ltd.:

By _____

Title _Vice President_____

CONFIDENTIAL

SFA003341

FIRST AMENDMENT OF SALES REPRESENTATIVE AGREEMENT BETWEEN
SHINN FU COMPANY OF AMERICA, INC. ("SFA") AND MVP(HK) INDUSTRIES,
LTD.

This First Amendment ["Amendment"] is in reference to the Sales Representative
Agreement ["Agreement"] between Shinn Fu Company of America, Inc., and MVP(HK)
Industries, Ltd., previously agreed to by the Parties in October of 2006. This Amendment
supplements, changes, and supersedes the Agreement as set forth below.

1.    MVP(HK) will no longer pay a sales commission to SFA for services provided to
it pursuant to the sales agency. Instead, the sales agency will be converted to a sales and
customer support relationship in which SFA will be paid a lump sum monthly service
charge of $1,875 per month ($22,500 per year) ["Lump Sum"] from MVP. In return, SFA
will provide MVP with:
    a.    Lab testing services;
    b.    Show management;
    c.    OIPM support, and
    d.    Customer phone service support.

2.    The Lump Sum is exclusive of all other charges except for the following:
    a.    · An employee cost charge covering the salary and benefits of 100% of one
          full time SFA employee [Johnny Lu] and 50% of the salary and benefits of
          one other employee [a Sales Coordinator] ["Assigned Employees"]. The
          current cost charge for the Assigned Employees is $93,154 per year
          [$78,610 in total salary plus $14,544 in medical insurance costs].
    b.    One-twelfth [1/12] of the total annual Assigned Employee cost [$8,311.25]
          will be due no later than 15 days after the end of each month.
    c.    The Assigned Employees will remain employees of SFA and not
          employees of MVP. SFA will be responsible for assuring payment of all
          insurance, payroll taxes, and other related employee costs.
    d.    MVP will cover all travel expenses and other special employee business
          expenses incurred by the Assigned Employees in furtherance of MVP's
          business. Such expenses shall be in compliance with SFA's Employee
          Expense Policy, Employee Travel Policy, and will be reviewed as
          appropriate by SFA's Finance Group pursuant to its normal business
          practices. MVP may set such additional requirements for approval of
          business expenses as it deems fit, provided that they are cleared through
          SFA Management and presented to the Assigned Employees by SFA .
          Management. Approved business and travel expenses will be charged
          against MVP by Debit Memo.

3.    The Lump Sum payment will be due no later than 15 days after the end of each
month.

4.    All payments will be set in U.S. Dollars.

5.  The size of the Lump Sum payment will be reviewed every six [6] months and is subject to change upon agreement by both parties. No Amendment is required to change the Lump Sum payment as such changes may be documented by email and confirmation to be retained on file with this Amendment.

6.  The charges for Assigned Employees are subject to change upon annual salary review of the relevant employees or changes to benefit costs of the Assigned Employees. Changes to such charges will be accepted by both parties by email and confirmation to be retained on file with this Amendment.

7.  All provisions relating to commissions in the Agreement are nullified and superseded by this Amendment. Provisions relating to SFA's enlistment of sub-agents or other third party agents are nullified and superseded by the Amendment. All other provisions of the Agreement and their corresponding responsibilities that are not logically nullified by the change set forth in this Amendment remain in effect and SFA will continue to provide the same services to MVP as previously indicated.

8.  The Agreement and this Amendment are subject to the laws of the State of Missouri, United States of America, regardless of Missouri's conflict of laws.

9.  This Amendment becomes effective on December 1, 2009.

For Shinn Fu company of America, Inc.:

By _____

Title __PRESIDENT__ __11-10-09__

For MVP(HK) Industries, Ltd.:

By _____

Title __E.V.P.__ Nov, 11, 2009

CONFIDENTIAL                    SFA003347

## FIRST AMENDMENT OF SALES REPRESENTATIVE AGREEMENT BETWEEN SHINN FU COMPANY OF AMERICA, INC. ("SFA") AND MVP (HK) INDUSTRIES, LTD.

This First Amendment ("Amendment") is in reference to the Sales Representative Agreement ("Agreement") between Shinn Fu Company of America, Inc. and MVP (HK) Industries, Ltd., previously agreed to by the Parties in October of 2006. This Amendment supplements, changes, and supersedes the Agreement as set forth below:

1.  MVP (HK) will no longer pay a sales commission to SFA for services provided to it pursuant to the sales agency. Instead, the sales agency will be converted to a sales and customer support relationship in which SFA will be paid a lump sum monthly service charge of $1,875 per month ($22,500 per year) ("Lump Sum") from MVP. In return, SFA will provide MVP with:

    a.  Engineering services;
    b.  Showroom management;
    c.  OEM support, and
    d.  Customer phone service support.

2.  The Lump Sum is exclusive of all other charges except for the following:

    a.  An employee cost charge covering the salary and benefits of 100% of one (1) full-time SFA employee (Johnny Liu) and 50% of the salary and benefits of one other employee (a Sales Coordinator) ("Assigned Employees"). The current cost charge for the Assigned Employees is $118,224.50 per year.
    b.  One-twelfth (1/12) of the total annual Assigned Employee cost [$9,852.05] will be due no later than 15 days after the end of each month.
    c.  The Assigned Employees will remain employees of SFA and not employees of MVP. SFA will be responsible for assuring the payment of all insurance, payroll taxes, and other related employee costs.
    d.  MVP will cover all travel expenses and other special employee business expenses incurred by the Assigned Employees in furtherance of MVP's business. Such expenses shall be in compliance with SFA's Employee Expense Policy, Employee Travel Policy, and will be reviewed as appropriate by SFA's Finance Group pursuant to its normal business practices. MVP may set such additional requirements for approval of business expenses as it deems fit, provided that they are cleared through SFA Management and presented to the Assigned Employees by SFA Management. Approved business and travel expenses will be charged against MVP by Debit Memo.

3.  The Lump Sum payment will be due no later than 15 days after the end of each month.

SFA003344

4). All payments will be set in U.S. Dollars.

5). The size of the Lump Sum payment will be reviewed every six (6) months and is subject to change upon agreement by both parties. No Amendment is required to change the Lump Sum payment as such changes may be documented by e-mail and confirmation to be retained on file with this Amendment.

6). The charges for Assigned Employees are subject to change upon annual salary review of the relevant employees or changes to benefit costs of the Assigned Employees. Changes to such charges will be accepted by both parties by e-mail and confirmation to be retained on file with this Amendment.

7). All provisions relating to commissions in the Agreement are nullified and superseded by this Amendment. Provisions relating to SFA's enlistment of sub-agents or other third party agents are nullified and superseded by the Amendment. All other provisions of the Agreement and their corresponding responsibilities that are not logically nullified by the changes set forth in this Amendment remain in effect and SFA will continue to provide the same services to MVP as previously indicated.

8). The Agreement and this Amendment are subject to the laws of the State of Missouri, United States of America, regardless of Missouri's conflict of laws.

9). This Amendment becomes effective on January 31, 2013.

For Spielman Company Warehouse Inc.          For MVP (HK) Industries, Ltd.

By: _____                  By: _____

Title: _____                 Title: _____

SFA003345