# *EXHIBIT V*

1        30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015

2              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF CONNECTICUT
3

4

5   FREDERICK KLORCZYK, JR., as           )
    co-administrator of the Estate        )
6   of Christian R. Klorczyk, and         )
    LYNNE KLORCZYK, as                    )
7   co-administrator of the Estate        )
    of Christian R. Klorczyk,             )
8                                         )
              Plaintiffs,                 )
9                                         )
         vs.                              )  No. 3:13-cv-00257-RNC
10                                        )
    SEARS, ROEBUCK & CO., SHINN           )
11  FU CORPORATION, SHINN FU              )
    COMPANY OF AMERICA, MVP (HK)          )
12  INDUSTRIES, LTD., and WEI FU          )
    (TAISHAN) MACHINERY & ELECTRIC        )
13  CO., LTD.,                            )
                                          )
14            Defendants.                 )

15

16          CONFIDENTIAL - ATTORNEYS' EYES ONLY

17

18          30(b)(6) deposition of SEARS, ROEBUCK & CO.,

19  by and through its representative KATHRYN GUERRA, taken

20  before NADINE J. WATTS, CSR, RPR, and Notary Public,

21  pursuant to the Federal Rules of Civil Procedure for the

22  United States District Courts pertaining to the taking

23  of depositions, at Suite 1800, 311 South Wacker Drive,

24  in the City of Chicago, Cook County, Illinois, at 9:15

25  o'clock a.m. on the 6th day of May, A.D., 2015.

30(b)(6), Attorneys Eyes Only
KATHRYN GUERRA - 05/06/2015                    Pages 2..5

### Page 2

```
30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
     There were present at the taking of this
deposition the following counsel:

        DAY PITNEY, LLP by
        MR. DAVID J. ELLIOTT
        242 Trumball Street
        Hartford, Connecticut  06103
        (860) 275-0196
        djelliott@daypitney.com
             and
        HERZFELD & RUBIN, P.C. by
        MR. HOWARD S. EDINBURGH
        125 Broad Street
        New York, New York  10004
        (212) 271-8529
        hedinburgh@herzfeld-rubin.com

             on behalf of the Plaintiffs;

        TROTTA, TROTTA & TROTTA by
        MS. ERICA W. TODD-TROTTA
        900 Chapel Street
        12th Floor
        P.O. Box 802
        New Haven, Connecticut  06503
        (203) 787-6756
        etodd@trottalaw.com
             and
        MORRISON MAHONEY, LLP by
        MR. MICHAEL R. KELLER
        4 Stamford Plaza
        107 Elm Street
        Suite 403
        Stamford, Connecticut  06902
        (203) 965-4900
        mkeller@morrisonmahoney.com

             on behalf of Defendant Sears,
             Roebuck & Co.;
```

### Page 3

```
30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015

        GORDON & REES, LLP by
        MR. SEAN P. FLYNN
        2211 Michelson Drive
        Suite 400
        Irvine, California  92612
        (949) 255-6950
        sflynn@gordonrees.com
             on behalf of Defendants Shinn Fu
             Corporation, Shinn Fu Company of
             America, MVP (HK) Industries, Ltd.
             and Wei Fu (Taishan) Machinery &
             Electric Co., Ltd.
```

### Page 4

```
30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
        30(b)(6) DEPOSITION OF SEARS, ROEBUCK & CO.
                    TAKEN MAY 6, 2015

EXAMINATION BY                                      PAGE
Mr. David J. Elliott                                   6
                        EXHIBITS
                                                    PAGE
GUERRA DEPOSITION EXHIBIT 1                            6
    Notice of Deposition

GUERRA DEPOSITION EXHIBIT 2                           10
    Curriculum Vitae of Kathryn Guerra
GUERRA DEPOSITION EXHIBIT 2A                          21
    CPSC - Sears Holdings Management Corp.
    Retailer Report
GUERRA DEPOSITION EXHIBIT 3                           65
    Operator's Manual Craftsman Heavy
    Duty Jack Stands, Model 50163,
    4 Ton Capacity Per Pair

GUERRA DEPOSITION EXHIBIT 4                           70
    Second Amended Complaint
GUERRA DEPOSITION EXHIBIT 5                          122
    Objections and Responses to Plaintiffs'
    Notice of Deposition Pursuant to
    Rule 30(b)(6) Dated December 31, 2014

GUERRA DEPOSITION EXHIBIT 6                          125
    Sears, Roebuck & Co. Universal Terms
    and Conditions

GUERRA DEPOSITION EXHIBIT 7                          138
    Defendant, Sears, Roebuck & Co.'s
    Supplemental Responses to Plaintiffs'
    First Set of Interrogatories to
    Defendant Sears, Roebuck & Co.
```

### Page 5

```
30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
                    EXHIBITS (Continued)
                                                    PAGE
GUERRA DEPOSITION EXHIBIT 8                          147
    Universal Terms and Conditions
    International
GUERRA DEPOSITION EXHIBIT 9                          156
    E-mail from Ivan Chan to
    Maggie Ma dated January 17, 2007
GUERRA DEPOSITION EXHIBIT 10                         169
    E-mail from Nora Lee to James Wang
    and Frank Lu dated March 10, 2007
GUERRA DEPOSITION EXHIBIT 11                         173
    E-mail from James Wang to Maggie Ma,
    Nora Lee, Johnson Wang and May Lee
    dated January 25, 2007

GUERRA DEPOSITION EXHIBIT 12                         179
    Sears Holdings Global Sourcing Test
    Protocol for Vehicle Support Stands
    ASME PALD-2009 Part 4 (SHC-4610)
GUERRA DEPOSITION EXHIBIT 13                         207
    Colored photograph

GUERRA DEPOSITION EXHIBIT 14                         234
    Sears Vendor/Factory Accreditation
    Report

GUERRA DEPOSITION EXHIBIT 23                         111
    Intertek Labtest
```

### Page 6

```
 1    30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
 2                    KATHRYN GUERRA,
 3    called as a witness herein, having been first duly
 4    sworn, was examined upon oral interrogatories and
 5    testified as follows:
 6            EXAMINATION CONDUCTED BY MR. ELLIOTT:
 7       Q    Good morning. Would you please state your name
 8    and business address for the record.
 9       A    Kathryn Guerra, 3333 Beverly Road, Hoffman
10    Estates, Illinois.
11            MR. ELLIOTT: All right. Would you please
12    mark this as Exhibit 1.
13            MS. TODD-TROTTA: The depo notice?
14            MR. ELLIOTT: The Notice of Deposition.
15            (Document marked as Guerra Deposition
16            Exhibit 1 for identification.)
17    BY MR. ELLIOTT:
18       Q    Ms. Guerra, have you seen Exhibit 1 before, the
19    Notice of Deposition for this deposition?
20       A    Yes.
21       Q    Okay. Have you ever had your deposition taken
22    before?
23       A    Yes.
24       Q    Have you ever acted as a corporate
25    representative for Sears in a deposition?
```

### Page 7

```
 1    30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
 2       A    Always as a 30(b)(6) witness.
 3       Q    Okay. So you're familiar with 30(b)(6)?
 4       A    (Nodding head.)
 5       Q    So you have been a 30(b)(6) witness for Sears
 6    previously?
 7       A    Yes.
 8       Q    On how many occasions?
 9       A    Approximately 10 to 15.
10       Q    Okay. During what time period?
11       A    1980 to today.
12       Q    And was the subject of any of those depositions
13    a Sears jack stand?
14       A    Not to my recollection, no.
15       Q    So this is the first time you've testified as a
16    30(b)(6) witness in a Sears jack stand case?
17       A    I believe so, yes.
18       Q    All right. Have you ever testified at trial as
19    a Sears representative?
20       A    Yes.
21       Q    And when was the last time you did that?
22       A    Last fall, October 2014.
23       Q    What kind of case was that?
24       A    It was -- The product involved was a bicycle.
25       Q    A bicycle? Manufactured by Sears?
```

### Page 8

```
 1    30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
 2       A    We don't manufacture anything.
 3       Q    Sold by Sears?
 4       A    Correct. Actually, sold by K-Mart.
 5       Q    Okay. Did you ever testify at trial in a Sears
 6    jack stand case?
 7       A    No.
 8       Q    Apart from 30(b)(6) service, witness service,
 9    have you testified as a witness for Sears generally in a
10    deposition, apart from being a corporate representative?
11       A    No.
12       Q    So all of your testimony of the history of Sears
13    is as a corporate representative?
14       A    Correct.
15       Q    Okay. I'm not going to go over the ground rules
16    because you obviously understand.
17            Can you -- I don't need to have chapter and
18    verse, but with respect to trial testimony that you've
19    given on behalf of Sears, you told me about a bicycle
20    case, what other kinds of cases have you testified in?
21            MS. TODD-TROTTA: At trial?
22            MR. ELLIOTT: At trial, yes. Trial
23    testimony, yes.
24            THE WITNESS: An automotive scissors
25    jack.
```

### Page 9

```
 1    30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
 2    BY MR. ELLIOTT:
 3       Q    When was that?
 4       A    That was back in probably '85.
 5       Q    And where was that?
 6       A    Boston.
 7       Q    Okay. You don't remember the name of the case,
 8    do you?
 9       A    Oh, no.
10       Q    Okay. Do you remember any of the names of the
11    cases that you testified at trial for Sears, like the
12    bicycle case?
13       A    No, I don't really take note.
14            MS. TODD-TROTTA: The bicycle case was
15    K-Mart.
16    BY MR. ELLIOTT:
17       Q    Sears or K-Mart.
18       A    No.
19       Q    Okay. Do you remember any of the names of the
20    cases in which you've given depositions as a 30(b)(6)
21    witness for Sears?
22       A    No.
23       Q    The last time you gave trial testimony was last
24    October?
25       A    Correct.
```

Page 14

```
 1   30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
 2   overseas and manages the test.
 3       Q   The test what?
 4       A   The testing of the products in the manufacturing
 5   facilities.
 6       Q   And that's in Hong Kong?
 7       A   Correct. That's the main office, Hong Kong.
 8   They have other satellite offices.
 9       Q   Okay. What do they test?
10       A   Our branded merchandise. You know, K-Mart and
11   Sears own a number of brands; Craftsman, Kenmore,
12   Diehard.
13       Q   Does the Hong Kong office test products that
14   come from Asia only?
15       A   No.
16       Q   What geographical dispersion of products do they
17   test for Sears?
18       A   Well, that would be the main area obviously, but
19   I think they could test product from anywhere.
20       Q   Okay.
21       A   But the manufacturing facilities in Asia are
22   tested by that facility in Hong Kong.
23       Q   Okay. So let me understand. So Sears has
24   vendors who provide products to Sears, which are tested
25   in Hong Kong by this global holdings company?
```

Page 15

```
 1   30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
 2       A   Correct.
 3       Q   Okay. And the primary vendor source of those
 4   materials are Asian companies?
 5       A   To the best of my knowledge, yes.
 6       Q   Are there other Sears corporate entities?
 7       A   There's an entity called KCD --
 8       Q   What's that?
 9       A   -- which owns the brand Kenmore, Craftsman,
10   Diehard. There are probably others that I don't really
11   work with, so I'm not really very familiar with them.
12       Q   Okay. What is your present title?
13       A   Director of product safety.
14       Q   And what are your duties and responsibilities as
15   director of product safety?
16       A   I'm responsible for reporting any product safety
17   issues to the government, the CPSC, Consumer Product
18   Safety Commission, and managing our product safety
19   database where we catalog all incidents and share that
20   information with our merchant teams, our buyers, and the
21   manufacturers.
22           I also work with the Hong Kong testing lab on
23   test protocols and maintaining current regulations,
24   reviewing California Prop 65 activities.
25       Q   Tell me about your product safety database.
```

Page 16

```
 1   30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
 2   What's that?
 3       A   It is a product safety database. When we
 4   receive incidents of alleged safety issues, we catalog
 5   them in the database. At the end of every week, on a
 6   Friday, we send a formal report to the CPSC on any
 7   safety issues. We redact the report, and then we send
 8   each business unit their part and each manual staff for
 9   each individual manufacturer their part.
10       Q   What is redacted?
11       A   We don't give a manufacturer anything except for
12   their piece. So if a file has 50 lines in it, the
13   manufacturer is only going to get their one or two
14   lines, whatever impacts them.
15       Q   How long has the database -- What corporate
16   entity maintains that database?
17       A   Sears Holdings.
18       Q   And for how long? When did it come into
19   existence?
20       A   In this current format, it came into existence
21   in 2007.
22       Q   In any format when did it come into existence?
23       A   Whenever the CPSC was established, which was
24   1972 or something, '74.
25       Q   Is the database maintained pursuant to a
```

Page 17

```
 1   30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
 2   regulation of the CPSC?
 3       A   No.
 4       Q   Is it pursuant -- Is the database maintained
 5   pursuant to any governmental regulation?
 6       A   No.
 7       Q   Who made the decision to establish a database
 8   for product safety items?
 9       A   When we incorporated a product safety office
10   into our structure back in the '70s, the manager at the
11   time cataloged the items.
12       Q   Who currently -- Is there somebody currently in
13   charge of maintaining the database?
14       A   My office.
15       Q   Is there a person?
16       A   Me.
17       Q   Okay. So you maintain the database?
18       A   Myself and two assistants, yes.
19       Q   What are the assistants' names?
20       A   Cathy Layne, Cathy with a C, L-A-Y-N-E, and
21   Margaret Oskorep, O-S-K-O-R-E-P.
22       Q   You just mentioned in the current format. What
23   is the current format? What were you referring to?
24       A   It's a web-based database.
25       Q   How long have you had that web-based database
```

Page 50

30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015

2  Q    Does Sears maintain any paper files concerning
3  similar incidents?
4  A    No.
5  Q    Does Sears contain any -- Other than the product
6  safety database, does Sears maintain any other
7  electronically stored information concerning product
8  safety events?
9  A    Well, Sedgwick, which is part of Sears, but, no.
10 Q    Okay. Does Sears have electronic access to the
11 Sedgwick database on product safety events or on claims?
12 A    No.
13 Q    But you could -- If you asked Sedgwick for its
14 data on product safety events and events similar to the
15 Klorczyk matter, you could get it from Sedgwick, right?
16 A    Correct.
17 Q    Okay. Now, I see from -- I'm looking at Exhibit
18 2. I see from 2004 to 2008 you were the group
19 engineering manager for product quality assurance. What
20 were your duties and responsibilities in that job?
21 A    It's the same organization, they just changed
22 the name from merchandise development testing to product
23 quality assurance. That's when we moved from Chicago to
24 Hoffman Estates. And at that point I had more engineers
25 reporting to me, broader product lines responsibility.

Page 51

30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015

2  Q    Were you -- Is product quality assurance a
3  department or a group or what is it within Sears?
4  A    It is a department, yes.
5  Q    Were you the head of that department from 2004
6  to 2008?
7  A    No.
8  Q    Who was?
9  A    Dave Macarus.
10 Q    Is he still with Sears?
11 A    No.
12 Q    Do you know where he is?
13 A    Yes.
14 Q    Where?
15 A    Elgin.
16 Q    Elgin?
17 A    Elgin, Illinois.
18 Q    Do you know what he's doing?
19 A    He's happily retired.
20 Q    So say we all.
21      Was he your boss from 2004 to 2008?
22 A    Yes.
23 Q    Were you second in command?
24 A    There was no second in command. There was three
25 or four people that had the same title as myself that

Page 52

30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015

2  all reported to David.
3  Q    There were other group engineering managers?
4  A    Correct.
5  Q    Tell me their names.
6  A    Jim Davidson was one. See, I don't -- They're
7  all gone, so I can't --
8  Q    Well, they would be former employees?
9  A    They are former employees.
10 Q    Okay. And they had the same responsibilities as
11 you did as group engineering manager from 2004 to 2008,
12 right?
13 A    Yes.
14 Q    Did you make inquiry of them concerning the
15 topics in this deposition?
16 A    No, they wouldn't have any involvement.
17 Q    What do you mean?
18 A    Well, we're talking about jack stands, which
19 were a product line in my team. They didn't work with
20 jack stands.
21 Q    Okay. Jack stands was your subject?
22 A    Correct.
23 Q    Okay. From '04 to '08, apart from yourself
24 having providence over jack stands, who else worked with
25 you that had those responsibilities?

Page 53

30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015

2  A    To work with jack stands?
3  Q    Yes.
4  A    There was a technician.
5  Q    Who's that?
6  A    He's gone. Charlie Eikenger is his name.
7  Q    Okay. Let's take it this way. From 2008 up to
8  2011, when apparently in May you became director of
9  product safety, can you tell me the names of other
10 people at Sears who had responsibility for jack stands?
11 A    Dan Swanson.
12 Q    That's it?
13 A    Correct.
14 Q    Do you understand or did you understand that
15 your responsibilities as a 30(b)(6) witness for Sears
16 was to inquire of former employees regarding the topics
17 in this deposition?
18 A    Correct.
19 Q    You did understand that?
20 A    Correct.
21 Q    Did you do that?
22 A    I talked to Dan.
23 Q    Anybody else?
24 A    He would have been the one responsible for jack
25 stands.

Page 102

```
 1    30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
 2    stored information, where would that -- where is that
 3    information stored?  Is it on a personal -- their own
 4    personal computers or a company personal computer?
 5    Where is it stored?
 6        A    On the work computers.
 7        Q    And their work computers?
 8        A    Yes.
 9        Q    Did you ask anybody to search their own personal
10    computers for data related to this case?
11        A    No.
12        Q    Do you know whether anybody has on a personal
13    computer data related to this case?
14        A    I wouldn't know that.
15        Q    Because you didn't ask them for it?
16        A    I asked them to search their files.
17        Q    Okay.  But you don't know if they searched their
18    own personal computers?
19        A    When I asked them to search their files, the
20    response I got back was they had no information.
21    Whether they searched their personal computers or not, I
22    don't know.
23        Q    Did anybody respond to you that they had already
24    deleted information that had been electronically stored
25    regarding this case or the subject of this deposition?
```

Page 103

```
 1    30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
 2        A    No.
 3        Q    What do you understand your 30(b)(6)
 4    responsibilities as a corporate designee of Sears?  What
 5    are you supposed to do?
 6        A    To answer your questions that you have outlined
 7    in your notice of deposition.
 8        Q    How are you supposed to become knowledgeable
 9    about those topics?
10        A    By asking the appropriate people, through my
11    experiences at work.
12        Q    How about, you know, looking for relevant
13    documents?
14        A    Yes.
15        Q    Okay.  And the document that you've come up with
16    today is Exhibit 2A that you found that's related to the
17    topics of this deposition, right?
18        A    Yes.
19        Q    That's it?
20        A    Yes.
21        Q    And I apologize if I've asked this, but was
22    there only one former employee that you talked to or was
23    there --
24        A    They're all former employees.
25        Q    Dan, Colin?
```

Page 104

```
 1    30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
 2        A    Correct.
 3        Q    They're both former employees?
 4        A    Yes.
 5        Q    And the current employees would be the risk
 6    management people?
 7        A    Correct.
 8        Q    That's two people?
 9        A    Correct.
10        Q    So you spoke with two former employees and two
11    current employees about the --
12        A    Three former employees.  The buyer whose name I
13    can't remember.
14        Q    Three current employees?
15        A    Two current, three former.
16        Q    Okay.  That's it?
17        A    Yes.
18        Q    Let's look at the deposition notice and go to
19    topic 1.
20             MS. TODD-TROTTA:  Page 6.
21    BY MR. ELLIOTT:
22        Q    What did you do to make yourself knowledgeable
23    concerning the design and development of the jack
24    stands?
25        A    I've worked with jack stands for 25, 30 years.
```

Page 105

```
 1    30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
 2    I was a member of a committee.  So I have a significant
 3    knowledge about jack stands.
 4        Q    Okay.  So that's your personal knowledge
 5    concerning design and development of jack stands, right?
 6        A    Correct.
 7        Q    Okay.  What else -- What other -- What did you
 8    do other than rely on your own personal knowledge of
 9    jack stands to become knowledgeable about the design and
10    development of jack stands?
11        A    Nothing.
12        Q    And what is your personal knowledge regarding
13    the design and development of jack stand Model No.
14    50163?
15        A    My personal knowledge is that it was designed
16    and manufactured by MVP for Sears.
17        Q    That's it?
18        A    Well, do you want to know about materials
19    associated--
20        Q    No, I want to know how you made yourself
21    knowledgeable.  Other than the stand was provided to you
22    by MVP, is there any other activity you engaged in to
23    make yourself knowledgeable about the design and
24    development of the 50163 jack stand?
25        A    I confirmed that it was manufactured and
```

30(b)(6), Attorneys Eyes Only
KATHRYN GUERRA - 05/06/2015        Pages 106..109

Page 106

1  30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
2  designed by MVP.
3    Q   What else?
4    A   That's it.
5    Q   Did you talk to MVP about design and development
6  issues concerning the 50163 jack stand?
7    A   No.
8    Q   So your testimony is that you have sufficient
9  knowledge to talk to me about the design and development
10 of 50163?
11   A   We'll see.
12   Q   Well, you didn't talk to anybody, you didn't
13 look at any documents. You're relying on your personal
14 knowledge.
15   A   What does that mean, design and development? I
16 mean --
17   Q   What do you think it means?
18   A   I don't know. It's a very vague general
19 question.
20   Q   Well, okay. Do you understand the question?
21   A   Yes.
22   Q   Okay. But apart from what you know personally,
23 you didn't make inquiry of any other Sears employees
24 about this topic and you didn't look at any documents
25 concerning this topic?

Page 107

1  30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
2    A   Well, the response would be the same, that the
3  design and development of the jack stand is done by MVP.
4  So in response to this question, that's the response.
5    Q   That it was designed and -- You know it was
6  designed and developed by MVP?
7    A   Correct.
8    Q   Is that the sum total of your knowledge about
9  topic No. 1?
10   A   Based on the general question, yes. If you have
11 something specific --
12   Q   Well, you didn't make any inquiry of any Sears
13 employee about anything concerning the design and
14 development of this jack stand. You didn't talk to
15 anybody about, hey, I got a deposition coming up, the
16 first topic is the design and development of the jack
17 stand, can you help me out on this?
18   A   And the response would be that MVP is
19 responsible.
20   Q   But you didn't do that?
21   A   I don't have to do that.
22   Q   You didn't do it, right?
23       MS. TODD-TROTTA: Objection. She's asked and
24 answered this 20 times now. She has told you the design
25 and development of jack stands is -- rests with the

Page 108

1  30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
2  codefendants in this case.
3       She has knowledge for the last 25, 30 years
4  with the actual jack stands. She is the person most
5  knowledgeable as it pertains to the jack stands.
6  BY MR. ELLIOTT:
7    Q   And my question is, did you talk to anybody
8  else? The answer is no, right?
9    A   No, I've talked to Dan, I've talked to Colin.
10   Q   About the design and development of the 50163
11 jack stand?
12   A   Not -- No, because there's nothing to talk about
13 because MVP is responsible for that.
14   Q   Okay. Did you review any documents other than
15 the operator's manual regarding topic No. 1?
16   A   There's an Intertek test report.
17   Q   A what?
18   A   An Intertek test report.
19   Q   What's that?
20   A   It's a test report produced by Intertek.
21   Q   Concerning what?
22   A   Jack stand.
23   Q   Jack stand?
24   A   An MVP-manufactured jack stand.
25   Q   Well, tell me about that report. I've never

Page 109

1  30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
2  seen.
3       MS. TODD-TROTTA: You have seen it. It was
4  part of defendant's supplemental compliance. You have
5  seen it.
6       MR. ELLIOTT: Well, if you have it, maybe --
7  If I missed --
8       MS. TODD-TROTTA: It's dated February 18th,
9  2015. There's Intertek lab reports related to the
10 six-ton jack stand, the three-and-a-half-ton jack stand.
11      MR. ELLIOTT: Is that the document you're
12 referring to?
13      THE WITNESS: Yes.
14      MS. TODD-TROTTA: Yes.
15      MR. ELLIOTT: And it's attached to the
16 February 18th production?
17      MS. TODD-TROTTA: Yes.
18 BY MR. ELLIOTT:
19   Q   Okay. What information does that report have
20 with regard to the design and development of the 50163
21 jack stand?
22   A   It confirms compliance with the PALD standard.
23   Q   For the 50163 jack stand?
24      MS. TODD-TROTTA: Do you want to look at it?
25      MR. ELLIOTT: I'd like to mark that, make a

Page 166

```
 1    30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
 2    PALD standard?
 3         A    Correct.
 4         Q    And if there was load testing as referred to in
 5    this e-mail, the results of that, if they were in
 6    writing, have been destroyed?
 7         A    Per our record retention policy, yes.
 8         Q    If you look at page 2 of Exhibit 9, there's an
 9    e-mail from Barbara Ernie to Mark Breckan, I guess he's
10    at MVP, and it says, Mark, I need a response regarding
11    this now. We have exactly one month before this stuff
12    needs to be on the water in time for the reset. What is
13    the reset?
14         A    In the stores, when they change their
15    merchandise.
16         Q    It goes on to say, what are we submitting for
17    the four-ton jack stand. Why did --
18              MS. TODD-TROTTA: Four-ton jack.
19    BY MR. ELLIOTT:
20         Q    The four-ton jack, excuse me. Why did I receive
21    something different? Is this what was agreed upon in
22    the ALR? What's ALR?
23         A    Something line review.
24         Q    Okay.
25         A    Accelerated line review or something like that
```

Page 167

```
 1    30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
 2    where they bring in the product and they pick what
 3    they're going to be offering.
 4         Q    What does that mean? Would you explain that?
 5    They look at the product and pick --
 6         A    MVP presents the product offerings for us and
 7    the buyers decide which product lines they want to
 8    carry.
 9         Q    Okay. In this case, the reference is to 50163,
10    right?
11         A    Yes. It would have been part of that, yes.
12         Q    Then Barbara says, I don't care about the
13    manual, that can be worked on later. Did Sears work on
14    the 501C operator's manual?
15              MS. TODD-TROTTA: 50163. You said 501C.
16    BY MR. ELLIOTT:
17         Q    50163 operator's manual.
18         A    MVP produces the manual.
19         Q    My question is, did Sears do any work on the
20    50163 operator's manual?
21         A    I wouldn't know.
22         Q    I wouldn't know? You wouldn't know?
23         A    I wouldn't know from back in 2007 whether we did
24    any work on the manual.
25         Q    Do you recall Sears ever doing any work on the
```

Page 168

```
 1    30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
 2    Model 50163 operator's manual?
 3         A    No.
 4         Q    Do you know what Barbara was referring to when
 5    she said I don't care about the manual, that can be
 6    worked on later, whether that was referring to Sears?
 7         A    I think it's referring to my note at the bottom
 8    of the page that says that the included manual is not
 9    for this product. Her concern in her e-mail was let's
10    get the product right.
11         Q    Right. My question is, who was going to be
12    doing work on the operator's manual, if you know, as
13    reflected in Barbara's e-mail?
14         A    MVP.
15         Q    Okay. Then she says, but now I need
16    confirmation via e-mail as to the lifting ranges and the
17    ratchet collar lock design agreed upon in the ALR.
18              So Barbara is asking MVP to confirm the correct
19    lifting ranges and ratchet collar lock design. Why?
20    Why is Barbara making that inquiry of MVP?
21         A    Because they provided the product.
22         Q    But why would confirmation of that information
23    be necessary?
24         A    Because --
25         Q    Why did Sears need it?
```

Page 169

```
 1    30(b)(6) SEARS ROEBUCK/KATHRYN GUERRA, MAY 6, 2015
 2         A    Because apparently it's different than what she
 3    had agreed upon. What they sent to us and I measured
 4    apparently was different than what she had agreed upon
 5    with MVP.
 6         Q    Okay. So this is -- this is part of the kind of
 7    quality assurance review that you do before putting this
 8    product on the shelves to be sold?
 9         A    It could be, yes.
10         Q    Well, is it or not?
11         A    In this case, yes.
12              MR. ELLIOTT: Okay. Let's mark as Exhibit 10
13    MVP 9230, 9231.
14              (Document marked as Guerra Deposition
15              Exhibit 10 for identification.)
16    BY MR. ELLIOTT:
17         Q    Excuse me one second.
18              Okay. Looking at Exhibit 10, it's an e-mail
19    from James Wang at Shinn Fu of America to Frank Lu at
20    Wei Fu, with copies to various people, dated March 9,
21    2007. It says -- The subject is T37402 new four-ton
22    jack stands.
23              Do you know what Model T37402 is? Is that the
24    same model as 50163?
25         A    I don't know.
```