# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FREDERICK KLORCZYK, JR., as co-administrator of the Estate of Christian R. Klorczyk, et al. | : | CIVIL ACTION NO. |
| | : | |
| *Plaintiffs*, | : | 3:13-cv-00257-JAM |
| | : | |
| v. | : | |
| | : | |
| SEARS, ROEBUCK AND CO., et al., | : | |
| | : | |
| *Defendants*. | : | OCTOBER 11, 2018 |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' PUNITIVE DAMAGES CLAIMS

Paul D. Williams (ct05244)
*pdwilliams@daypitney.com*
Bryan J. Orticelli (ct28643)
*borticelli@daypitney.com*
Kaitlin A. Canty (ct29074)
*kcanty@daypitney.com*
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
860-275-0100 (Tel)
860-275-0343 (Fax)

Howard S. Edinburgh
*hedinburgh@herzfeld-rubin.com*
Herzfeld & Rubin, P.C.
125 Broad Street
New York, NY 10004
(212) 471-8529
(212) 344-3333 (fax)

*Attorneys for Plaintiffs Frederick Klorczyk Jr. and Lynne Klorczyk, Co-Administrators of the Estate of Christian Klorczyk*

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ........................................................................ 1

II.  ADDITIONAL FACTS PRECLUDING SUMMARY JUDGMENT ............................. 3

    A.  Christian Was Crushed When Defendants' Jack Stand Failed ............................. 3

    B.  Defendants' Jack Stand Failed Due To False Engagement ................................... 4

    C.  Defendants Knew Their Ratchet-And-Pawl Jack Stand Design Was Susceptible to False Engagement And That False Engagement Posed A Crush Hazard That Could Result In Serious Injury Or Death ............................... 5

III.  ARGUMENT ........................................................................................ 7

    A.  Defendants Cannot Meet The High Standard For Granting Summary Judgment ...................................................................................... 7

    B.  Punitive Damages Are Available Where A Defendant Has Knowledge Of A Serious Risk And Fails To Implement Alternative Product Designs And Warnings ...................................................................................... 8

    C.  There Is A Genuine Issue Whether Defendants Had Knowledge Of A Serious Risk ................................................................................ 10

    D.  There Is A Genuine Issue Whether Defendants Consciously Ignored The Crush Hazard Posed By False Engagement ........................................... 14

    E.  Defendants' Remaining Arguments Are Unavailing ........................................... 17

        1.  Defendants' Industry Guidelines Argument Is Not Dispositive .............. 17

        2.  Defendants' Professional Publications Argument Is Not Dispositive ................................................................................ 18

IV.  CONCLUSION.................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ames v. Sears, Roebuck & Co.*,
  8 Conn. App. 642 (1986) ........................................................................................... 16

*Beecher v. Derby Bridge & Ferry Co.*,
  24 Conn. 491 (1856) ................................................................................................. 17

*Berry v. Loiseau*,
  223 Conn. 786 (1992) ................................................................................................. 9

*Brady v. Town of Colchester*,
  863 F.2d 205 (2d Cir. 1988) ....................................................................................... 8

*Bryan v, Maffucci*,
  923 F.2d 979 (2d Cir. 1991) ....................................................................................... 8

*Butkowski v. General Motors Corp.*,
  497 F.2d 1158 (2d Cir. 1974) ................................................................................... 12

*C.f. Walters v. Howmedica Osteonics Corp.*,
  676 F. Supp. 2d. 44 (D. Conn. 2009) ................................................................. 11, 14

*Facey v. Merkle*,
  146 Conn. 129 (1959) ..................................................................................... 11, 13, 14

*Forrest v. Beloit Corp.*,
  424 F.3d 344 (3d Cir. 2005) ................................................................................ 10, 14

*Johannsen v. Zimmer, Inc.*,
  No. 3:00-cv-2270, 2005 WL 756509 (D. Conn. Mar. 31, 2005) .............................. 14

*K.E. v. GlaxoSmithKline LLC*,
  No. 3:14-cv-1294, 2017 WL 440242 (D. Conn. Feb. 1, 2017), *appeal
  withdrawn*, No. 17-618, 2017 WL 3911570 (2d Cir. June 14, 2017) ................. 9, 14

*Kane v. Ford Motor Co.*,
  450 F.2d 315 (3d Cir. 1971) ..................................................................................... 12

*Lidle v. Cirrus Design Corp.*,
  505 F. App'x 72 (2d Cir. 2012) ................................................................................ 11

*Lutes v. Kawasaki Motors Corp. U.S.A.*,
  No. 3:10-cv-01549, 2015 WL 9239736 (D. Conn. Dec. 17, 2015) ..................... 9, 18

*Lutes v. Kawasaki Motors Corp. U.S.A.*,
　No. 3:10-cv-01549, Memorandum in Support of Defendants' Motion for
　Summary Judgment (D. Conn. June 23, 2015), ECF No. 222 .................................18

*Matthiessen v. Vanech*,
　266 Conn. 822 (2003) ........................................................................................9

*Pitterman v. General Motors LLC*,
　No. 3:14-cv-00967, Ruling re: Defendants' Renewed Motion for Judgment as
　a Matter of Law (D. Conn. Apr. 17, 2018), ECF No. 321 ......................................11

*Reiske v. Black & Decker (U.S.) Inc.*,
　No. 3:09-cv-1086, 2012 WL 685485 (D. Conn. Mar. 2, 2012) ..........................8, 14

*Rodriguez v. City of N.Y.*,
　72 F.3d 1051 (2d Cir. 1995) ................................................................................8

*Rosenthal v. Ford Motor Co.*,
　462 F. Supp. 2d 296 (D. Conn. 2006) ............................................................10, 13

*Schaen v. Liberty Mutual Insurance*,
　No. X07-CV-000078112-S, 2002 WL 31818543 (Conn. Super. Ct. Nov. 22,
　2002) ..............................................................................................................12

*Wagner v. Clark Equipment Co.*,
　243 Conn. 168 (1997) ......................................................................................16

*Wolinsky v. Standard Oil of Conn., Inc.*,
　712 F. Supp. 2d 46 (D. Conn. 2010) ....................................................................8

**Statutes**

Conn. Gen. Stat. § 52-240b ...................................................................................9

Connecticut Product Liability Act, Conn. Gen. Stat. §§ 52-572m to -572q ...............1, 4

**Rules**

D. Conn. L. Civ. R. 56 ..........................................................................................8

Fed. R. Civ. P. 56 ................................................................................................8

Plaintiffs Frederick Klorczyk, Jr. and Lynne Klorczyk, as co-administrators of the Estate of Christian Klorczyk ("Plaintiffs"), submit this memorandum of law in opposition to Defendants' motion for summary judgment on Plaintiffs' punitive damages claim (ECF No. 298).

## I.    PRELIMINARY STATEMENT

Plaintiffs' 21-year old son Christian was crushed to death on March 11, 2011 as he was completing a routine oil change in the garage attached to his family's home in Waterford, Connecticut.  Christian was alone when the 1,900-lb BMW that he was working under suddenly and unexpectedly collapsed on his face and chest, crushing him to death.  Plaintiffs were the first to find Christian.   Both Plaintiffs, and the first emergency responder, observed Defendants' jack stand under the front passenger-side of the BMW, where Christian would have placed it to keep the BMW elevated, allowing him access to the underbody.  The only reasonable explanation for the jack stand to have been in that position is that Christian was using the jack stand when it unexpectedly failed, causing the BMW to come crashing down on him.

The potential causes of failure are limited by the jack stand's physical condition and location beneath the BMW.[1]  The most likely cause of failure is "false engagement," a condition that occurs due to a known defect in the jack stand's ratchet-and-pawl design.  False engagement occurs when the tip of the locking pawl fails to engage completely the grooved indentations along the tooth side of the ratchet bar.  The jack stand is susceptible to failure when the locking pawl fails to engage completely and rests on a tooth of the ratchet bar.

---

[1] Plaintiffs refer to their memorandum in opposition to Defendants' motion for summary judgment on Plaintiffs' claims under the Connecticut Product Liability Act, Conn. Gen. Stat. §§ 52-572m to 52-572q for a detailed discussion of false engagement and the evidence that demonstrates Christian was crushed when Defendants' jack stand failed due to false engagement.

By their motion for summary judgment, Defendants seek to have this Court rule, as a matter of law, that Plaintiffs are prohibited from recovering punitive damages because they contend that false engagement "never definitively occurred before" this incident.  (Defs' Mem. at 1.)  But, evidence of a prior confirmed incident is not the standard for punitive damages.  An award of punitive damages is appropriate where, as here, the evidence supports a finding that the defendant consciously disregarded a crush hazard likely to result in serious injury or death.

It is not surprising that Defendants attempt to distort the standard for punitive damages. At the outset of this case, Defendants took the position that they had never heard of false engagement.  That position is no longer tenable in light of documents produced in this case and the testimony of Roger Claypool, a former employee of Defendant Shinn Fu America ("SFA"). During his 20-year tenure at SFA, Mr. Claypool investigated claims of sudden, unexpected loss of ratchet height on ratchet-and-pawl type jack stands and concluded that false engagement was a problem requiring attention.  Mr. Claypool went on to develop a proposal for a ratchet-and-pawl design jack stand that incorporated a redundant locking mechanism to prevent collapse due to false engagement.  Defendants did not act on Mr. Claypool's proposal—indeed, they told him they were "not interested."  Nor did Defendants implement other safeguards such as warnings and instructions specific to false engagement.  In contrast to Defendants' inaction, at least three of Defendants' industry peers and competitors successfully brought to market ratchet-and-pawl type jack stands with additional safety features, warnings and instructions, all of which respond to the dangers of false engagement.

The evidence supports Plaintiffs' claim for punitive damages.  Defendants cannot avoid the evidence showing their knowledge that their ratchet-and-pawl jack stand design was susceptible to false engagement and that false engagement presented a crush hazard and risk of

serious bodily injury and death.  Nor can Defendants avoid the fact that they did nothing to mitigate this risk before the tragic accident that killed Christian.  The issue whether Defendants recklessly disregarded a substantial risk to human safety is a factual determination that only a jury can decide.

## II.  ADDITIONAL FACTS PRECLUDING SUMMARY JUDGMENT[2]

### A.  Christian Was Crushed When Defendants' Jack Stand Failed.

Plaintiffs' testimony, and that of first responder EMT Geoffrey Hausmann, is unwavering as to the fact that Christian was using Defendants' jack stand to support the BMW when it collapsed.  Upon entering the garage, Plaintiffs observed the BMW parked straight inside the center bay.  Christian's lower legs and feet were protruding out from beneath the front bumper. Mr. Klorczyk crawled underneath the BMW and found the subject Craftsman Model 50163 4-ton jack stand inboard of the front passenger-side wheel well.  (Pls' Stmt. ¶¶ 5, 8, 11–15.)  Mr. Klorczyk then assembled the service jack located parallel to the BMW by inserting the lifting handle in to the socket, wheeled the service jack under the passenger-side of the BMW, and pumped the handle to lift the BMW off of Christian.  With the BMW lifted, Mrs. Klorczyk could see the subject jack stand in the same location described by her husband.  (*Id.* ¶¶  16–18.) Mr. Hausmann arrived at the garage within minutes, crawled under the BMW, and observed the jack stand in the same location described by Mr. Klorczyk—beneath the front passenger-side of the BMW.  (*Id.* ¶ 19.)  The only reasonable explanation for the jack stand to be in that location is that Christian was using the jack stand to support the BMW in an elevated position when the jack stand suddenly and unexpectedly failed.

---

[2] Facts referenced herein are set forth with citations to supporting evidence in Plaintiffs' Local Rule 56(a)(2) Statement ("Pls' Stmt.") filed simultaneously herewith.

**B.     Defendants' Jack Stand Failed Due To False Engagement.**

Frederick Heath, an expert with 40-plus years' experience in vehicle support equipment, utilized an exemplar model jack stand and an exemplar model BMW to test false engagement under circumstances extant in the Klorczyks' garage.[3]  Mr. Heath's testing demonstrates that: (i) false engagement occurs when the jack stand is under load; (ii) the jack stand is capable of supporting weight comparable to that of the BMW when the locking pawl and ratchet bar are aligned in false engagement; and (iii) a disturbance to the jack stand or the vehicle causes the ratchet bar (and, with it, the vehicle) to collapse.  (*Id.* ¶¶ 20–21.)  These results are consistent with the evidence concerning the subject jack stand's condition and location.  Additionally, when Plaintiffs first found Christian, they observed his right hand holding a socket wrench that was connected to the oil drain plug, such that he was tightening the plug when the collapse occurred. (*Id.* ¶ 13.)  Simulating the vehicle's movement relative to the forces applied when tightening the oil drain plug, Mr. Heath found the resulting disturbance sufficient to cause the falsely engaged ratchet bar to collapse, along with the BMW.  (*Id.* ¶ 21.)  The evidence, coupled with his extensive testing, fully supports Mr. Heath's expert opinion that the subject jack stand failed as a result of false engagement.[4]

---

[3] Plaintiffs refer to their memorandum in opposition to Defendants' motion to preclude Mr. Heath's testimony for a detailed discussion of his qualifications and work in this case.

[4] Defendants have done nothing, beyond offering their alternative service jack theory, to refute the occurrence of false engagement as the cause of Christian's death.  Plaintiffs refer to their memorandum in opposition to Defendants' motion for summary judgment on Plaintiffs' claims under the Connecticut Product Liability Act, Conn. Gen. Stat. §§ 52-572m to 52-572q for a detailed discussion of the evidence demonstrating that Christian could not have been using the service jack as Defendants assert.

C.   **Defendants Knew Their Ratchet-And-Pawl Jack Stand Design Was Susceptible to False Engagement And That False Engagement Posed A Crush Hazard That Could Result In Serious Injury Or Death.**

Defendants were aware prior to March 11, 2011, that their ratchet-and-pawl jack stand design was susceptible to false engagement and that false engagement posed a crush hazard that could result in serious injury or death.   Mr. Claypool, a former employee of SFA who investigated consumer complaints regarding Defendants' jack stand products, testified that he encountered claims of sudden and unexpected loss of ratchet height, *i.e.* false engagement, during the course of his employment.  (*Id.* ¶¶ 24–25.)

Mr. Claypool testified that he was convinced that false engagement was possible, and was *not* a phantom condition, in the course of  investigating a claim made by Steven Bowles, in or about 2004.  (*Id.* ¶ 25.)  Mr. Bowles alleged that a previously loaded ratchet bar on one of Defendants' jack stands unexpectedly dropped, causing the load to drop and pinning him underneath the vehicle he was working on until first responders arrived.  Mr. Bowles alleged physical injury and sought damages for pain and suffering, medical bills and lost wages.  Mr. Claypool recommended that Defendants settle the Bowles claim because, *inter alia*, "I just don't have a lot of confidence that a jury wouldn't take notice and not think badly (i.e. $$$) of us."  In the course of investigating the Bowles claim, Mr. Claypool took it upon himself to conduct informal testing.  He testified during his deposition that he was able to create a false engagement and that, on more than one occasion, the ratchet "simply collapse[d]."  (*Id.* ¶ 25; *see also* Pls' Ex. T.)  Mr. Claypool also submitted to Defendants a proposal for an alternative ratchet-and-pawl design jack stand that incorporated a secondary locking mechanism.  <u>Defendants did not act on Mr. Claypool's alternative design proposal.</u>  (*Id.* ¶ 28; *see also* Pls' Ex. U.)

The Bowles claim was not an isolated incident.   In 2006, Jennifer Raymond, administrator of the estate of Christopher Raymond, filed a lawsuit after her husband, Christopher Raymond, was crushed to death following the failure of Defendants' 3.5-ton ratchet-and-pawl jack stands.  Mr. Claypool investigated the Raymond claim and testified that the claim involved allegations of sudden, unexpected loss of ratchet height.   (*Id.* ¶ 26; *see also* Pls' Ex. D.) Mr. Claypool also testified that a claim by an individual with the last name Hadstedt involved allegations of sudden, unexpected loss of ratchet height.  (*Id.* ¶ 26.)  In addition to failing to act on Mr. Claypool's design proposals, Defendants took no action to reduce the hazards of false engagement in response to the Raymond and Hadstedt claims.

Mr. Claypool was not the only employee with knowledge that the ratchet-and-pawl design was susceptible to false engagement and posed a crush hazard that could result in serious injury or death.  Upper management, including Steven Huang, the present of SFA, were made aware of all claims, including the Bowles, Raymond, and Hadstedt claims, and that false engagement could occur and result in serious physical injury.  In fact, Defendants admit their knowledge of false engagement prior to March 11, 2011. (*Id.* ¶ 27.)

In addition to admitting their knowledge of false engagement,  Defendants also do not contest the feasibility or affordability of Mr. Claypool's alternative design proposal.  Indeed, Defendants admit the feasibility of a ratchet-and-pawl design jack stand that incorporates a redundant locking mechanism, and that the cost to add a redundant locking mechanism is insignificant.[5]  Instead, Defendants that Mr. Claypool did not build a prototype.[6]  (Defs' Mem. at

---

[5] Defendants allegedly commissioned a trial "product development" project to design a ratchet-and-pawl jack stand that "would be locked in more than one location" but ultimately terminated the project.  Defendants claim they are not aware of any documents concerning the project or the reasons for its termination.  (*Id.* ¶ 28.)

7.)  Defendants cannot camouflage their own action in the face of known risk by pointing the finger at Mr. Claypool, especially when Defendants told Mr. Claypool that they were "not interested" in his design.  (*Id.* ¶ 28.)

In contrast to Defendants' failure to act, at least three of Defendants' competitors, Allied, Strongway, and Torin, developed and brought to market ratchet-and-pawl jack stand products with either a redundant or secondary locking mechanism prior to March 11, 2011.  (*Id.* ¶ 29.) Defendants admit knowledge that their competitors implement redundant locking mechanisms. Indeed, Defendants similarly implemented redundant locking mechanisms in their comparable jack stand models after this accident.  (*Id.*)

The foregoing facts, set forth in Plaintiffs' accompanying Local Rule Statement, demonstrate the disputed issues precluding the entry of summary judgment on Plaintiffs' punitive damages claim.  Only a jury can properly weigh the evidence and determine whether Defendants' conduct warrants punitive damages.

## III.    ARGUMENT

**A.    Defendants Cannot Meet The High Standard For Granting Summary Judgment.**

A party moving for summary judgment bears a heavy burden.  *See* D. Conn. L. Civ. R. 56(c).  Summary judgment shall not be granted to a moving party unless there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Wolinsky v. Standard Oil of Conn., Inc.*, 712 F. Supp. 2d 46, 51 (D. Conn. 2010).  The moving party bears the burden of affirmatively demonstrating the absence of a triable issue of

---

[6] Whether Mr. Claypool built a prototype has no relevance to the issue in this motion.  The only issue in this motion is whether there is sufficient evidence to support a finding that Defendants acted with reckless indifference to human life in the face of knowledge that their ratchet-and-pawl jack stand design was susceptible to false engagement and that false engagement presented a crush hazard that could result in serious injury or death.

material fact and entitlement to judgment as a matter of law.  *Rodriguez v. City of N.Y.*, 72 F.3d 1051, 1060–61 (2d Cir. 1995).  Even if the moving party satisfies its burden, the non-moving party may still "come forward with enough evidence to support a jury verdict in its favor" to defeat the motion.  *Bryan v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).  "Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion."  *Reiske v. Black & Decker (U.S.) Inc.*, No. 3:09-cv-1086, 2012 WL 685485, at *2 (D. Conn. Mar. 2, 2012).  If reasonable minds could differ as to the import of the evidence, and if there is any evidence in the record from any source from which a reasonable inference in the non-moving party's favor may be drawn, the moving party is not entitled to summary judgment.  *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988).

**B.**     **Punitive Damages Are Available Where A Defendant Has Knowledge Of A Serious Risk And Fails To Implement Alternative Product Designs And Warnings.**

Punitive damages are available to a plaintiff in a product liability suit, in an amount up to twice the amount of compensatory damages, if "the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product."  Conn. Gen. Stat. § 52-240b.  An actual intention to harm the plaintiff is not necessary.  *Berry v. Loiseau*, 223 Conn. 786, 811 (1992).

Defendants acknowledge that the "reckless disregard" standard may be satisfied by evidence that Defendants made a "conscious choice" of a course of action with knowledge, or constructive knowledge, of a serious risk.  (Defs' Mem. at 14 (citing *Matthiessen v. Vanech*, 266 Conn. 822, 832 (2003)); *Matthiessen*, 266 Conn. at 832 (holding that jury instruction that reckless disregard requires "a conscious choice of a course of action involving serious dangers to others, either with knowledge of that serious danger, or with knowledge of facts which a reasonable person would recognize as being a serious danger to others" was correct statement of

-8-

the law on punitive damages in a negligence action); *K.E. v. GlaxoSmithKline LLC*, No. 3:14-cv-1294, 2017 WL 440242, at *25–6 (D. Conn. Feb. 1, 2017) (dismissing punitive damages claim where there was no evidence defendant "knew of the risks associated with Paxil" or "withheld information about the risks"), *appeal withdrawn*, No. 17-618, 2017 WL 3911570 (2d Cir. June 14, 2017).

For example, in *Lutes v. Kawasaki Motors Corp. U.S.A.*, the Court rejected the defendants' argument that there was no "evidence that Kawasaki knew of or consciously chose to ignore any manifest danger related to the cargo hooks," and denied the defendants' summary judgment motion, where the plaintiffs presented evidence that the defendants sold a number of replacement cargo hooks. *Lutes v. Kawasaki Motors Corp. U.S.A.*, No. 3:10-cv-01549, 2015 WL 9239736, at *5 (D. Conn. Dec. 17, 2015). The Court concluded the sales of replacement cargo hooks created a genuine issue whether the defendants were on notice of facts tending to show a "manifest problem with the hooks." *Id.*

Similarly, in *Rosenthal v. Ford Motor Co.*, the Court rejected the defendant's argument that "only four property damage claims had been filed with respect to the FR680 tires, and that plaintiffs' accident was the only one involving bodily injury, is insufficient to put them on notice of a potential defect with the tire" and denied the defendants' motion for summary judgment on the plaintiffs' punitive damages claim. *Rosenthal v. Ford Motor Co.*, 462 F. Supp. 2d 296, 313 (D. Conn. 2006). The Court stated it "need not decide whether four incidents are sufficient to have placed Firestone on notice or whether the continued use of the potentially dangerous rubber compound rises to the level of willful or wanton behavior" because "it is possible to interpret it as such when the evidence is viewed in the light most favorable to the plaintiffs." *Id.*

**C.      There Is A Genuine Issue Whether Defendants Had Knowledge Of A Serious Risk.**

The Court should deny Defendants' motion because there is a genuine issue whether Defendants had actual or constructive knowledge of a serious risk, *i.e.* that their ratchet-and-pawl design jack stand permitted the occurrence of false engagement and that the occurrence of false engagement in a jack stand under load posed a crush hazard.

The evidence, summarized above, supports finding that Defendants had such knowledge. *See infra* at 5–7.  Indeed, Defendants admit knowledge that their ratchet-and-pawl design jack stand was susceptible to false engagement which posed serious risk of personal injury, as well as knowledge of feasible, cost-effective, alternative designs to mitigate known risk.  (Pls' Stmt. ¶¶ 24–29.)   In response, Defendants attempt to discredit and mischaracterizes the Bowles, Raymond and Hadstedt claims.  First, Defendants argue that the Bowles, Raymond, and Hadstedt claims are not "substantially similar" to this case and, therefore, evidence of these claim is inadmissible.  (Defs' Mem. at 5, 16.)  As an initial matter, the issue is *not* whether Messrs. Bowles, Raymond or Hadstedt were, in fact, injured in the same manner as Christian.[7]  The issue is whether Defendants had actual or constructive knowledge that false engagement could occur and cause serious injury.  The Bowles, Raymond, and Hadstedt claims are admissible for the purpose of showing that, prior to Christian's injury, Defendants had received complaints that their ratchet-and-pawl design jack stands experienced sudden, unexpected loss of ratchet height resulting in serious physical injury or death.[8]  *See Pitterman v. General Motors LLC*, Dkt. No. 3:14-cv-00967, Ruling re: Defendants' Renewed Motion for Judgment as a Matter of Law (Entry

---

[7] As the Third Circuit Court of Appeals recognized in *Forrest v. Beloit Corp.*, "there is always a first victim."  424 F.3d 344, 357–58 (3d Cir. 2005).

[8] Further, the Jeffcoat, Guerra, Finley, Sloan, and Zinn complaints are admissible for the purpose of showing notice of complaints regarding Defendants' jack stands.  *Pitterman*, slip op. at 62.

No. 321), at 62 (D. Conn. Apr. 17, 2018) (attached as Ex. 1) (allowing evidence of unverified reports of rollaway incidents for purpose of "deciding whether General Motors was aware at certain times of the fact that people reported such incidents" but not to provide that the events in the reports actually occurred).  Here, the evidence supports a finding that Defendants were aware of at least three complaints of false engagement causing personal injuries such that summary judgment is not appropriate.  *C.f. Walters v. Howmedica Osteonics Corp.*, 676 F. Supp. 2d. 44, 56–57 (D. Conn. 2009) (granting summary judgment on punitive damages claim where no evidence that defendant received any complaints of injury of the type alleged by plaintiff).

Moreover, the Bowles, Raymond, and Hadstedt claims *are substantially similar* to Plaintiffs' claim and are admissible to show Defendants' knowledge of the existence of the design defect known as false engagement and associated risk. "Whether a prior accident occurred under 'substantially similar' conditions necessarily 'depends on the underlying theory of the case, and is defined by the particular defect at issue.'"  *Lidle v. Cirrus Design Corp.*, 505 F. App'x 72, 74 (2d Cir. 2012) (quoting *Guild v. Gen. Motors Corp.*, 53 F. Supp. 2d 363, 367 (W.D.N.Y. 1999)); *accord Facey v. Merkle*, 146 Conn. 129, 135-36 (1959).  The Bowles, Raymond and Hadstedt claims involve the same "underlying theory" and "defect" as Plaintiffs' claim, *i.e.* a sudden and unexpected collapse of Defendants' ratchet-and-pawl jack stand, otherwise known as false engagement.  None of the cases cited by Defendants command a different conclusion.[9]  (*See* Defs' Mem. at 17.)  The cases cited by Defendants involve different claims of defect, whereas, Bowles, Raymond and Hadsted involve claims of the *identical defect*

---

[9]  *Butkowski v. General Motors Corp.*, involved an untimely motion seeking discovery concerning the defendant's recall campaign related to separation of "the idler arm . . . from the rest of the steering assembly."  497 F.2d 1158, 1159 (2d Cir. 1974).  The court denied the motion for additional discovery because it sought information of a different defect than that alleged by the plaintiff (i.e. that the idler arm froze).

alleged by Plaintiffs.  For example, in *Kane v. Ford Motor Co.*, the court excluded a service letter concerning possible installation of defective brake supports because the plaintiff's claim involved an entirely different defect: improper brake hose installation.  450 F.2d 315, 316–17 (3d Cir. 1971).  In *Schaen v. Liberty Mutual Insurance*, the court excluded evidence of prior incidents of collision between motor vehicles and people in the subject parking lot because the plaintiff failed to demonstrate the prior collisions involved the defects alleged by the plaintiff, *i.e.* inadequate lighting, signage or traffic management.  No. X07-CV-000078112-S, 2002 WL 31818543, at *4 (Conn. Super. Ct. Nov. 22, 2002).

Second, Defendants argue that the Bowles claim was not a "confirmed" instance of false engagement.  (Defs' Mem. at 11, 15–16, 19.)  Defendants point to an e-mail chain between Mr. Claypool, Mr. Chaykin and others.  (*See* Defs.' Mem. at 4, Ex. G.)  Defendants focus on a statement by Mr. Claypool, on January 13, 2005, that he did not "believe" the jack stand at issue in the Bowles claim actually failed as a result of false engagement.  Whether the jack stand at issue in the Bowles incident failed as a result of false engagement has no bearing on the relevant issue.  The issue is whether Defendants had actual or constructive knowledge of the serious crush hazard posed by false engagement.  The e-mail chain, read as a whole, supports a finding that Defendants knew that false engagement could occur and cause serious injury.  For example, on January 10, 2005, Mr. Claypool wrote to Mr. Chaykin and others that Mr. Bowles had reported that a previously loaded ratchet bar on one of Defendants' jack stands "*suddenly dropped and caused the load to drop onto him*, *pinning him* until Police and Fire Dept freed him" and causing him to endure pain and suffering and to incur medical bills and lost wages.  (Pls' Stmt. ¶ 25; Pls' Ex. T.)  Mr. Claypool stated that it was possible that the ratchet bar became "falsely loaded" and "slip[ped] out of that false engagement."  (Pls' Ex. T.)  He also indicated that a jury could

-12-

conclude Defendants were at fault.  (Pls' Stmt. ¶ 25; Pls' Ex. T.)  Viewing the e-mail chain in the light most favorable to Plaintiffs, there is a genuine issue whether Defendants had knowledge that false engagement could occur and cause serious injury.  Proof of a prior "confirmed" incident is not required.  *See*, *e.g.*, *Rosenthal*, 462 F. Supp. 2d. at 313 (denying defendants' motion for summary judgment on punitive damages claims because a juror could interpret evidence of prior claims as putting defendants on notice of potential danger).

Third, Defendants—entirely ignoring the Bowles, Raymond, and Hadstedt claims—argue that "Defendants were not aware of any prior substantially similar jack stand incidents" and "the only known claim of false engagement is the Plaintiffs."[10]  (Defs' Mem. at 19.)   Defendants' argument is not credible.  As discussed above, the evidence supports a finding that Defendants were on notice, and had knowledge, that their ratchet-and-pawl design jack stand permitted the occurrence of false engagement and that the occurrence of false engagement in a jack stand

---

[10] Further, Defendants' statement that it has sold more than 1 million jack stands and "the only known claim of false engagement is the Plaintiffs" is not admissible.  Evidence that other individuals used a product without incident is admissible only if the defendant demonstrates that the other individuals use of the product was identical to the plaintiff's use of the product.  *Facey v. Merkle*, 146 Conn. 129 (1959).  In *Facey*, the Connecticut Supreme Court concluded that the trial court properly excluded evidence offered by defendant that thousands of individuals used the stairway at issue without incident because the defendant failed to demonstrate that the other individuals' use of the stairway was identical to the plaintiff's use of the stairway by, for example, showing the other individuals were in the same physical condition as the plaintiff.  *Id.* at 135-36.  Similarly, courts have excluded reverse-other-incident evidence, of the type offered by Defendants, where the defendant fails to demonstrate that it would have known of other similar incidents.  *See*, *e.g.*, *Forrest*, 424 F.3d at 357–58 (recognizing that prejudicial nature of statements regarding the absence of other incidents and that it "may be difficult or impossible for a plaintiff to obtain [specific evidence of prior occurrences] where the defendant has not kept records concerning the safety history of its products," that "the absence of prior accidents may simply mean that the plaintiff was the first to be injured; there is always a first victim," and "testimony concerning the absence of prior accidents 'does not tell us how many near-accidents, nor how any fortuitous escapes from injury, may have occurred'" (quoting *Jones v. Pak-Mor Mfg. Co.*, 145 Ariz. 121, 128 (1985)).  Here, Defendants have failed to lay the required foundation for admission of statements regarding the absence of other accidents.  Defendants have failed to demonstrate that they would have knowledge of other "near-accidents"—the Bowles, Raymond, and Hadstedt claims may well be the tip of the iceberg.

-13-

under load posed a crush risk that could result in serious injury or death.  *See infra* at 5–7.

Defendants' cases are inapposite.  In *Reiske*, 2012 WL 685485, at *2, *K.E.*, 2017 WL 440242, at

*26, *Walters*, 676 F. Supp. 2d 44, and *Johannsen v. Zimmer, Inc.*, No. 3:00-cv-2270, 2005 WL

756509 (D. Conn. Mar. 31, 2005), there was no evidence that the defendant was on notice, or

had knowledge of, the defect alleged by the plaintiff or the associated risk.

**D.     There Is A Genuine Issue Whether Defendants Consciously Ignored The Crush Hazard Posed By False Engagement.**

Defendants' motion also fails because there is a genuine issue whether Defendants

consciously ignored the serious risk of personal injuries posed by false engagement.

The evidence summarized above supports finding that Defendants made a conscious

decision to ignore the serious risk of hazard by the vehicle underbody that could result in serious

injury or death.  Defendants were aware that their ratchet-and-pawl design jack stand permitted

the occurrence of false engagement and that the occurrence of false engagement in a jack stand

under load posed a crush hazard.  (Pls' Stmt. ¶¶ 24–29.)  Defendants admit that Mr. Claypool, in

the course of his employment, developed a proposal for implementing a secondary locking

mechanism as a means to mitigate the potential for crush injuries posed by false engagement.

(*Id*. ¶ 28; *see also* Defs' Mem. at 15.)  Defendants did not act on Mr. Claypool's proposal.  (Pls'

Stmt. ¶ 28.)  Nor did Defendants act to mitigate risk of false engagement in the wake of the

Bowles, Raymond and Hadstedt claims, which alleged sudden and unexpected loss of ratchet

height resulting in serious physical injury and the death of Mr. Raymond.  (*Id*.)  Defendants

admit the feasibility of incorporating secondary locking mechanisms on ratchet-and-pawl jack

stand models and that the cost of implementing this additional safety feature was insignificant.

(*Id*.)  Defendants also admit that as of March 11, 2011, at least three of their competitors—

Allied, Strongway and Torin—had brought to market ratchet-and-pawl jack stands that

incorporated secondary locking mechanisms.  (*Id.* ¶ 29.)  Further emphasizing the feasibility of incorporating this additional safety feature, Defendants currently sell comparable jack stand products with secondary locking mechanisms.  (*Id.*)  The jury is entitled to consider these, and other facts, to determine whether Defendants' conduct constitutes recklessness.

In response, Defendants argue that Mr. Claypool did not build a prototype along with his alternative design proposal.  (Defs' Mem. at 15.)  This is an obvious attempt to excuse Defendants' own failure to act.  After Defendants were aware of the risks of false engagement, Mr. Claypool submitted an alternative design proposal.  Defendants did nothing.  (Pls' Stmt. ¶ 28.)  Defendants cannot excuse the fact that they ignored known risks, and Mr. Claypool's design proposal, by claiming that Mr. Claypool should have built a prototype for a design that Defendants stated they were "not interested" in pursuing.

Defendants also argue that the Court should conclude, as a matter of law, that Plaintiffs are not entitled to punitive damages because the alternative secondary locking mechanism design was not "universally accepted" at the time of the accident.  (Defs' Mem. at 20–21.)  Defendants have not cited any authority requiring universal acceptance of an alternative design or warning as a precondition for an award of punitive damages.  The two cases relied on by Defendants, *Ames v. Sears, Roebuck & Co.*, 8 Conn. App. 642 (1986) and *Wagner v. Clark Equipment Co.*, 243 Conn. 168 (1997), are distinguishable because in both cases there was no evidence that the defendants were aware of prior incidents that put them on notice of the risk of substantial injury and no evidence to support a finding that defendants made a conscious choice in the face of actual or constructive knowledge of a serious risk..  *See Ames*, 8 Conn. App. at 654 (at time of accident, defendant was *generally* aware of existence of alternative design); *Wagner*, 243 Conn.

at 201 (at time of accident, defendant was "aware of the general dangers" posed by forklifts to pedestrians).

In contrast, here there is evidence that Defendants knew, by way of prior complaints, that their ratchet-and-pawl jack stand design permitted the occurrence of false engagement and that the occurrence of false engagement in a jack stand under load posed a crush hazard that could result in serious injury or death.  Moreover, one of Defendants' employees, Mr. Claypool, presented plans for an alternative design which incorporated redundant safety features, and Defendants failed to act.  There is also evidence that Defendants' competitors developed warnings for comparable ratchet-and-pawl jack stands that specifically addressed the crush hazard posted by false engagement.  (Pls' Stmt. ¶¶ 24–29.)  For example, Sealey Quality Machinery instructs users of its 3-ton ratchet-and-pawl jack stand to:  "Ensure the centre column is locked with the locking lever down and pawl engaged with a ratchet tooth;" "Ensure toothed side of column will engage with locking lever mechanism;"  "WARNING:  ENSURE PAWL IS FULLY ENGAGED WITH TEETH;"   "*Failure to heed these warnings may cause damage, injury or loss of life.*"  (*Id.* ¶¶ 30–32.)

The jury is entitled to weigh the evidence and determine whether Defendants' conduct amounts to reckless disregard of a substantial risk to human safety.  *Beecher v. Derby Bridge & Ferry Co*., 24 Conn. 491, 498 (1856) (explaining whether evidence supports a finding of willful and wanton neglect of duty sufficient to justify an award of punitive damages, previously referred to as "vindictive damages," is a question for the trier of fact).

E.      **Defendants' Remaining Arguments Are Unavailing.**

Defendants' remaining arguments regarding industry standards and professional publications are unavailing and do not warrant summary judgment.

1.      **Defendants' Industry Guidelines Argument Is Not Dispositive.**

Defendants claim that their jack stands complied with "all applicable regulations." (Defs.' Mem. at 8.)   As an initial matter, the ASME-PALD publications that Defendants reference are neither controlling nor are they regulations.   The ASME-PALD publications provide certain *minimum* safety standards as industry guidance.   Compliance is completely voluntary.   (Pls' Response to Defs' Stmt. ¶ 12.)   Defendants' purported testing in connection with such publications does not address, or eliminate, the occurrence of false engagement in the subject ratchet-andpawl design.

The issue is whether Defendants made a conscious choice in the face of knowledge that their ratchet-and-pawl jack stand design permitted the occurrence of false engagement and that the occurrence of false engagement in a jack stand under load posed a crush risk that could result in serious injury or death.   Whether Defendants complied with certain publications is not dispositive.   *Compare* Memorandum in Support of Defendants' Motion for Summary Judgment at 8, *Lutes v. Kawasaki*, No. 3:10-cv-01549 (D. Conn. June 23, 2015), ECF No. 222 (arguing defendants were entitled to summary judgment on punitive damages claim because they complied with industry standards) *with Lutes*, 2015 WL 9239736, at *5 (denying motion for summary judgment and failing to adopt defendants' argument that compliance with industry standards precluded punitive damages).

**2.      Defendants' Professional Publications Argument Is Not Dispositive.**

Defendants argue that it "impossible to show that the Defendants recklessly ignored a known danger" because Plaintiffs have not identified professional publications regarding false engagement. (Defs' Mem. at 16.)   Defendants have not cited any authority conditioning the availability of punitive damages on "universal acceptance" of an alternative design or warning, or identification of professional publications.   Under Defendants' theory, if a product is defective due to its design and failure to warn, the first person to be seriously injured and file a lawsuit would be precluded from seeking punitive damages.   Surely, that is not the law in Connecticut. The inquiry whether punitive damages are appropriate is an issue for the jury, not the Court.

## IV.      CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion for summary judgment on Plaintiffs' punitive damages claim in its entirety.

PLAINTIFFS,
FREDERICK KLORCZYK, JR. and LYNNE
KLORCZYK, co-administrators of the Estate of
Christian R. Klorczyk

By: */s/ Paul D. Williams*
    Paul D. Williams (ct05244)
    *pdwilliams@daypitney.com*
    Bryan J. Orticelli (ct28643)
    *borticelli@daypitney.com*
    Kaitlin A. Canty (ct29074)
    *kcanty@daypitney.com*
    DAY PITNEY LLP
    242 Trumbull Street
    Hartford, CT 06103
    860-275-0100 (Tel)
    860-275-0343 (Fax)

    Howard S. Edinburgh
    *hedinburgh@herzfeld-rubin.com*
    Herzfeld & Rubin, P.C.
    125 Broad Street
    New York, NY 10004
    (212) 271-8529 (Tel)
    (212) 344-3333 (Fax)

    *Their Attorneys*

## <u>CERTIFICATION</u>

I HEREBY CERTIFY that on this date a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Bryan J. Orticelli*
Bryan J. Orticelli (ct28643)

100633667.8