## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FREDERICK KLORCZYK, JR., as co-administrator of the Estate of Christian R. Klorczyk, et al., | : : : | CIVIL ACTION NO. 3:13-cv-00257-JAM |
| *Plaintiffs*, | : : | |
| vs. | : : | |
| SEARS, ROEBUCK AND CO., et al., | : : | |
| *Defendants*. | : | November 20, 2018 |

# DEFENDANTS' REPLY IN SUPPORT OF
# THE MOTION TO PRECLUDE FREDERICK HEATH

No amount of lawyerly argument or explanation can make Mr. Heath's unscientific opinions and testimony admissible. The Opposition does not identify Mr. Heath's accident reconstruction credentials, since Mr. Heath has made clear that he has none, and only discusses Mr. Heath's methodology in the abstract, because not even Mr. Heath knows the specifics. Instead, the Plaintiffs' best defense of Frederick Heath is a photograph that purports to show "false engagement," but actually shows a heavily damaged jack stand with a broken tooth that bears no resemblance to the brand new jack stand at issue in this case.

It is telling that the Plaintiffs *still* have not produced a step-by-step list of what Mr. Heath did to accomplish false engagement or "reconstruct" the accident. In fact, they cannot do so because Mr. Heath's "tests" were done by an independent contractor, outside of Mr. Heath's presence, who did not keep detailed records about the procedure or the results. Without anything connecting Mr. Heath's conclusions to an articulable scientific methodology based in fact, and without some credentials qualifying Mr. Heath to perform an accident reconstruction in the first place, his opinions are inadmissible and must be precluded.

I.   **MR. HEATH DOES NOT GROUND HIS OPINIONS IN FACT OR SCIENCE, SO HIS OPINIONS ARE IRRELEVANT**

   A.   **The Plaintiffs Cannot Make Mr. Heath's Methodology Relevant Through Abstractions About His Methods**

The Plaintiffs' Opposition discusses Mr. Heath's methodology only at a very high level of abstraction. The Opposition claims that Mr. Heath "thoroughly documented and relied on the results of [his] tests" relating to false engagement, (ECF No. 303 ¶ 18), and that his conclusions resulted from his "extensive" and "comprehensive" inspection, testing and analysis of false engagement (ECF No. 303 ¶¶ 18, 21, 24). However, the Opposition never discusses the specifics of that inspection, testing, or analysis, nor does it produce the referenced documentation. In fact, the Opposition contains no specific description at all of the method that Mr. Heath followed to

1

achieve false engagement in the first place, or to reach his conclusion that false engagement caused the decedent's death. If Mr. Heath actually adhered to any sort of scientific method in performing his testing and generating opinions, the following documents and data would exist:

- A description of how his independent contractor initially created false engagement;

- A written protocol laying out, step-by-step, how his independent contractor achieved his setup for re-creating false engagement for each test;

- A description of where the jack stand was placed under the vehicle for each test;

- The number of tests that the independent contractor performed;

- The length of time the jack stands supported their load before releasing;

- How many times the jack stand released under load, and how many times it did not;

- The angle and amount of force necessary to cause the jack stands to release, including the threshold force that could be exerted on the load without the jack stands releasing;

- A written protocol explaining his accident reconstruction methodology;

- An analysis of how much force could be exerted on the *vehicle* before the service jack would slide out;

- A list of measurements and their sources, including analysis of the clearance needed for the jack stand to tip over, as compared with the decedent's chest depth, factoring in the height of the mechanics creeper.

No such records or documentation exist. The Opposition nonetheless reiterates Mr. Heath's speculation that false engagement is a "naturally occurring condition" in jack stands that occurs because of "friction between the tip of the locking pawl and tip of the toothed ratchet bar." (ECF No. 303 ¶¶ 14, 24.) Nowhere does Mr. Heath indicate that spontaneous false engagement of the jack stand ever occurred in his "tests" — the only time he was ever able to create false engagement was by physically altering the jack stand by cutting a window into the frame, and then manually manipulating the jack stand into a precarious position. (Dec. Dep. Tr. p. 28:9-24, attached as **Ex. A**.) He similarly never offered any proof that the coating on the jack stands

2

causes false engagement. The Opposition's inability to identify the specific factual bases for Mr. Heath's conclusions is enough to warrant preclusion.

### B. The Broken Jack Stand That Mr. Heath Physically Manipulated Into Unstable Engagement Is Not Relevant To The Facts Of This Case

In addition to being intentionally vague and sparse on facts or details relating to Mr. Heath's testing methodology, the Opposition ignores issues regarding the factual underpinnings of Mr. Heath's conclusions. Absent documentation, one cannot know just how far Mr. Heath deviated from the conditions at the time of the incident, but from what Mr. Heath has disclosed, neither the jack stand nor Mr. Heath's methodology for achieving false engagement replicate the conditions that the Plaintiffs argue existed at the time of the incident. Instead of simulating conditions as the Plaintiffs alleged them, Mr. Heath modified the jack stand, added components to the testing conditions (such as springs and pieces of rubber) that were not present in Plaintiffs' version of the incident, and made no effort to simulate the kind of force that was most likely acting on the decedent's car at the time of the incident. (Mar. Dep. Tr. 28:9-24; 59:23-25; 123:2-17, **Ex. B**.)  Thus, Mr. Heath's opinion evidence is irrelevant and inadmissible.

The Opposition also admits that Mr. Heath used a worn jack stand that did not replicate the accident's conditions, but tries to spin this deficiency as support for his work. (ECF No. 303, ¶¶ 12-13.) Examining the photo that the Opposition presents (on page 10) as evidence of false engagement, the jack stand's pawl is so worn that the coating that supposedly causes the necessary friction for false engagement is gone, and the tip of the tooth appears to be broken off:



3

(ECF 303, p. 10.) Mr. Heath even admitted that because the ratchet bar was worn smooth, it was much more likely that any falsely engaged configuration would release and collapse all the way down. (Mar. Dep. Tr. pp. 138:11-139:9.) Thus, the product that Mr. Heath used to formulate his conclusions is not anything like the new jack stand allegedly used in the incident. (ECF No. 303, ¶ 27.) Similarly, the Opposition states that Mr. Heath did not observe "evidence of fracture, buckling or permanent deformation" in his inspection of the subject jack stands (ECF No. 303 ¶ 23). The Plaintiffs argue that this supports the theory of false engagement, despite contradictory testimony from the Plaintiffs' paid fact witness and Mr. Heath's own contractor, Roger Claypool, that jack stand failure is *always* accompanied by physical damage to the jack stand.[1] Contradiction of this type is unsurprising, given the factual and logical hurdles that Mr. Heath had to jump to reach his conclusions. Although Mr. Heath's experiment for his initial report only ever suggested, at most, that false engagement was theoretically possible under contrived conditions in which he intentionally set the jack stand up to fail, he has never explained the leap from his theoretical first report to the "accident reconstruction" in his "rebuttal" report, which concludes that false engagement was the probable cause of the accident based on real-world conditions. (Mar. Dep. Tr. pp. 126:18-127:3; Heath Rebuttal Report, at p. 7, **Ex. D**.)

The Opposition also ignores Mr. Heath's troubling testimony that he had no factual basis for his conclusion other than his assumptions about the decedent's conduct based on selective adoption of conflicting witness testimony. (Heath Mar. Dep. Tr. pp. 19:22-22:18; Dec. Dep. Tr. pp. 11:24-12:3.) While Mr. Heath and the Plaintiffs emphasize that his opinions are based on and supported by Mr. Klorczyk's recollection of the accident, even Mr. Heath's selection of

---

[1] Mr. Claypool testified that "most [jack stands] are crushed as a result of the sudden loss of height and getting caught up in the vehicle components," such as "the base being crushed as a result of an impact," and that the jack stand would have an obvious physical deformity, even to a layperson. *See* Claypool Dep. Tr., pp.190:12-192:4, attached here as **Ex. C**.

statements from Mr. Klorczyk was outcome-driven. Mr. Heath only accepted as true Mr. Klorczyk's testimony that supports the decedent's use of a single jack stand, without considering or addressing any of Mr. Klorczyk's conflicting statements — such as his statement in a local newspaper that the decedent was using a service jack that slid out from under the vehicle, or his internet posts about how multiple jack stands were in use on the day of the incident. (The Day Article, **Ex. E**; Garagejournal.com Post p. 6, **Ex. F**; Bimmerforums.com Post p. 10, **Ex. G**; Luxury4play.com Post p. 4, **Ex. H**.) Mr. Klorczyk himself has recently taken the position that he "could not have known (beyond what he observed in the garage) what equipment was used during the accident," (ECF No. 302 ¶ 23). Given Mr. Klorczyk's own acknowledgement of his unreliability, it is especially inappropriate for an "expert witness" to use Mr. Klorczyk's memories as the foundation of his opinions.

The trouble with the disconnect between Mr. Heath's theoretical "testing" and his conclusions is obvious: because the tests are designed to prove Mr. Heath's theory, the tests skew the results to establish false engagement. Rather than address these inconsistences, or explain how Mr. Heath's testimony is admissible in spite of them, the Opposition emphasizes the *extent* of Mr. Heath's work rather than its *value*. Mr. Heath undoubtedly worked hard to achieve the result that his clients wanted to see, but his lack of reliable methodology undermines his conclusions. He simply assumed whatever facts were necessary and worked backward, taking whatever steps were necessary to achieve his pre-conceived result. (Dec. Dep. Tr. 92:2-13; 104:3-20.) Then, as he has done in other cases, he made "sweeping conclusions" from the "very limited extent of his actual testing" performed, often with a disconnect "between the information in the documents on which he relied and the conclusions he drew from them." *Holzman v. GMC*, No. 02-1368, 2007 Mass. Super. LEXIS 462, *16-17, (Mass. Super. Ct. Nov. 6, 2007).

### C. Attacking Mr. Sprague's Testimony Does Not Save Mr. Heath's Testimony From Preclusion

The Opposition points to the testimony of Dr. Sprague, as though attacking Dr. Sprague's testimony somehow increases the validity of Mr. Heath's methodology. The Plaintiffs argue that Mr. Heath "measured" the force required to pull the service jack out from underneath the BMW while under load at 420 to 450 pounds, and concluded that the service jack could not have been in use because the decedent could not have generated that force. (ECF No. 302, ¶ 17; ECF No. 303 ¶¶ 28-29.) This reasoning is fundamentally flawed, not only because it incorrectly assumes that Mr. Heath's methodology for measuring the force was sufficient, but also since neither party contends that the decedent exerted force directly on the jack and caused it to slide out. The argument completely ignores Dr. Sprague's testimony that the decedent's force on the vehicle could have caused the vehicle to shift, which in turn would have exerted well more than the necessary force to cause the jack to slide out. (ECF No. 302, ¶ 17.) This obvious flaw in Mr. Heath's reasoning is typical of his outcome-determinative analysis, and goes a long way toward demonstrating how his opinions fail to meet the standards delineated in *Daubert* and its progeny.

## II. THE OPPOSITION IGNORES MR. HEATH'S LACK OF ACCIDENT RECONSTRUCTION CREDENTIALS, AND IMPROPERLY EQUATES GENERAL PRODUCT KNOWLEDGE WITH ACCIDENT RECONSTRUCTION EXPERTISE

As previously observed in a decision precluding Mr. Heath's testimony, "[I]t is not sufficient [under the Federal Rules of Evidence] for an expert merely to cite to his experience without further explanation. Rather, an expert must be able to articulate the connection between his experience and his conclusions in a particular case." *Vaughn v. Konecranes, Inc.*, No. 5:14-136-DCR, 2015 U.S. Dist. LEXIS 47855, *10-11 (E.D. Ky. Apr. 13, 2015). In order to defend Mr. Heath's opinions and testimony from preclusion, the Opposition repeatedly states that Mr. Heath has experience in the automotive industry and familiarity with jack stands, but does not

6

mention accident reconstruction credentials at all. (ECF No. 303 ¶¶ 2, 17-20.) Mr. Heath's general knowledge about automotive lifts is not the subject of this Motion, though notably, he has no prior knowledge or expertise about "false engagement." Mr. Heath actually testified that he only heard of false engagement through "scuttlebutt" at industry conferences, and had neither seen false engagement nor read any professional articles about it in the purported forty-five years he has been in the automotive industry. (Mar. Dep. Tr. pp. 81:13-83:4.)

Mr. Heath's accident reconstruction testimony and opinions must be precluded because he has no qualifications in that field, and because his general experience with automotive lifts has no articulable connection to accident reconstruction. Mr. Heath's resume, his testimony, and the Opposition all fail to show that Mr. Heath has relevant experience. Moreover, he testified that that he has no such experience. (Dec Dep. Tr. p. 9:14-18.)[2]

In lieu of supporting facts, the Opposition relies on citations to inapposite decisions. Plaintiffs' citation to *Wasilewski v. Abel Womack, Inc*., No. 3:10 CV 1857 WWE, Dkt. 116-1, suggests only that Mr. Heath has an awareness of safety issues generally in the automotive lift industry. (ECF No. 303, ¶ 120.) The *Beer* case has minimal value, because the court's opinion on the referenced expert does not discuss in detail the nature of the claimed "accident reconstruction", and does not analyze the *Daubert* factors. *See Beer v. AGCO Corp*., 2014 U.S. Dist. LEXIS 193257, at *9 (E.D. Pa. Nov. 21, 2014). Interestingly, the *Beer* court precluded another proffered accident reconstruction expert who was not properly qualified, which rendered his opinions speculative and inadmissible. *Id*. at *7-8. The case of *Henderson v. DeMatteo Mgmt*., No. CV055000094, 2007 Conn. Super. LEXIS 762 (Conn. Super. Ct. Mar. 24, 2007), is

---

[2] The Plaintiffs' point about the Defendants' prior retention of Mr. Heath has nothing to do with Mr. Heath's credentials as an expert on accident reconstruction, and indeed, the Opposition makes no claim that the Defendants ever retained Mr. Heath as an accident reconstruction expert or as a testifying expert with respect to any tort claim (because they never did).

not relevant to the qualification issue because it deals only with testing methodology, and does not involve a question about how the plaintiff was injured. Plaintiffs' later citation to *Miller v. Brodie*, No. 15-4992, 2016 U.S. Dist. LEXIS 133120 (E.D. Pa. Sep. 28, 2016), is also inapplicable, since the court in that case observed that the proffered expert applied "commonly accepted accident reconstruction techniques" which is clearly not the case here. *See generally*, ECF No. 295 at pp. 14-16. Finally, Plaintiffs' citation to *Czarnecki v. Home Depot USA, Inc*., No. 07-4384, 2009 U.S. Dist. LEXIS 51637 (Jun. 15, 2009), is not helpful, since both experts in that case were experienced accident reconstructionists, unlike Mr. Heath. *Id*. at *9-15. Ultimately, the Opposition fails to establish any accident reconstruction credentials, and Mr. Heath remains unqualified to render accident reconstruction testimony, and his opinions as to the cause of the decedent's accident must accordingly be precluded.

### III. PLAINTIFFS CANNOT DEMAND A MORE LENIENT LEGAL STANDARD WHERE CONTROLLING STANDARD REQUIRES PRECLUSION

The Plaintiffs argue that the legal standard for a federal court's gatekeeping function over expert testimony is far more flexible than the law permits, because Mr. Heath's opinions cannot withstand the critical analysis that the controlling standard demands. Their statement that the rejection of expert testimony is the "exception rather than the rule" (Opposition, at p. 6) is an outlier that comes from an unreported New York District Court case. *See IBM v. BGC Partners, Inc*., No. 10 Civ. 128 (PAC), 2013 U.S. Dist. LEXIS 59779, at *18 (S.D.N.Y. Apr. 25, 2013). The well-established Second Circuit precedent, however, requires that before expert testimony is admitted, the trial courts must exercise their gatekeeping function to ensure that an expert's testimony (a) rests on a reliable foundation and (b) is relevant to the task at hand. *See Amorgianos v. Amtrak*, 303 F.3d 256, 265 (2d Cir. 2002) (*citing Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)). While the test for admissibility is flexible

enough to address the "particular circumstances of the particular case at issue," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999), it is not so liberal as to permit the admission of opinions based on "simply inadequate" data, methodology, or studies. *Amorgianos*, 303 F.2d at 267. This standard gives courts the discretion needed to exclude expert opinions that, like Mr. Heath's, are based on nothing more than paid-for personal opinion, and to "ensure that the courtroom door remains closed to junk science" like Mr. Heath's. *Id*. at 266.[3]

## IV. THE OTHER DECISIONS CRITICIZING MR. HEATH ALSO POINT OUT HIS FAULTY METHODOLOGY AND WILLINGNESS TO TESTIFY REGARDING AREAS OUTSIDE OF HIS EXPERTISE

As the Defendants pointed out in their Motion, Mr. Heath's reputation of sloppy, inadmissible methodology and conclusions long predates the present matter. While the specific facts of those cases obviously differ, the overarching themes continue to ring true.

As in *Vaughn*, supra, 2015 U.S. Dist. LEXIS at *12-13, Mr. Heath's "reports do not articulate the proper inspection procedure or apply the industry-accepted specifications to the facts of the case," nor do they "articulate a reliable connection between his experience and his conclusions in any way, much less to the extent described in the Advisory Committee Notes to Rule 702." Here, just as he did in the *Bridgeman* case, Mr. Heath "admitted as much in his own deposition" that his opinions are grounded in "nothing except his personal views." *Bridgeman v. Deere & Co*., No. 2:07cv613, 2009 U.S. Dist. LEXIS 57250, *13 (E.D. Va. Feb. 13, 2009). As in *Holzman*, where Mr. Heath did not realize he was using the wrong model jack stand for his experiments, Mr. Heath bases his opinions on an exemplar jack that bears no resemblance to the jack that the decedent was allegedly using. *Holzman v. GMC*, supra, 2007 Mass. Super. LEXIS

---

[3] Further, the Plaintiffs' argument that a trial court cannot rule on the weight or credibility of evidence (ECF No. 303 at ¶ 6) misses the point of the Defendants' Motion. This Court need not reach the issue of the weight or credibility of Mr. Heath's testimony because, under even the most flexible approach to expert witness admissibility, Mr. Heath fails to meet the threshold requirements for reliability and relevance.

9

at *17-18. In a strikingly similar manner, in both cases "Heath applied horizontal forces which he regarded as real-world, but which he did not measure," and merely applied "unmeasured loads to the [jack stands] until they collapsed, then declar[ed] them 'failed.'" *Id*. at *18, *20-21.

Most compelling of all is the language from Plaintiffs' counsel's own brief in *Wasilewski*. The Opposition attempts to distinguish that case, and points out that Mr. Heath's testimony was ultimately permitted there, but counsel's description of Mr. Heath's opinions as "untested and uncorroborated speculation and conjecture" applies perfectly here. *Id*. at p. 1. As in *Wasilewski*, Mr. Heath failed to take "*any* steps to base his opinions on valid engineering and scientific principles," and his opinions are "inconsistent with the physical evidence of the accident." *Id*. at pp. 2, 8 (emphasis in original). As here, where Mr. Heath disregards the likelihood that the accident was actually caused by the service jack without any rationale for doing so, in *Wasilewski* he failed to "consider and analyze other potential sources of Plaintiff's injuries . . . or perform any testing, calculations, or necessary engineering work," which rendered his testimony "speculative, unreliable, and [unable to] pass muster under Fed. R. Evid. 702." *Id*. at p. 10.

The key difference between *Wasilewski* this case is that Mr. Heath's theory and methods here have even less connection to any valid scientific principles and even less basis in fact. His present opinions regarding false engagement and causation begin and end with pure speculation — speculation as to whether the decedent was even using a loaded jack stand, speculation about the theoretical feasibility of false engagement, and speculation that the results of his inconsistent and unscientific experiments have any applicability to the actual circumstances of the underlying accident. In the face of Mr. Heath's total lack of reliable methodology, factual support, and accident reconstruction qualifications, this Court must exercise its gatekeeping function to keep Mr. Heath's conjectural and irrelevant testimony and conclusions from the jury.

DEFENDANTS,

SHINN FU CORPORATION,
SHINN FU COMPANY OF AMERICA, INC.,
MVP (HK) INDUSTRIES, LTD., and
WEI FU (TAISHAN) MACHINERY & ELECTRIC CO., LTD.,


By:    /s/ Steven J. Zakrzewski
    Dennis O. Brown, Esq. (ct04598)
    Steven J. Zakrzewski, Esq. (ct28934)
    Gordon & Rees, LLP
    95 Glastonbury Blvd., Suite 206
    Glastonbury, CT 06033
    (860) 278-7448
    (860) 560-0185 (fax)
    *dbrown@gordonrees.com*
    *szakrzewski@gordonrees.com*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument has been served upon all counsel of record via U.S. mail and via electronic transmission, pursuant to Rule 5(b), Fed. R. Civ. P., on this 20th day of November, 2018.

                                        /s/  Steven J. Zakrzewski
                                  Steven J. Zakrzewski