# Exhibit A

```
 1                UNITED STATES DISTRICT COURT
 2                  DISTRICT OF CONNECTICUT
 3
 4   FREDERICK KLORCZYK, JR., as co-administrator of the
 5   Estate of Christina R. Klorczyk, et al.
 6
 7                                             PLAINTIFFS
 8
 9   V.
10              CIVIL ACTION NO. 3:13-CV-00257-JAM
11
12   SEARS ROEBUCK & CO., et al.
13
14                                             DEFENDANTS
15   _____
16
17        VIDEO DEPOSITION FOR THE DEFENDANTS,
18            SHINN FU CORPORATION, et al.:
19
20      The Video Deposition of Frederick G. Heath, taken
21   in the above-styled matter at Court Reporting Services,
22   Inc., 6013 Brownsboro Park Boulevard, Suite A,
23   Louisville, Kentucky, on the 14th day of December, 2017,
24   beginning at 10:03 p.m.
25
```

1   Q.   Okay.  And you were deposed about that
2   report?
3   A.   I was.
4   Q.   Okay.  And did you give an updated CV in
5   connection with this report?
6   A.   I did.
7   Q.   Well let's go through those for a little bit.
8   Steve has a 9A, B, C, D.  It doesn't look like fun at
9   all.
10  A.   You lost me there somewhere.
11  Q.   That's all right.  There's no question
12  pending.
13  A.   Okay.
14  Q.   Do you have any particular education or
15  experience related to the field of accident
16  reconstruction?
17  A.   Most of the cases I'm involved with, I end
18  up doing a reconstruction. Yes, sir.
19  Q.   And do you consider yourself to have done
20  a reconstruction in this case?
21  A.   Yes.
22  Q.   Now, in giving your rebuttal report, was
23  your methodology to refute Jim Sprague's opinion,
24  or to offer your own competing accident
25  reconstruction to show what you believe are the

1  medical services people, fire department, police
2  department and a fellow named Houseman, who, I
3  believe, is an EMS person who happens to live
4  close by.  I believe he was one of the first
5  non-family responders on site.
6     Q.   And when you're using the word,
7  "responder" in this context, I want to be clear
8  because I'm used to first responder meaning
9  policemen, firemen, EMT.  You just mean a person
10 who was there?
11    A.   Yes, sir.
12    Q.   Now, I have your transcript from your last
13 deposition so we can refer to it if we need to.  You
14 previously testified there was no physical evidence
15 of a jack stand use.  Does that sound familiar?
16    A.   Well, that was in the evidence of a jack
17 stand being there.  I think you asked me if -- was
18 there -- do I know if a jack stand -- I don't know
19 how you asked me.  My -- my deposition -- earlier
20 deposition question and response will speak for
21 itself.
22    Q.   Okay.  Since -- and understand the
23 distinction I'm making between physical evidence
24 and testimony -- testimonial evidence.  Since that
25 deposition, has any physical evidence come to your

```
 1  attention that a jack stand was actually in use that
 2  day?
 3      A.   No.
 4      Q.   At this point, your opinions in that regard
 5  are based primarily on the testimony of Mr. and
 6  Mrs. Klorczyk?
 7      A.   And Mr. Houseman.
 8      Q.   In your mind was the -- I'm sorry, this
 9  chair just -- that's a little better.
10      A.   You don't want to fall over backwards.
11      Q.   No.  In your mind and reconstruction of the
12  events, was the pump jack helping hold the vehicle
13  at the time of the accident?
14      A.   No.
15      Q.   So in your -- well, let me ask you this.
16  Based on your auto service tool industry experience
17  and personal experience and education, is it safe to
18  use one jack stand by itself?
19           MR. EDINBURGH:  Objection.
20      A.   I think we covered that pretty thoroughly in
21  my first deposition.
22  BY MR. BROWN:
23      Q.   I think I can ask the question.  You've
24  made your objection.  I'm trying to set up a train of
25  thought, so. . .
```

1  Q.  Actually, the force of the car would be
2  swinging in sort of an arc, I guess, if we measured
3  from the two wheels on the ground, pressing
4  downward; correct?
5  A.  No.  The force -- the force between the car
6  and the jack actually is strictly vertical.
7  Q.  So if it's strictly vertical, then the force --
8  well, the force of -- let me put it this way.  Am I
9  understanding you to say that the jack puts a
10 vertical force on the car?
11 A.  You could look at it that way because it's
12 an equal and opposite force.
13 Q.  So the car puts a downward vertical force
14 on the jack.
15 A.  Correct.
16 Q.  Then why did you decide to pull
17 horizontally?
18 A.  Because Mr. Sprague said the car pushed
19 the jack from out -- out from underneath the car or
20 the car slid off the jack.  So we wanted to
21 demonstrate what kind of forces would be required
22 to accomplish that.  And as my recollection serves
23 me, they're, like, 450 and 420 pounds which blew
24 Mr. Sprague's idea right out the window.
25 Q.  Well, certainly given your education and

```
 1   Stand Tip-Over Elevation."
 2      Q.   Looking at your Measurement Group 1, how
 3   did you determine that this was the elevation of the
 4   vehicle when it was on a jack stand that you
 5   believed had false engagement and dropped?
 6      A.   Because that's the way we designed the
 7   reconstruction, is to raise the car to the elevation
 8   that it would've been at for a false engagement of
 9   the jack stand if it was placed at the front end of
10   the longitudinal beam, which is where we think it
11   was placed, and the false-engagement position
12   would've been determined by how high the car was
13   raised by the service jack.
14      Q.   Is your assumption that the service jack
15   would've been jacked up the full amount it could
16   go?
17      A.   Yes.
18      Q.   Okay.  And your Measurement Group 2 that
19   you wanted to point to, "Jack Stand Tip-Over
20   Elevation," you believe that this is the height that
21   his body would've been holding the car to; do I
22   understand that correctly?
23      A.   Ye -- yes.
24      Q.   In your mental reconstruction that you've
25   done testing on now --
```

```
 1  high enough for the jack stand to tip over; correct?
 2      A.    Yes.
 3      Q.    And that calculation made an assumption
 4  about creeper height, didn't it?
 5      A.    Yes.
 6      Q.    And it made an assumption about chest
 7  height, which you've identified from 9-5/16
 8  to 8-13/16, which I think's a 1/2 an inch, isn't it?
 9      A.    I -- no, I didn't assume the chest height.  I
10  calculated the chest height based on the other
11  dimensions.
12      Q.    So you calculated what the chest height
13  must have been for there to be room for the jack
14  stand to fall over?
15      A.    Yes.
16      Q.    Okay.  So, you started from the assumption
17  that the jack stand fell over, and you calculated
18  backward from there to what must have been for
19  that to have happened.
20      A.    Correct.
21      Q.    Okay.  If you could go back to Exhibit 7.
22            MR. EDINBURGH:  If you'll just bear with
23  me.  That -- that's --
24            MR. BROWN:  Yeah.
25            MR. EDINBURGH:  -- collectively --
```

```
 1                    C E R T I F I C A T E

 2    STATE OF_____:

 3    COUNTY/CITY OF_____:

 4           Before me, this day, personally appeared

 5    Frederick G. Heath, who, being duly sworn, states

 6    that the foregoing transcript of his/her Deposition,

 7    taken in the matter, on the date, and at the time

 8    and place set out on the title page hereof,

 9    constitutes a true and accurate transcript of said

10    deposition.

11                _____

12                       Frederick G. Heath

13

14      SUBSCRIBED and SWORN to before me this

15    _____day of_____,

16    2017, in the jurisdiction aforesaid.

17    .

18    .

19    _____          _____

20    My Commission Expires           Notary Public

21    .

22    .

23    .

24    .

25    .
```