## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FREDERICK KLORCZYK, JR., as co-administrator of the Estate of Christian R. Klorczyk, et al., | : : : | CIVIL ACTION NO. 3:13-cv-00257-JAM |
| *Plaintiffs*, | : : | |
| vs. | : : | |
| SEARS, ROEBUCK AND CO., et al., | : : | |
| *Defendants*. | : | NOVEMBER 20, 2018 |

## REPLY TO PLAINTIFFS' OPPOSITION TO MOTION
## FOR SUMMARY JUDGMENT ON PLAINTIFFS' CPLA CLAIMS

**I.      INTRODUCTION**

The Plaintiffs' Opposition (ECF No. 301) attempts to show that it is *theoretically possible* that the decedent was using a jack stand at the time of his accident. The only admissible evidence supporting their claim is Frederick Klorczyk's testimony that he found a jack stand in the vicinity of the accident scene, internally inconsistent testimony from Lynn Klorczyk, and vague testimony from EMT Geoffrey Hausmann that he may have seen something that could have been a jack stand somewhere near the decedent. Of course, Mr. Klorczyk himself readily admitted that he can only speculate regarding what happened with the jack stand that he claims he found, and he has more recently admitted that he "could not have known" what equipment was being used at the time of the accident. Mr. Klorczyk's testimony is the foundation on which the Plaintiffs' entire case is built, but it is fundamentally unsound.

There is *zero* physical evidence that the subject vehicle was loaded onto a jack stand at the time of the accident; that the stand failed; or that the failure was because of false engagement. There is, however, ample physical evidence to the contrary, showing that a jack stand could not have been in use because even a fully-depressed and upright stand would have provided sufficient clearance under the vehicle, and that the accident was actually caused by an unsafe service jack that was missing an important part (and which was damaged after the accident). The Opposition consists primarily of inadmissible conjecture, and it is now clear that the Plaintiffs lack any sufficient evidence that would allow a reasonable jury to find in their favor.

**II.     THE PLAINTIFFS' OPPOSITION IS BUILT ENTIRELY ON SPECULATION**

The speculation begins in the very first paragraph of the Preliminary Statement, where the Plaintiffs state that there is "no reasonable explanation" for the location of the jack stand that they claim to have found other than the "simplest one," that the decedent was using the jack

1

stand when it unexpectedly failed. Even if Mr. Klorczyk found a jack stand as he claims, which is not admitted, the *simplest* explanation is not that the jack stand was there because it failed due to a previously undocumented and unproven phenomenon. Rather, the simplest explanation is that the decedent may have used the jack stand at a different step in the oil change he was performing, but never loaded it with weight before he went back under the vehicle one last time to tighten the drain plug — or the jack stand simply happened to be in the area, not in use at all, and was possibly knocked over by the service jack that slid out. If the Plaintiffs' version of events was correct, and the jack stand was loaded with weight and failed, there would be an impact mark on the garage floor, physical evidence on the jack stand and the vehicle's underbody, and even the fully-depressed jack stand would have provided enough clearance to avoid crushing the decedent. All of this evidence is conspicuously absent.

      The Opposition admits the lack of physical evidence, but attempts to spin it as support for the claim that the accident was caused by "false engagement," despite the Plaintiffs' own paid fact witness's testimony that he would *always* expect to see signs of physical damage to a jack stand even if it failed due to false engagement.[1] The Opposition then invokes Frederick Heath's "testing," claiming that it established the risk of false engagement even though Mr. Heath testified clearly that he had never previously encountered a single false engagement incident and had only heard of this possible phenomenon through "scuttlebutt." (Heath Dep. Tr. pp. 81:13-83:4, Ex. A.) While the Plaintiffs' claim that Heath's testing established the danger posed by false engagement, Mr. Heath himself could not even articulate the process followed in that testing — which he did not perform himself — nor has he ever provided any empirical data

---

[1] Mr. Claypool testified that "most [jack stands] are crushed as a result of the sudden loss of height and getting caught up in the vehicle components," such as "the base being crushed as a result of an impact," and that the jack stand would have an obvious physical deformity, even to a layperson. (*See* Claypool Dep. Tr., pp.190:12-192:4, Ex. B.)

2

regarding the testing. In fact, Mr. Heath testified that the whole purpose of his experiments was to establish that false engagement is *possible*, in a situation where the jack stand was *intentionally* set up to try to make it fail. He never testified that he did any work to show that false engagement rendered these jack stands unreasonably dangerous to consumers in real world circumstances, where the jack stands are *not* intentionally being set up to fail, which is what the legal standard requires for the Plaintiffs to prove their claim.[2, 3]

### III. THE PLAINTIFFS REFUSE TO ADDRESS OR EVEN ACKNOWLEDGE THE CRITICAL MASS OF FACTS THAT DO NOT SUPPORT THEIR CASE

The Plaintiffs' strategy is to simply ignore the mountain of objective facts that eviscerate their case, and nowhere is this clearer than in their responses to the Defendants' Local Rule 56(a)(1) statement of facts. Overall, the responses are remarkably evasive, outright refusing to admit unfavorable black-and-white facts, or asserting improper objections that these facts are actually legal conclusions, or that the Plaintiffs' own statements are mere hearsay. Perhaps the most glaring example is that, in response to paragraph 6, the Plaintiffs deny a *direct verbatim quote* from Mr. Klorczyk's testimony that "it's all speculation" regarding how the subject jack stand ended up in the position where he claims to have found it — and whether it was "falsely engaged," or engaged at all, immediately beforehand. (ECF No. 302 ¶ 6.)

#### A. The Plaintiffs Will Not Admit Or Deny Key Information Regarding The Service Jack That Was Altered And Damaged

In response to the fact that the saddle cup was removed from the Plaintiffs' service jack, which is established by incontrovertible police photographs and Mr. Klorczyk's own deposition

---

[2] These arguments are set forth at length, with citations to relevant testimony and exhibits, in the Defendants' Memorandum in Support of Motion to Preclude Frederick Heath and their forthcoming Reply brief in support of that motion. Where this brief contains argument regarding Mr. Heath, lengthy quotations and citations are omitted in the interest of avoiding duplication of the material that is already set forth in the foregoing filings.

[3] The second necessary element of a product liability claim is that "the product was in a defective condition unreasonably dangerous to the consumer or user." *See Izzarelli v. R.J. Reynolds Tobacco Co.*, 731 F.3d 164, 167 (2d Cir. 2013); *see also Bifolck v. Phillip Morris, Inc.*, 324 Conn. 402, 434 (2016).

testimony, the Plaintiffs simply refuse to respond on the grounds that "the condition of the service jack is immaterial." (ECF No. 302 ¶¶ 12-13.) As if calling this key piece of evidence "immaterial" will somehow make it true. The Plaintiffs also completely refuse to admit or deny Mr. Klorcyzk's own clear testimony that the service jack was damaged when he got it back from the police, and that he did not know when it sustained the damage. (ECF No. 302 ¶ 18.)

Regarding the scrape mark on the side of the vehicle that was caused by the jack sliding out from beneath the vehicle, the Opposition argues that this could have been caused before the accident, content to ignore Dr. Sprague's observation that the scrape mark appeared "fresh" in the police photographs of an otherwise dingy rocker panel. (Sprague Dep Tr. pp. 246:13-247:25, Ex. C.) The Opposition then argues, without any supporting facts whatsoever, that the service jack could not *possibly* have been in the position where the Plaintiffs found it if it played a role in the accident. (ECF No. 301 p. 7.) In reality, Dr. Sprague explained that the service jack's could well have been parallel to the vehicle after the accident after sliding out, and the fact that the handle was out of the jack is unsurprising because the retention screw was not tightened. (Sprague Dep. Tr. pp. 207:11-209:20, Ex. C.)

Since the Plaintiffs cannot refute the laundry list of evidence showing that the decedent's accident was caused by the service jack and not a jack stand, they wish to simply ignore it. All of the physical evidence, and the only admissible accident reconstruction evidence, however, establish that the damaged and altered service jack was at fault. This is obvious even to a layperson, backed up by clear and simple uncontroverted facts:

1. The service jack was undisputedly used during the decedent's oil change operation.

2. The service jack's saddle cup, an important safety component, was removed, leaving only a flat metal plate as its point of engagement with the vehicle.

3. The service jack was seized as evidence after the accident, and was initially blamed by Mr. Klorczyk, Mrs. Klorczyk, and the police.

4. After the accident, the service jack was missing a clip ring designed to retain one of its parallel links. If the clip ring was missing before the accident, the parallel link could have slid out, causing the jack to malfunction. If the clip ring was lost during the accident, it is evidence that the jack stand was subjected to trauma as the incident occurred.

5. There is a clear scrape mark on the vehicle's rocker panel that happens to align perfectly with the service jack's lifting place, in the location where the decedent would have logically placed the service jack if he was using it to support the vehicle while he went back underneath to give the drain plug one last tightening.

The Plaintiffs' outright refusal to engage with these facts highlights their lack of evidence to counter them, lending further support to the Defendants' argument for summary judgment.

**B. The Plaintiffs Offer Only Objections And Evasive Responses Regarding Their Many Different Pre-Litigation Accounts Of The Accident**

First and foremost, the Plaintiffs take the position that Mr. Klorczyk's *own statement* to The Day newspaper "that a floor jack likely failed" was hearsay, (ECF No, 302 ¶ 15), even though he authenticated the article in his own deposition, (F. Klorczyk Dep. Tr. pp. 421:21-422:5, Ex. D), and his own statement is expressly non-hearsay pursuant to F.R.E. Rule 801(d)(2).[4, 5] They even take the position that Mr. Klorczyk's own post-accident statements regarding how the incident occurred were "improper speculation." (ECF No. 302 ¶ 22.) As for Mr. Klorczyk's prior written statements describing the accident scene much differently than he did in his deposition, the Plaintiffs essentially try to discredit him, stating "Mr. Klorczyk could not have known (beyond what he observed in the garage) what equipment was used because he was not in the garage prior to the BMW collapsing on to Christian." (ECF No. 302 ¶ 23.) Then,

---

[4] Rule 801(d)(2) provides that an opposing party's statement is not hearsay.

[5] It is ironic that the Plaintiffs claim this statement is hearsay while later attempting to rely on a hearsay conversation between Mr. Klorczyk and the decedent regarding the jack stand manual. (ECF No. 302 p. 28 ¶ 28.)

5

when asked to admit that expert Frederick Heath conceded that he was not aware of any physical evidence that a jack stand was in use during the incident, and that his assumption was based solely on Mr. Klorczyk's testimony, the Plaintiffs provided a non-response: "Plaintiffs admit that Mr. Heath's opinions are based on the evidence that Christian was using the jack stand when the BMW collapsed."  (ECF No. 302 ¶ 30.)  Overall, while the Opposition unsurprisingly does everything it can to minimize the staggering volume and significance of the Plaintiffs prior inconsistent statements, the argument ultimately equates to a request that the Court ignore this gaping hole in the Plaintiffs' case.  (*See generally* ECF No. 302 pp. 9-10.)

> C. The Plaintiffs Also Provided Evasive Responses Regarding The Jack Stands' Compliance With The ASME/PALD Standards And Testing

While the Plaintiffs dispute that the ASME/PALD standards were controlling regulations, calling them minimum safety standards subject to voluntary compliance, they do *not* dispute that the jack stands complied with these standards.  (ECF No. 302 ¶¶ 34-36.)  Further, they will not acknowledge that their own witnesses Frederick Heath and Roger Claypool were on the committee that drafted these standards, even though it is printed in black-and-white.  (ECF No. 302 ¶ 37.)  They also outright refuse to substantively respond to the fact that the jack stands were produced by a certified ISO-compliant factory and were subject to testing both by the manufacturer and by the retailer.  (ECF No. 302 ¶¶ 48-48.)  The Plaintiffs do at least admit, as they must, the existence of key warnings and instructions on the jack stand and in its manual directing users to make sure that the ratchet bar is secure before loading and to ensure that the vehicle is secure before working underneath it; directing users use jack stands only as a matched pair; and warning of potential personal injury.  (ECF No. 302 ¶¶ 50-51.)  Their pattern of evasive responses continues, however, with their failure to acknowledge unfavorable testimony directly quoted or specifically cited from their own warnings and instructions expert.  (ECF No. 302 ¶¶

6

54-58.) Overall, the Plaintiffs' improper objections and refusals to respond should be treated as admissions, since they show that the Plaintiffs could not deny the posited facts in good faith.

## IV. THE PLAINTIFFS CANNOT NOW RAISE A "MALFUNCTION" THEORY

Faced with a lack of admissible evidence that the jack stand had an identifiable manufacturing or design defect, the Plaintiffs argument seems to fall back on a "malfunction" theory — that there must have been *something* wrong with the jack stand.[6] The Connecticut Supreme Court has held, however, the "malfunction" theory must be pled in the complaint, and cannot be raised for the first time on summary judgment. *See White v. Mazda Motor of Am. Inc.*, 313 Conn. 610, 629-32, n.9 (2014) ("To rely on a malfunction theory . . . a plaintiff must separately plead that claim in the alternative.").

Even if the Plaintiffs had pled a malfunction theory, they could not prove the necessary elements. The Connecticut Supreme Court has held that, in order to establish a malfunction claim, the plaintiff must show that "(1) the incident that caused the plaintiff's harm was of a kind that ordinarily does not occur in the absence of a product defect, and (2) any defect most likely existed at the time the product left the manufacturer's or seller's control and was not the result of other reasonably possible causes not attributable to the manufacturer or seller." Metro. Prop. & Cas. Ins. Co. v. Deere & Co., 302 Conn. 123, 139-40 (2011). Considering these elements, Connecticut Superior Court decisions have held that "*[t]he crucial additional showing required of a plaintiff in a malfunction case is the negation of causes for the malfunction other than a product defect.*" *Hirschbeck v. Wright Med. Tech.*, No. CV055000410S, 2011 Conn. Super. LEXIS 416, at *16-17 (Conn. Super. Ct. Feb. 18, 2011) (emphasis in original); *Fallon v. The Matworks*, 50 Conn. Supp. 207, 218 (Conn. Super. Ct. 2007).

---

[6] For example, the Opposition argues that the Defendants cannot rule out false engagement — which is incorrect — ignoring that it is the *Plaintiffs'* burden to marshal sufficient evidence that would allow a jury to conclude (a) that the risk of false engagement rendered the jack stand unreasonably dangerous and (b) that this caused the accident.

Here, the Plaintiffs cannot prove either necessary element — the Plaintiffs themselves submitted evidence of other jack stand incidents showing that vehicles can descend even if there is no product defect, such as where a jack stand is misused (the decedent here was using only one stand, which creates uneven forces and is therefore forbidden by the product manual), or where a jack stand is placed under an improper support point.  The second element presents an even more insurmountable hurdle for the Plaintiffs, where they cannot negate the evidence showing that the decedent's accident was actually caused by an altered and damaged service jack — not a jack stand.  The service jack could have lost contact with the vehicle's chassis because its saddle was removed, it could have lost height due to its missing "clip ring," or the force exerted by the decedent beneath the vehicle could have caused the jack, which was on wheels, to slide out.  Simply put, where the only available physical evidence points to the service jack as the cause of the accident, the Plaintiffs cannot possibly prove a malfunction claim regarding the jack stand.

## V. SINCE THE PLAINTIFFS CANNOT RELY ON A MALFUNCTION THEORY, THEY MUST PROVE A SPECIFIC DEFECT, AND THEY CANNOT DO SO

While the Plaintiffs sometimes refer to false engagement as resulting from a design defect, they have no proof whatsoever that the Craftsman 50163 was defectively designed.  The failure to employ a redundant safety mechanism is irrelevant where the Plaintiffs cannot establish that the risk of false engagement made the jack stand unreasonably dangerous to consumers — which is a necessary element of their claim — in the first place.  The Opposition actually cites the relevant precedent from the Connecticut Supreme Court dictating that a reasonable alternative design claim requires proof that "the absence of that alternative design renders the product unreasonably dangerous." (ECF No. 301 p. 17, *citing Bifolck v. Philip Morris, Inc.*, 324 Conn. 402, 434-35 (2016).)  While Frederick Heath presented a half-baked and poorly-explained theory that the finish on the jack stand's ratchet bar and pawl created the risk of

false engagement, his "testing" was actually performed on a jack stand with a pawl so worn that the finish that supposedly causes the necessary friction for false engagement was gone, and the tip of the ratchet tooth being used for engagement appeared to be ground down or broken off. Further, while the Opposition continually refers to Mr. Heath's testing of false engagement, (ECF No. 301 pp. 16-18), it never explains *how* the tests were set up, nor does it provide any *data* regarding the results. Further, Mr. Heath admitted that the jack stand that he used was so badly worn that it did not come close to replicating the condition of the brand new jack stand at issue here (ECF No. 303, 12-13) — in fact such a damaged jack stand would have to be discarded according to the product manual.  This is because Mr. Heath himself does not know, and the independent contractor who performed the testing hardly kept any records at all, let alone the detailed records necessary to substantiate the results of scientific testing.

While the Opposition later invokes a bare-bones failure-to-warn claim, the Plaintiffs do not even address the fact that the decedent, by their own admission, was not following the product warnings and instructions — it is undisputed that if he was using a jack stand, he was using only a single jack stand instead of a pair, and was not using wheel chocks.  In the face of this clear evidence that the decedent either (a) ignored or (b) deliberately disregarding the warnings and instructions, the Plaintiffs cannot possibly prove that a different warning or instruction would have prevented the accident.  Further, the failure-to-warn claim is doubly insufficient because the Plaintiffs have not proffered sufficient evidence to establish the existence of the danger (false engagement) which they argue necessitated an additional warning. Lastly, the subject jack stand's warnings and instructions are nearly identical in substance to the warnings and instructions for a different jack stand which the Plaintiffs argued to be sufficient. (*See* Reply to Pls.' Opp. to Mot. for Summ. J. on Pls.' Punitive Damages Claim pp. 7-8.)

## VI. THE DECEDENT'S USE OF A SINGLE JACK STAND, IN CONTRAVENTION OF CLEAR WRITTEN INSTRUCTIONS, WAS MISUSE

The Plaintiffs highlight their paid fact witness's vague testimony that he previously encountered claims involving a single jack stand; but he never named a single specific claim, and he stated that he would try to settle such claims "for as little as I possibly could." (Claypool Dep. Tr. pp. 108:25-109:9, Ex. M to Pls.' Opp.) His testimony does not in any way establish that it is foreseeable or proper to use a single stand, violating clear warnings. The Plaintiffs also highlight their expert's testimony that it was foreseeable for consumers to use a single stand, but he admitted that this conflicted with an express warning in the product manual and on the stand itself. (Boelhouwer Dep. Tr. pp. 93:24-95:16, Ex. T to Pls.' Opp.) Ultimately, none of the Plaintiffs' evidence merits a departure from the well-reasoned decision in *Lindholm v. BMW of N. Am., LLC*, 862 F.3d 648, 651-53 (8th Cir. 2017), that use of an automotive lifting or support product contrary to its warnings and instructions constitutes misuse.

Lastly, the Plaintiffs' argument that the Defendants cannot prove that the accident would have been avoided if the decedent used a second jack stand ignores a basic fact that is readily apparent even to a lay juror. If one jack stand collapsed, and the decedent was using a second jack stand, then the vehicle would have remained supported by the second jack stand.

## VII. CONCLUSION

Based on the lack of evidence presented in the Plaintiffs' Opposition, it is apparent that they cannot present sufficient evidence to allow any reasonable jury to find that (a) the subject jack stand was defective and unreasonably dangerous, (b) the jack stand was in use at the time of the accident, or (c) the jack stand's defect caused the accident. The Plaintiffs are trying to bring this case to a jury based solely on their own internally-inconsistent speculation. For the reasons in this Reply and their initial Memorandum, summary judgment should enter for the Defendants.

DEFENDANTS,

SHINN FU CORPORATION,
SHINN FU COMPANY OF AMERICA, INC.,
MVP (HK) INDUSTRIES, LTD., and
WEI FU (TAISHAN) MACHINERY &
ELECTRIC CO., LTD.,


By:  /s/ Steven J. Zakrzewski
Dennis O. Brown, Esq. (ct04598)
Steven J. Zakrzewski, Esq. (ct28934)
Gordon & Rees, LLP
95 Glastonbury Blvd., Suite 206
Glastonbury, CT 06033
(860) 278-7448
(860) 560-0185 (fax)
*dbrown@gordonrees.com*
*szakrzewski@gordonrees.com*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2018, the foregoing was electronically filed and served by mail on anyone unable to receive notice of electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to receive notice of electronic filing as indicated in the Notice of Electronic Filing.  Parties may access this document through the Court's CM/ECF System.

      /s/  Steven J. Zakrzewski
      Steven J. Zakrzewski