# Exhibit C

# Klorczyk v. Sears

Deponent: **James Sprague, Ph.D., P.E.**
Taken: **8/21/2017**





and Video Conferencing Center
**Established in 1972**
Your Certified Shorthand Reporters Since 1972
623 West Huron Street
Ann Arbor, Michigan  48103
Phone: (734) 761-5328  Fax: (734) 761-7054
mail@huron4deps.com   <www.huron4deps.com>

**Conference Rooms & On-Site parking available at no additional cost.**

1   Q.   Okay.  Are you done with that answer?
2   A.   Yes, sir.
3   Q.   Okay.  Are you on page twenty-four?
4   A.   Yes.
5   Q.   All right.  Number eleven, I just want to ask you
6        about your third blue bullet, all right?  And in
7        particular the last sentence.  A missing right-side
8        snap ring is consistent with the service jack
9        overturning onto its side due to the incident.
10              Is it your opinion that the service jack
11       overturned onto its side on the day of the incident?
12  A.   I believe that that is plausible and consistent with
13       physical evidence.
14  Q.   Okay.  You look like you're thinking.
15  A.   Yeah.
16  Q.   I want to make sure you're --
17  A.   I'll stick with that answer.
18  Q.   You agree that there's no testimony by either
19       Mr. Klorczyk or Mrs. Klorczyk or Mr. Hausmann or
20       anyone else that they observed the service jack on
21       its side on the day of the incident?
22              MR. ZAKRZEWSKI:  Objection.
23              THE WITNESS:  I'm unaware of any
24       testimony stating that it was found in that
25       configuration.

Klorczyk v. Sears
James Sprague, Ph.D., P.E.                8/21/2017

Page 207

1   BY MR. ORTICELLI:

2   Q.   And Mr. and Mrs. Klorczyk testified that when they
3        observed the service jack when they entered the
4        garage, it was upright, correct?
5                MR. ZAKRZEWSKI:  Objection.
6                THE WITNESS:  I don't know that that's
7        true.  I know at least one of them mentioned that it
8        was on its wheels, but I'm not certain that both of
9        them did.
10  BY MR. ORTICELLI:
11  Q.   Okay.  Did he also -- Mr. and Mrs. Klorczyk also
12       testified that the handle was not inserted into the
13       service jack, correct, that it was lying parallel on
14       its side next to the passenger side of the BMW?
15  A.   I don't think you quite stated that right.
16              Do you want to reask that?
17  Q.   Let me rephrase it.
18              Do you agree that when Mr. and
19       Mrs. Klorczyk entered the garage, they testified
20       that they observed the service jack parallel to the
21       passenger side of the BMW with the handle removed?
22  A.   I think that's true.
23  Q.   And is it your opinion that the handle -- well, let
24       me ask you this.  Withdrawn.
25              Do you disagree with that?

Page 208

```
 1   A.   With what?
 2   Q.   With the observation that the handle would have been
 3        removed from the service jack.
 4   A.   The handle certainly could have been out of the
 5        service jack if it had been -- if the Klorczyks had
 6        not utilized the retention screw.
 7   Q.   Is it correct that the only way the handle would not
 8        be inserted into the service jack is if the service
 9        jack had turned over on its side?
10             MR. ZAKRZEWSKI:  Objection.
11   BY MR. ORTICELLI:
12   Q.   In other words, let me try to rephrase it.
13   A.   Okay.
14   Q.   If the service jack was on its wheels, consistent
15        with your opinions and your report, would the handle
16        still have been inserted into the service jack or
17        would it have been dislodged?
18             MR. ZAKRZEWSKI:  Objection.
19             THE WITNESS:  I did not understand that
20        question.  You said something was consistent with my
21        report.
22   BY MR. ORTICELLI:
23   Q.   Yeah.
24   A.   And I don't think that I did say what you
25        characterized.
```



1   understanding of the expected relative motion of
2   these two vehicles.
3           I believe that the intermittent nature
4   for some of the marks can easily be explained by the
5   and is consistent with my understanding of the
6   relative likely velocities.  For instance, the
7   vehicle itself will start off at zero velocity
8   and will accelerate at approximately one gravity
9   going downward.  Conversely, the jack will start off
10  with the highest acceleration at the instant of
11  release and will thereby and thereafter will slow
12  down.
13          So you have relative velocity profiles in
14  different axes of these two interacting components.
15  I believe that is consistent with the discussion we
16  had earlier regarding the ledge or the horizontal
17  surface that would be outboard of the passenger side
18  lifting pad.
19          Additionally, we were discussing the
20  protruding yellow link components.  It's possible
21  that there would not be any contact between the,
22  between the yellow link and the side of the vehicle
23  as the relative motions are progressing in the
24  fashion that I've generally described.  It's also
25  possible that there may have been some interaction.

Page 246

1      It depends on the relative motions.
2               There are some marks that could be
3      consistent with contact of the yellow link.  I can
4      give some further thought to opine as to whether or
5      not that's likely or can be explained merely or
6      simply by the interaction only of the top lift
7      plate.
8               I'm hoping that somewhere in that --
9   Q.  Are you all done?
10  A.  -- rambling monologue, I answered your question.  I
11      won't give another answer.
12  Q.  Hold on a second.  Hold on.
13               You agree with me, sir, that you cannot
14      determine the age of the markings on the rocker
15      panel, correct?
16               MR. ZAKRZEWSKI:  Objection.
17  BY MR. ORTICELLI:
18  Q.  There's no way to determine that?
19  A.  I think I disagree.
20  Q.  You disagree with that.
21               So you're saying to me that it's
22      impossible that those witness marks were not at that
23      rocker panel location prior to the incident?  That's
24      what you're telling me --
25               MR. ZAKRZEWSKI:  Objection.

Klorczyk v. Sears
James Sprague, Ph.D., P.E.                    8/21/2017

Page 276

1  Q.  And that's an inconsistent use of the phrase or term
2      eyewitness testimony compared to the way that you've
3      used it previously in your report, correct?
4              MR. ZAKRZEWSKI:  Objection.
5  BY MR. ORTICELLI:
6  Q.  It could be?
7  A.  It could be.
8  Q.  Okay.
9  A.  In some instances, I think I would agree with that.
10 Q.  All right.
11 A.  I should have been -- I should have done a better
12     job on defining that.
13             MR. ORTICELLI:  I don't have any further
14     questions, Doctor Sprague.  Thank you very much.
15             MR. ZAKRZEWSKI:  No questions.
16             Erica, no questions?
17             MR. EDINBURGH:  I have no questions.
18
19             (Deposition concluded at 6:49 p.m.)
20
21
22
23
24
25