UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FREDERICK KLORCZYK, JR., as co-administrator of the Estate of Christian R. Klorczyk, et al., | : | CIVIL ACTION NO. 3:13-cv-00257-JAM |
| | : | |
| *Plaintiffs*, | : | |
| | : | |
| vs. | : | |
| | : | |
| SEARS, ROEBUCK AND CO., et al., | : | |
| | : | |
| *Defendants*. | : | NOVEMBER 20, 2018 |

**<u>REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY SFC AND SFA ON THE GROUNDS THAT THEY WERE NOT IN THE STREAM OF COMMERCE FOR THE SUBJECT PRODUCT</u>**

The Plaintiffs' opposition rarely even mentions Shinn Fu Corporation ("SFC"), and marshals absolutely no evidence to show that SFC was a "product seller" with respect to the subject jack stand. It is now clear that SFC, which did not sell automotive DIY products during the relevant period, and never sold any Craftsman products, is entitled to summary judgment.

While the Plaintiffs focus primarily on Shinn Fu Company of America ("SFA"), they have no evidence to establish that SFA was a "product seller" of the stand, either. Admittedly, SFA sold a similar (but not the same) jack stand under a different brand name in the past; SFA was sometimes copied on communications between MVP, the distributor, and Sears, the retailer; and SFA had a contract with MVP to handle its customer support hotline in the United States. None of these limited activities, however, make SFA liable for the Craftsman 50163 jack stand at issue in this case, which SFA undisputedly did not design, manufacture, advertise, or sell. Further, there is no evidence that SFA derived any financial benefit from the subject jack stand — which is the only product that matters in this case — and, in line with the precedent cited by both the Plaintiffs and the Defendants, SFA therefore cannot be held liable.

**I.    IT IS NOW CRYSTAL CLEAR THAT THERE IS NO EVIDENTIARY BASIS TO KEEP SFC IN THIS CASE**

The Plaintiffs' first argument regarding SFC is based on the irrelevant proposition that it is controlled by the same two families as the other non-Sears Defendants, "who are bound together by blood and marriage." This, of course, has nothing to do with whether SFC was in the stream of commerce for the jack stand at issue, and it is telling that the Plaintiffs chose to lead off with this red herring. The fact that SFC's ownership or directors may overlap with the other Defendants is immaterial, pursuant to the well-developed body of case law that SFC cited in its prior brief. *See, e.g.*, *United States v. Bestfoods*, 524 U.S. 51, 61, 69 (1998); *SFA Folio Collections, Inc. v. Bannon*, 217 Conn. 220, 232 (1991).

The Plaintiffs then make the point that SFC markets itself as being affiliated with the other non-Sears Defendants, without reference to the subject jack stand, which also does not matter.[1] Then, SFC is not mentioned again for several pages, until the Plaintiffs make the point that it shared insurance coverage with SFA and MVP, which also has nothing to do with whether SFC was in the stream of commerce for the subject product.

Later, on pages 16 through 19 of their brief, the Plaintiffs point out that SFC was included in email correspondence regarding the launch of a new jack stand program with Sears, years before the subject jack stand was sold. On pages 22 through 24, the Plaintiffs argue that SFC reviewed some jack stand manuals, but they cite no evidence that SFC reviewed *this* jack stand's manual, and they cite testimony from MVP's corporate representative that MVP prepared the subject manual. Once again, none of this implicates SFC as being a product seller in the stream of commerce for the product at issue.

---

[1] Regarding the Powerpoint presentation on which much of the Plaintiffs' argument is based, they have admitted that SFC's 30(b)(6) representative testified that the presentation showcased a business network of "independently run" businesses that sometimes bought and sold products to one another. (ECF No. 305 ¶¶ 37-40.)

To recap, the sum total of the Plaintiffs' evidence that SFC is a proper Defendant in this case, after over five years of litigation and extensive discovery, is: (1) SFC has some overlapping owners and directors with the other non-Sears Defendants; (2) SFC marketed itself as being affiliated with other companies including the non-Sears Defendants; (3) SFC was covered under the same insurance policy as SFA and MVP for a time; (4) SFC was included in communications with Sears regarding the launching of a new jack stand program in 2006, five years before the sale of the subject jack stand; and (5) SFC may have had a role in reviewing some jack stand manuals, but not the Craftsman 50163 manual. Ultimately, none of the Plaintiffs' evidence comes anywhere close to establishing that SFC was in the stream of commerce for the subject jack stand. Accordingly, SFC should now be extricated from this litigation, in which it has been embroiled for over half a decade despite the complete dearth of evidence that it was in any way involved with the allegedly-defective product.

II.    **SFA DERIVED NO FINANCIAL BENEFIT FROM THE JACK STAND'S SALE AND WAS NOT SUFFICIENTLY INVOLVED WITH THE SUBJECT JACK STAND TO BE HELD LIABLE**

One important and fundamental point overarches the Plaintiffs' entire argument with respect to SFA — in all of the cases on which they rely, the putative defendant received a direct financial benefit from the sale of the subject product, and that is a key point distinguishing this case from those cases. All of the cases cited by the Plaintiffs on this point deal with defendants far more involved in placing the subject product in the stream of commerce, and all of them received an economic benefit from the sale:

- In *Lawton v. CBS Corp.*, No. CV10-5029354-S, 2015 Conn. Super. LEXIS 1908, at *11-12 (Conn. Super. Ct. July 23, 2015), the court held that the defendant may have been involved in placing an asbestos-containing separator into the stream of commerce.

- In *Acquarulo v. A.O. Smith Corp.*, No. CV09-5024498-S, 2011 Conn. Super. LEXIS 3313 (Conn. Super. Ct. Dec. 30, 2011), the defendant owned the patent for the subject product; provided detailed specifications for it; directed the use of a particular supplier; performed periodic testing; handled packaging, labeling, and warnings; and displayed its trademark number and name on each product.

- In *Olivia v. Bristol-Myers Squibb Co.*, No. 3-05-cv-00486 (JCH), 2005 U.S. Dist. LEXIS 35881 (D. Conn. Dec. 15, 2005), the Court held that the pharmaceutical sales representative who actually sold the subject product, and received a substantial economic benefit from promoting the product and convincing the plaintiff's doctor to prescribe it, was a product seller.

- In *Svege v. Mercedes-Benz Credit Corp.*, 329 F. Supp. 2d 272, 278 (D. Conn. 2004), the defendant developed a program to finance dealer inventory, promoted Freightliner sales, and actually took title to the vehicles leased to end users.

- The defendant in *Rodia v. Tesco Corp.*, 11 Conn. App. 391, 396 (1987), had a duty to maintain and repair the subject forklift.

None of the defendants in these cases was as far removed from the stream of commerce as SFA.

The only other case cited by the Plaintiffs to advocate for a more expansive definition of "product sellers" was *Pitterman v. General Motors, LLC*, No. NO. 3:14-CV-00967 (JCH), 2018 U.S. Dist. LEXIS 89587 (D. Conn. Apr. 18, 2018), where the defendant, "New GM" was a corporate successor who purchased assets and assumed liabilities from the product seller "Old GM." This is unquestionably far afield from the present set of facts, and the Plaintiffs cannot point to any cases where a company was held to be a product seller where its involvement with the subject product was as attenuated as SFA's role with the jack stand in this case.

The Plaintiffs' opposition is *very* focused on the fact that SFA sold a similar jack stand, Pro-Lift model T6904, even though it is readily apparent that this does not make SFA a "product seller" of the Craftsman 50163 jack stand. Further, the Plaintiffs' concede, at page 14 of their Opposition, that Wei Fu actually designed and manufactured the T6904, subject to SFA's approval. Then, on that same page, the Plaintiffs admit that Wei Fu designed *this* jack stand,

which had a heavier and thicker base frame. The Plaintiffs point, set forth on pages 20 and 21, that the Wei Fu factory sometimes used the same internal designation for invoices and purchase orders of T6904 jack stands and Craftsman 50163 jack stands, is rendered completely ineffectual by the concession that these were actually different jack stands with different specifications for their bases. There is no precedent allowing SFA to be deemed in the stream of commerce for *this* jack stand because it sold a similar but distinct prior jack stand under a different brand name that it did not even design itself.[2] In the context of jack stands, the fact that SFA sold a similar model is even less significant than usual because essentially *all* ratchet-and-pawl jack stands have the same basic design, with size and specification variations.

Pages 17 through 20 of the Plaintiffs' Opposition describe extensive emails showing that Wu Ching Yaen, whom the Plaintiffs describe as a "Wei Fu R&D engineer," coordinated the 50163 jack stands' design. These Plaintiffs' make much of the fact that SFA was kept in the loop on these communications and may have facilitated the flow of information in some instances, while overlooking the crucial point that these emails actually confirm that Wei Fu designed the product.

The Plaintiffs go on to discuss the 50163's product manual — first and most importantly, they concede, as they must, that MVP's designated representative testified that MVP prepared the manual based on other Sears jack stand manuals. Nonetheless, the Plaintiffs emphasize that SFA drafted the content for a similar jack stand's manual, the Pro-Lift T6904, and point out that their paid fact witness Roger Claypool testified that SFA used to draft the manuals for jack stands imported by MVP. Earlier in the brief, however, the Plaintiffs acknowledged that Roger Claypool left SFA in 2008. Upon a detailed review of the cited testimony from Mr. Claypool's

---

[2] The cited testimony of Roger Claypool, that SFA developed and designed jack stands when he worked there in 2008, is even less effectual, because he said nothing about the subject Craftsman 50163 stands.

transcript, he did not specify at all *which* manuals SFA drafted, and certainly did not mention Craftsman manuals or the 50163 jack stand in particular. While the Plaintiffs went on to cite the testimony of Ryan Jorgensen, one of SFA's 30(b)(6) witnesses, that he "believed" the manual "would have been created at SFA," they failed to point out that Mr. Jorgensen testified clearly that SFA did not play any role in determining the manuals' content, and later testified that he did not know who actually created the Craftsman 50163 manual. (R. Jorgensen Dep. Tr. pp. 39:7-9, 123:3-14, Ex. A.) The Plaintiffs' argument regarding the manual failed to point out that the only *specific* evidence regarding the manual came from MVP's Rule 30(b)(6) representative, who testified that MVP designer Addy Law was responsible for drafting the product manual, which was then given to MVP engineer Ivan Chan for review; and Wei Fu's 30(b)(6) representative, who testified that Wei Fu worked with MVP to obtain all necessary content and print the product manuals. (ECF No. 305 ¶¶ 17-23.)

The Plaintiffs conclude by pointing out the customer support number listed in the manual connects to SFA, but this is explained by the operative contractual agreement between MVP and SFA. The controlling nature of this agreement was admitted by the Plaintiffs (ECF No. 305 ¶¶ 30-31), and the agreement provided SFA fees in exchange for assisting with customer support in the United States. The operation of this hotline does not somehow place SFA in the stream of commerce for the jack stands.

Analyzing SFA's involvement with respect to the Craftsman 50163 jack stands, which was tangential at best, against the relevant factors considered by the Connecticut Supreme Court in *Burkert* and lower courts in subsequent decisions, it is apparent that SFA should not be deemed a product seller in this case:

- SFA did not derive any economic benefit at all, let alone a "substantial economic benefit," from the sale of the Plaintiffs' jack stand;

- SFA did not participate in marketing, advertising, or creating consumer demand for the product — Sears, the retailer, was quite plainly responsible for marketing, advertising, and consumer sales.

- SFA undisputedly never took title to the product.

- As to SFA's knowledge and control of the product, SFA undoubtedly knew about the product, and about ratchet-and-pawl jack stands in general, but had no control whatsoever over this product.

- SFA certainly sold similar products, but this is insignificant because all ratchet-and-pawl jack stands are similar.

- SFA certainly did not develop the market for ratchet-and-pawl jack stands. Based on the website and marketing materials cited by the Plaintiffs, SFA was not even formed until well after ratchet-and-pawl jack stands had already become popular.

- SFA did not market these jack stands under its name, nor did it provide any assurances regarding the jack stands.

- SFA did not provide detailed specifications for the jack stands.

- SFA was not responsible for warnings, packaging, or labeling.

- SFA was not "significantly involved" in bringing the product to market, where Sears obtained the jack stands directly from MVP after Wei Fu took responsibility for design and manufacture. The fact that SFA was copied on emails regarding the jack stands does not constitute "significant involvement."

- SFA did not play a significant role in the jack stand's design. The evidence that the Plaintiffs submitted, in line with the evidence that SFA and SFC submitted, shows that Wei Fu was responsible for the design.

(*See* Factors Listed in Plaintiffs' Opposition at p. 27.)

Overall, in response to SFA's clear argument as to why it was not in the stream of commerce for the subject jack stands, as it undisputedly did not design, manufacture, or sell them, the Plaintiffs could not articulate a single salient reason why SFA should remain in this case. Instead, they have taken the shotgun approach, which is equally unavailing where none of

their evidence would be sufficient to allow a jury to find that SFA was a "product seller" of the subject stands under the controlling standard.

## IV. THE PLAINTIFFS HAVE ADMITTED MOST ALL OF THE KEY FACTS ESTABLISHING SFC'S AND SFA'S RIGHT TO SUMMARY JUDGMENT

As a final point, the Plaintiffs' responses to the Local Rule 56(a)(1) statement of facts conclusively establish nearly all of the elements needed to vest SFC's and SFA's right to summary judgment. First and foremost, the Plaintiffs admitted that Sears ordered the product from MVP and that MVP shipped the product directly to Sears (ECF No. 305 ¶¶ 7, 9).

The Plaintiffs also made the crucial admission that Kathryn Guerra, Sears' Rule 30(b)(6) witness, testified that the stands were designed and manufactured by MVP for Sears, and that Wei Fu was the producing factory. (ECF No. 305 ¶¶ 11-12.) They also admitted that SFC's Rule 30(b)(6) witness testified that SFC did not, make, test, sell, or distribute the jack stand, and that SFC did not sell any automotive DIY products, nor any Craftsman products, from 2008 to 2017. (ECF No. 305 ¶¶ 13-14.) Likewise, they admitted that SFA's Rule 30(b)(6) witness testified that he did not believe SFA was in the sales chain for any Sears jack stands between 2008 and 2011, and that SFA did not design the jack stands. (ECF No. 305 ¶¶ 15, 16.) They even admitted that Wei Fu's Rule 30(b)(6) witness testified that Wei Fu designed the jack stands, with Sears' approval, and without any involvement from SFC, and that Wei Fu made the jack stands and worked with MVP to produce the product manuals. (ECF No. 305 ¶¶ 17-19.) Regarding MVP, they admitted that its 30(b)(6) witness testified that MVP sold the jack stands directly to Sears; that SFA was not part of the transaction and did not buy or sell model 50163 jack stands during the relevant period; and that MVP's designer was responsible for drafting the product manual, which was then given to MVP's engineer for review. (ECF No. 305 ¶¶ 20-23.)

Lastly, as to the crucial assertions that SFC and SFA "did not design, manufacture, import, wholesale, distribute, or retail" the subject jack stand, the Plaintiffs refused to respond. (ECF No. 305 ¶¶ 41-42.) Instead, they objected, claiming that these assertions are "legal inclusions" [sic] or "opinions," when they are quite plainly facts. It is apparent that the Plaintiffs refused to respond because they could not honestly deny these facts, and admitting them would eviscerate their opposition. This Court should nonetheless treat their refusals to respond as admissions.

## V. CONCLUSION — THE PLAINTIFFS HAVE NO PROOF TO SATISFY THE CELOTEX STANDARD

Under the standard set forth in *Celotex* and its progeny, the Plaintiffs' Opposition makes it clear that they cannot marshal enough evidence to allow any reasonable jury to find that they have satisfied the essential element of their claim that SFC and SFA were product sellers in the stream of commerce for the jack stand at issue. They are accordingly entitled to summary judgment, for all of the reasons set forth in this reply and in their prior motion and memorandum of law.

DEFENDANTS,

SHINN FU CORPORATION and
SHINN FU COMPANY OF AMERICA, INC.,

By:   /s/ Steven J. Zakrzewski
     Dennis O. Brown, Esq. (ct04598)
     Steven J. Zakrzewski, Esq. (ct28934)
     Gordon & Rees, LLP
     95 Glastonbury Blvd., Suite 206
     Glastonbury, CT 06033
     (860) 278-7448
     (860) 560-0185 (fax)
     *dbrown@gordonrees.com*
     *szakrzewski@gordonrees.com*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2018, the foregoing was electronically filed and served by mail on anyone unable to receive notice of electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to receive notice of electronic filing as indicated in the Notice of Electronic Filing. Parties may access this document through the Court's CM/ECF System.

       /s/ Steven J. Zakrzewski
Steven J. Zakrzewski