## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| FREDERICK KLORCZYK, JR., as co-administrator of the Estate of Christian R. Klorczyk, et al., | : CIVIL ACTION NO. 3:13-cv-00257-JAM |
| *Plaintiffs*, | : |
| vs. | : |
| SEARS, ROEBUCK AND CO., et al., | : |
| *Defendants*. | : NOVEMBER 20, 2018 |

## REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' PUNITIVE DAMAGES CLAIM

## I. INTRODUCTION — THE PLAINTIFFS OPPOSITION SHOWS THAT THERE IS NO ISSUE OF MATERIAL FACT THAT THEY CANNOT PREVAIL ON THEIR PUNITIVE DAMAGES CLAIM

The Plaintiffs' Opposition (ECF No. 306) makes it clear that they cannot come forward with evidence sufficient to allow a jury to find that the Defendants acted with the necessary recklessness in making and selling Craftsman 50163 jack stands, which they must do in order to carry the burden of proving their punitive damages claim. They have identified exactly four pieces of evidence to argue that there is a question of material fact as to whether the Defendants consciously disregarded the serious false engagement risk that ratchet-and-pawl jack stands purportedly pose: (1) the Bowles claim; (2) the Raymond claim; (3) the Hastedt claim; and (4) the fact that competitors' jack stand manuals told users to make sure that the pawl was engaged with the ratchet bar. None of these items are even admissible on the recklessness claim, let alone sufficient to allow a jury to find that the Defendants engaged in "extreme" and "highly unreasonable" conduct in the face of a "high degree of danger," as needed to allow the Plaintiffs to recover punitive damages. The three cited claims are readily distinguishable, failing the "substantial similarity" standard and failing to demonstrate false engagement, and the point about competitors' manuals is speculative and irrelevant. The Defendants are accordingly entitled to summary judgment the punitive damages claim.

## II. THE FOUR PIECES OF EVIDENCE CITED BY THE PLAINTIFFS TO ESTABLISH RECKLESSNESS ARE NEITHER ADMISSIBLE NOR SUFFICIENT TO ALLOW A REASONABLE JURY TO FIND IN THEIR FAVOR

The Plaintiffs do not dispute that the jack stands at issue complied with the ASME-PALD guidelines, nor do they dispute that there are no publications even mentioning false engagement, but they argue that this does not matter. The crux of the Plaintiffs' entire argument is that a question of material fact exists regarding whether the Defendants were aware that false

engagement, and the attendant crush hazard, was a serious risk posed by ratchet-and-pawl jack stands. They claim the Defendants knew of this alleged serious danger because of three prior jack stand incidents, involving claimants named Bowles, Raymond, and Hastedt. Since, the Plaintiffs bear the burden of proving their punitive damages claim at trial, they must come forward with evidence sufficient to support a reasonable jury finding in their favor of the recklessness element, and mere speculation and conjecture cannot defeat the Defendants' Motion. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson*, 477 U.S. 242, 249 (1986); *Harlen Assocs. v. Inc. Vill. or Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

As a threshold matter, if the claims on which the Plaintiffs rely to carry their burden are not "substantially similar" to the present case, then they are inadmissible on summary judgment. As the Plaintiffs themselves acknowledge, in deciding whether a motion for summary judgment should be granted, a district court may consider only admissible evidence. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008); *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). Building on that foundation, the Defendants' motion laid out several decisions supporting the well-established principal that only prior incidents meeting the "substantial similarity" standard are admissible. *See, e.g.*, *Lidle v. Cirrus Design Corp.*, 505 Fed. Appx. 72, 74-75 (2d Cir. 2012).

Nevertheless, the Opposition argues that substantial similarity is not entirely necessary, since these incidents show that the Defendants were aware of false engagement, even if these claimants were not injured in the same way that the decedent in this case was injured. Examining the underlying facts of each claim, however, it is apparent that none of these claims gave the Defendants notice of the supposed serious risk posed by false engagement.

Furthermore, the Plaintiffs' reliance on a competitor's jack stand manual to substantiate the claim of false engagement is entirely speculative and unpersuasive. The cited manual does not mention false engagement, and it is actually remarkably similar to the Craftsman 50163 manual — this evidence likewise fails to support the Plaintiffs' punitive damages claim.[1]

### A. The Plaintiffs' Own Paid Fact Witness Concluded, In Writing, That The Bowles Incident Was Not Caused By A Jack Stand Defect

The Opposition touts the Bowles claim as if it conclusively establishes the Defendants' knowledge of false engagement, while ignoring their own paid fact witness's conclusion that the Bowles incident was not even caused by a defective jack stand at all — let alone false engagement. As the Defendants pointed out in their motion, and as the Opposition completely failed to address, Mr. Claypool concluded, in writing, that he did *not* believe the jack stand at issue in the Bowles claim failed at all. (Ex. G to Motion.) After conducting an in-person inspection and having plenty of time to analyze the facts, Mr. Claypool definitively concluded that: "[a]s a matter of fact, I don't believe the stand failed at all in this case." (Emphasis added.)

Given Mr. Claypool's conclusion, the Bowles claim cannot establish the Defendants' knowledge that false engagement was a serious hazard. Insofar as substantial similarity analysis would be required to assess this claim's admissibility, Mr. Claypool did not know what model jack stands Mr. Bowles used; he testified that Mr. Bowles used twice as many jack stands as the decedent in this case; he had no idea which lift points were used; he did not try to reconstruct the accident; and the jack stand had an obvious paint scrape, whereas the jack stand in this case was completely unblemished. (Claypool Dep. Tr. pp. 186:15-191:2, Ex. D to Motion.)

---

[1] The Plaintiffs Opposition also discusses the feasibility of "reasonable alternative" jack stand designs. That argument is not addressed in this Reply, as the feasibility of alternative designs goes to the issue of whether the jack stand was defective, but does not bear directly on the Plaintiffs' punitive damages claim. If the Plaintiffs cannot prove the necessary element of recklessness, then they cannot recover punitive damages regardless of whether reasonable alternative designs exist.

## B. The Raymond Claim Was A Tip-Over Case, Not A False Engagement Case

The Plaintiffs claim that Mr. Claypool testified that this case "involved allegations of sudden, unexpected loss of ratchet height" (Opposition p. 6), but that alone does not establish the Defendants' purported knowledge of false engagement — what matters is *why* the alleged loss of ratchet height occurred.  On that crucial issue, the Plaintiffs submit absolutely no evidence to show that false engagement was even potentially at issue in Raymond.  In other words, the Plaintiffs have no evidence to show that there was any claim of false engagement at all in Raymond (which there was not).  Mr. Claypool himself did not provide any details except to say that it was a wrongful death case involving an alleged jack stand failure.  (Claypool Dep. Tr. at pp. 128-31, Ex. D to Motion.)

In fact, the only factual information regarding the Raymond claim is a January 5, 2007 letter from SFA's outside counsel summarizing her inspection and investigation, which shows that Raymond was a ***tip-over*** case and ***not*** a ***false engagement*** case.  (*See* Ex. O to Motion.) This letter establishes that the jack stands at issue in Raymond were a different model, at least one of them physically deformed, and a paint transfer indicated that the jack stands were placed under a moving element of the claimant's vehicle's suspension — a point that moved because it was connected to a spring, and therefore was an improper support point.  (*Id.*)  Counsel's letter summarizing the Raymond investigation ultimately concluded that "[b]ecause the jack stand was placed on a live element, the leg was unstable and the force [Raymond] exerted was sufficient to shift the balance on the jack stand and pitch it over toward the front of the garage."  (*Id.* at p. 3)

Based on all of the facts gathered to date regarding the Raymond claim, at most, this claim potentially put SFA on notice that a jack stand could tip over if it was placed under a moving element of a vehicle's suspension — a danger the SFA expressly warned against by

4

instructing users to use only support points approved by their automobile manufacturers. There is nothing about this claim, however, that would give the Defendants any notice of a "false engagement" danger, and it accordingly cannot support the Plaintiffs' case for punitive damages.

**C. The Hastedt Claim Involved Misuse And Overload Of Four Jack Stands Simultaneously With Two Of Them Under Moving Elements Of The Vehicle, And Resulted In Physical Damage To The Subject Stand — It Was Not A False Engagement Claim**

The Plaintiffs also point to the Hastedt claim as providing the Defendants with knowledge of the risk of false engagement, completely ignoring that their own witness Roger Claypool's testimony showed that there was nothing about the Hastedt claim that implicated false engagement. The relevant excerpts from Mr. Claypool's deposition actually show that he knew essentially no facts at all regarding this claim:

> Q: Okay. And when do you think that claim was?
> A: I have no idea . . . between '02 and '04 --
> …
> Q: Okay. And did you get any details on that claim?
> A: I did but I wouldn't have retained any of the details . . . I just don't -- I don't recall them. I don't recall the details. It was a jack stand.
> . . .
> Q: What do you remember?
> A: That it was a jack stand whose complaint was the sudden and unexpected loss of load height.
> Q: You don't have any more information than that?
> A: No. I don't even remember the vehicle or the -- or the -- whether it was changing oil or changing shocks or what the details of that one was.
> …
> Q: (By Mr. Zakrzewski) You don't remember the specific model of jack stand involved?
> A: I don't. I don't. I believe it was a 6902 as well but I couldn't be certain.
> Q: You don't know how the end user was purportedly using --
> A: No.
> Q: -- the jack stands at the time?
> A: Not off the top of my head. And I didn't retain any -- any detailed information on those[.]

(R. Claypool Dep. Tr. pp. 193-195, **Ex. A** hereto.) This line of questioning concluding with Mr.

Claypool testifying that his "investigation" of this claim consisting of sending a questionnaire to the claimant, and he did not know if he ever received a response. (*Id.* at p. 195:6-22.)

The documents produced by the Defendants in discovery regarding the Hastedt claim establish conclusively that there was nothing about this complaint that would have given the Defendants any notice of a potential false engagement risk. The claimant complained about the quality of the jack stand's base, not any issue relating to the pawl, the ratchet bar, or engagement: "The grade of the metal is thin and poor, puddle welds are only applied on the inside of the seams. The construction is not supported. The feet are not supported by lower bracing at the bottom to prevent lower collapse of the feet." (May 21, 2005 Email, **Ex. B**.) The claimant also admitted that he overloaded the jack stands, mistakenly believing that four jack stands could support four times as much weight as one jack stand. (June 9, 2005 Email, **Ex. C**.) The claimant later sent photographs of his jack stand, which show that the jack stand suffered severe physical damage, in stark contrast to the jack stand in this case. (July 13, 2005 Email, **Ex. D**.)

In response to this claim, Roger Claypool sent a letter stating that "two key elements" contributed to the incident. (June 6, 2005 Email, **Ex. E** hereto.) First, he stated that the claimant used four jack stands simultaneously to support both ends of his vehicle, constituting "misuse" pursuant to both the manual and warning label. (*Id.*) He also stated that "[t]he rear jack stands were placed on a part of the vehicle that is designed to flex or move, independently from other components under load instead of being placed on a rigid frame member." (*Id.*) He went on to note that the jack stands were in place for two weeks with no indication of a problem, and ventured a "tentative conclusion" that the load balance was disturbed which caused the vehicle to move and break contact with the jack stands' support points. (*Id.*) In sum, *none* of the facts of

this claim, and *none* of the information on file regarding this claim, provide any indication that the Defendants were given any notice of a "serious danger" posed by false engagement.

Considering all of the claims cited by the Plaintiffs, there are *no* instances in which false engagement has been documented in the field, and in the very few instances where the circumstances could have even possibly pointed to something like false engagement, the Defendants searched for and found that there was another clear explanation — typically product misuse. The fact that the Defendants investigated each and every jack stand claim in this manner does not show intentional disregard of a known risk, and it actually shows the exact opposite.

Nowhere does the Opposition actually attempt to engage with the facts of these underlying claims — instead, the Plaintiffs gloss over the facts and make the exceedingly general argument that other jack stand claims — regardless of what actually happened in those incidents — somehow establish the Defendants' knowledge of the objectively-unsubstantiated false engagement phenomenon.[2] Put simply, the Plaintiffs' argument boils down to the assertion that because other jack stand claims with completely-unrelated facts existed, the Defendants should be charged with knowledge of false engagement claims that do not exist. That simply does not pass muster under the substantial similarity standard nor the controlling standard for summary judgment — it does not make logical sense nor does it comport with the controlling law.[3]

### D. The Competitor's Jack Stand Manual Quoted By The Plaintiffs Does Not In Any Way Establish The Danger Of "False Engagement" Nor Does It Show That The Defendants Were Reckless

---

[2] This approach is highlighted by footnote 8 on page 10 of the opposition, where the Plaintiffs identify five other claims to say that the Defendants had notice of other complaints regarding jack stands. They do not even argue that these claims had anything to do with "false engagement" — which they did not — nor do they assert that these claims involved the model of jack stands at issue in this case — which they also did not.

[3] Due to Sears' recent bankruptcy and the attendant automatic stay, Sears, Roebuck and Co. is not joined in this reply, and arguments specific to Sears, including the argument that the Plaintiffs' proffered evidence does not show that *Sears* had notice of prior claims, is not set forth in this reply, but will instead be made at a later date, if and when it becomes procedurally appropriate to do so.

The Plaintiffs' quote a 3-ton jack stand manual by Sealy Quality Machinery that (a) does not specifically mention false engagement and (b) is remarkably similar to the Craftsman 50163 manual and warnings. The Sealy manual contains the following instructions and warnings:

- Ensure the centre column is locked with the locking lever down and pawl engagement with a ratchet tooth;
- Ensure toothed side of column will engage with locking lever mechanism;
- WARNING: ENSURE PAWL IS FULLY ENGAGED WITH TEETH; and
- *Failure to heed these warnings may cause damage, injury, or loss of life.*

None of these warnings mention false engagement, partial engagement, or unstable engagement.

In fact, the manual for the jack stand at issue in this case contains instructions and warnings that are in substance essentially the same as those contained in the Sealy manual:

- Install ratchet bar into frame with ratchet area of bar aligned with locking pawl (stopper);
- The weight of the locking handle should secure the ratchet bar in desired position. To confirm this, simply push down on the locking handle. Check to ensure ratchet bar is secure before loading;
- [E]nsure vehicle is secure before working on, around or under; and
- Failure to heed product markings or warnings may result in personal injury or property damage.

(*See* Craftsman 50163 Manual p .3, Ex. R to Defs.' Motion.) In the face of this comparison, there is no logical way for the Plaintiffs to spin the Sealy manual as a key piece of evidence establishing that the Defendants' reckless decision to ignore the risk of false engagement.

## II. THE TWO KEY DECISIONS CITED BY THE PLAINTIFFS ACTUALLY HIGHLIGHT THE LACK OF RECKLESSNESS EVIDENCE IN THIS CASE

The Plaintiffs rely primarily on two cases to argue that their evidence is sufficient to support a recklessness claim, on page 9 of their Opposition, but both of these decisions addressed situations where there were literally *thousands* of incidents to put the defendants on notice that their products were potentially dangerous. In the first case that the Plaintiffs discuss, *Lutes v. Kawasaki Motors Corp. U.S.A.*, No. 3:10-cv-01549-WWE, 2015 U.S. Dist. LEXIS 168659, at

8

*13-14 (D. Conn. Dec. 17, 2015), the court's decision to deny summary judgment was based on the fact that the defendant sold *2,715* replacement cargo hooks, so a jury could have reasonably found that this large number of replacement hooks was evidence that the hooks were not being used as intended by the defendants.  In the second case, *Rosenthal v. Ford Motor Co.*, 462 F. Supp. 2d 296, 312-13 (D. Conn. 2006), the plaintiff's expert provided evidence of National Highway Traffic Safety Administration data showing that there were only two instances of tread peels of Goodyear tires on Ford Explorers causing accidents, while there were *1,183* instances of the Firestone tires at issue causing accidents when equipped on Ford Explorers.

Neither the Plaintiffs nor their experts in this case have provided *any* data regarding the frequency of incidents of false engagement on either the Craftsman 50163 jack stands at issue or regarding ratchet-and-pawl jack stands generally.  The Plaintiffs argue that SFA's distribution data showing over 1 million jack stands sold in the past seven years alone, contrasted against the lack of a single confirmed instance of false engagement, is inadmissible, but their argument lacks any sound legal basis.  The Third Circuit case cited by the Plaintiffs, *Forrest v. Beloit Corp.*, 424 F.3d 344, 357 (3d Cir. 2005), stated outright that "[t]here is little doubt that as a general matter evidence concerning the absence of prior accidents can satisfy the relevance threshold," and that this evidence can be relevant to show the absence of a defect, the lack of a causal relationship between an injury and an alleged defect, and "the nonexistence of an unduly dangerous situation."  While that court excluded the evidence at issue because it was introduced through the testimony of a witness who would not have known of accidents involving the product at issue at other locations if they had occurred, that is not an issue here.  The Plaintiffs also cited the Connecticut Supreme Court's sixty-plus-year-old decision in *Facey v. Merkle*, 146 Conn. 129 (1959), for the proposition that the Defendants must demonstrate that other individuals' use of

9

the product was identical to the Plaintiff's use in order for data regarding the absence of other incidents to be admissible. That case is completely inapplicable, as it involved a disabled plaintiff injured on a stairwell, and the defendant sought to introduce evidence that other persons, who were not disabled, were not injured on the stairwell. In this case, there is no analogous factual circumstance to distinguish the Plaintiff's decedent's use of ratchet-and-pawl jack stands from other users, where ratchet-and-pawl jack stands work the same way for everyone.

**III. CONCLUSION — THE PLAINTIFFS DO NOT HAVE ANY EVIDENCE SUFFICIENT TO ALLOW A REASONABLE JURY TO FIND THAT THE DEFENDANTS ACTED RECKLESSLY, WHICH IS A NECSSARY ELEMENT OF THEIR PUNITIVE DAMAGES CLAIM, AND SUMMARY JUDGMENT IS ACCORDINGLY MERITED**

Connecticut law is clear that "[a]llegations of recklessness differ from allegations of negligence because reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Pecan v. Madigan*, 97 Conn.App. 617, 622 n.5 (2006), cert. denied, 281 Conn. 919 (2007). In the face of this standard, the Plaintiffs have absolutely no admissible evidence to show that false engagement was a serious danger posed by Craftsman 50163 jack stands, let alone evidence that the Defendants committed "an extreme departure from ordinary care" in a situation where "a high degree of danger is apparent." The Plaintiffs' own expert, Frederick Heath, testified that he had "never seen" and "never investigated" a case of false engagement before, and he was "skeptical" of this case when he became involved — he had only previously heard of false engagement from "scuttlebutt"[4] in the industry. (Heath Dep. Tr. pp. 81:13-83:4, **Ex. F** hereto.) Given the complete lack of objective evidence of false engagement, no reasonable jury could find in the Plaintiffs' favor on the necessary recklessness element of their punitive damages claim, and summary judgment should accordingly be granted for the Defendants.

---

[4] Webster's dictionary defines "scuttlebutt" as "Rumor; gossip".

DEFENDANTS,

SHINN FU CORPORATION,
SHINN FU COMPANY OF AMERICA, INC.,
MVP (HK) INDUSTRIES, LTD., and
WEI FU (TAISHAN) MACHINERY &
ELECTRIC CO., LTD.


By*:*    */s  Steven J. Zakrzewski*
   Dennis O. Brown, Esq. (ct04598)
   Steven J. Zakrzewski, Esq. (ct28934)
   Gordon & Rees, LLP
   95 Glastonbury Blvd., Suite 206
   Glastonbury, CT 06033
   (860) 278-7448
   (860) 560-0185 (fax)
   *dbrown@gordonrees.com*
   *szakrzewski@gordonrees.com*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2018, the foregoing was electronically filed and served by mail on anyone unable to receive notice of electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to receive notice of electronic filing as indicated in the Notice of Electronic Filing.  Parties may access this document through the Court's CM/ECF System.


                                              */s  Steven J. Zakrzewski*
                                              Steven J. Zakrzewski